IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| OFF LEASE ONLY LLC,[1] | ) Case No. 23- 11388 (CTG) |
| Debtors. | ) (Joint Administration Requested) |

**MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF**

Off Lease Only LLC, Off Lease Only Parent LLC, and Colo Real Estate Holdings LLC, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") seek entry of an interim order, substantially in the form attached hereto as **Exhibit A** (the "Interim Order") and a final order (the "Final Order" and, together with the Interim Order, the "Cash Collateral Orders"), respectively, pursuant to sections 105, 361, 362, 363, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 4001, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) authorizing the use of cash collateral, (ii) granting adequate protection to prepetition secured parties, and (iii) granting related relief. In support of this motion (the "Motion"), the Debtors rely upon and incorporate by reference the *Declaration of Leland*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if applicable) are: Off Lease Only LLC (7345), Off Lease Only Parent LLC (2753), and Colo Real Estate Holdings LLC (7453). The location of the Debtors' service address in these chapter 11 cases is 1200 S. Congress Ave., Palm Springs, FL 33406.

*Wilson in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"),[2] filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested in this Motion are sections 105, 361, 362, 363, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, and 6004, and Local Rule 4001-2.

## BACKGROUND

5. On the date hereof (the "Petition Date"), the Debtors commenced these chapter 11 cases by filing petitions for relief pursuant to chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

6. The Debtors continue to manage and operate their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

7. As of the date hereof, no trustee, examiner, or official committee has been appointed in the Chapter 11 Cases.

8. A detailed description of the Debtors, including their business operations, their corporate and capital structure, the events leading to the filing of these Chapter 11 Cases, and the facts and circumstances supporting this Motion, are set forth in greater detail in the First Day Declaration and are incorporated by reference herein.

## PRELIMINARY STATEMENT

9. Prior to the Petition Date, the Debtors were a leading regional used car retailer, operating dealerships in the States of Florida and Texas. The company was founded in 2004 with just two cars and grew to become one of the largest volume used car dealers in Florida.

10. However, beginning in 2022, the Debtors experienced a significant decline in revenue due to macroeconomic factors impacting the used car industry. The Debtors took a number of actions to reduce costs and improve profitability to offset these macroeconomic conditions. The Debtors reduced their employee headcount significantly, implemented broad-based cost reduction, launched the We Buy Your Car program in 2022 to acquire inventory at lower prices, and increased dealer and administration fees charged to customers. The Debtors also expanded their inventory to include higher mileage, older vehicles sold at lower prices in an attempt to address customer affordability. However, despite the Debtors' efforts, as a result of its declining performance and aging inventory, the Debtors began to face increased pressure from Ally (as defined below), their floorplan lender. As described in detail in the First Day Declaration, due to restrictions imposed by Ally on the Debtors' ability to purchase vehicles and limited liquidity, the Debtors were no longer able to purchase sufficient profit generating inventory in August 2023.

3

11. Accordingly, the Debtors determined that their only option was to cease operations, allow Ally to collect the vehicles securing its debt, and wind down their businesses in these Chapter 11 Cases. The Debtors stopped selling vehicles on September 6, 2023 and terminated all of their employees prior to the Petition Date.

12. By this Motion, the Debtors seek authority to use Cash Collateral (as defined below) securing obligations owed to their three lenders—Ally, Spirit, and Cerberus (each as defined below)—during these Chapter 11 Cases to wind down their businesses and preserve and protect the Prepetition Collateral (as defined below) of each lender in order to maximize the value of their estates for the lenders and all stakeholders. The Debtors require immediate access to Cash Collateral in order to maximize the value of their estates, and submit that the continued use of Cash Collateral is necessary to avoid immediate and irreparable harm and is critical to the success of these Chapter 11 Cases and the Debtors' ability to wind down their businesses.

13. Importantly, the Debtors seek access to Cash Collateral in order to preserve their assets for the benefit of their secured lenders. Absent the Debtors' use of Cash Collateral, Ally would face significant challenges in recovering the vehicles securing its Floorplan Line (as defined below). The Debtors would be unable to pay rent at the locations at which such vehicles are stored, or to hire independent contractors to provide security services to protect such vehicles and assist in delivering them to Ally. Likewise, the Debtors would be unable to pay rent to Spirit which, in addition to acting as a lender, is the Debtors' primary landlord. Further, Cerberus has consented to the Debtors' use of Cash Collateral.

14. Accordingly, for the foregoing reasons and as set forth herein, the Debtors respectfully request that the Court authorize the Debtors to use Cash Collateral.

**BACKGROUND**

15. The Debtors' capital structure consists of outstanding funded debt obligations in the aggregate principal amount of approximately $138,654,548, comprised of (i) approximately $67,368,932 outstanding pursuant to the Floorplan Agreement; (ii) $5,000,000 in principal outstanding pursuant to the Spirit Note; (iii) $13,450,000 in principal outstanding pursuant to the Katy Loan Agreement; and (iv) $52,835,616 in principal and paid-in-kind interest outstanding pursuant to the Cerberus Note (each as defined below).

16. Floorplan Agreement. Debtor Off Lease Only LLC ("OLO"), as borrower, Off Lease Only Parent LLC ("Parent"), as guarantor, and Ally Bank and Ally Financial (collectively, Ally") are party to that certain Master Wholesale Agreement, dated as of October 11, 2010 (as amended, supplemented, or modified from time to time, the "Floorplan Agreement"). Pursuant to the Floorplan Agreement, Ally financed the Debtors' acquisition of the majority of their inventory through a $180 million line of credit (the "Floorplan Line"), as described in detail in the First Day Declaration. The Floorplan Line is secured by a lien on (i) all of the Debtors' vehicles, including but not limited to, vehicles for which Ally provides financing, and regardless of whether such vehicles are inventory or equipment, and (ii) all funds provided to or held by Ally, regardless of whether such funds are considered accounts, general intangibles, or otherwise. Pursuant to the Floorplan Agreement, Ally also holds $10 million of the Debtors cash as restricted cash.

17. Spirit Loans. OLO, as borrower, Parent, as guarantor, and Spirit Realty, L.P. ("Spirit"), as lender are party to that certain Loan Agreement, dated as of March 25, 2022 (as amended, supplemented, or modified from time to time (the "Katy Loan Agreement"), pursuant to which Spirit provided a $13.45 million construction loan for use in constructing a new dealership in Katy, Texas (the "Katy Loan"). The Katy Loan is secured by, among other things, (i) land,

improvements, fixtures, easements, and equipment related to the Katy property, and (ii) property and rights of OLO that may be subject to the Uniform Commercial Code, regardless of whether such assets are related to the Katy property. In addition, OLO, as maker, Parent, as guarantor, and Spirit, as holder, are party to that certain Promissory Note, dated as of May 17, 2023 (as amended, supplemented, or modified from time to time, the "Spirit Note") pursuant to which OLO issued a $5 million promissory note to Spirit. The obligations pursuant to the Spirit Note are unsecured.

18.   Cerberus Note. Parent, as maker, OLO and Colo Real Estate Holdings LLC, as guarantors, and Cerberus Off Lease Only LLC ("Cerberus" and, together with Ally and Spirit, the "Prepetition Secured Parties"), as holder, are party to that certain Promissory Note, dated as of August 5, 2022 (as amended, supplemented, or modified from time, the "Cerberus Note"). The principal amount of the Cerberus Note is approximately $46.7 million, and as of the Petition Date, $52,835,616.20 in principal and paid-in-kind interest are outstanding. The Cerberus note is secured by substantially all of the Debtors' assets, excluding Ally's collateral.

19.   As set forth above, all of the Debtors' cash (the "Cash Collateral") is encumbered by the Prepetition Secured Parties' security interests. And, as explained above, the Debtors require immediate access to Cash Collateral to administer these Chapter 11 Cases, preserve and protect the Prepetition Secured Parties' collateral, and successfully wind down their businesses. The Debtors, in consultation with their advisors, have reviewed and analyzed their projected cash needs during these Chapter 11 Cases and have prepared a budget outlining such needs (the "Budget"), a copy of which is attached as Exhibit 1 to the Interim Order. The Debtors submit that the Budget accurately reflects their cash needs and will allow them to meet their obligations in these Chapter 11 Cases. The Debtors submit that the use of Cash Collateral in accordance Budget is reasonable and necessary to maximize the value of their estates for the benefit of all stakeholders.

**CONCISE STATEMENT PURSUANT TO
BANKRUPTCY RULE 4001(b) AND LOCAL RULE 4001-2**

20. The below chart contains a summary of the material terms of the proposed Interim Order, together with references to the applicable provisions thereof, as required by Bankruptcy Rules 4001(b)(1)(B) and 4001(c)(1)(B) and Local Rule 4001-2. The majority of the provisions of such Bankruptcy Rules and Local Rule are inapplicable to the Interim Order and the Debtors' proposed use of Cash Collateral, accordingly only the applicable provisions are summarized below.

| SUMMARY OF MATERIAL TERMS OF THE INTERIM ORDER | | |
|---|---|---|
| **Adequate Protection**<br><br>Bankruptcy Rule 4001(c)(1)(B)(ii) | As adequate protection of the interests of the Prepetition Secured Parties in the Prepetition Collateral, the Debtors propose to provide the following:<br><br>i. to the extent of any Diminution in Value of such interests in the Prepetition Collateral, continuing, valid, binding, enforceable, and perfected Liens, which shall be senior in priority to the Prepetition Lien held by the applicable Prepetition Secured Party, upon such Prepetition Secured Party's Prepetition Collateral (the "<u>Adequate Protection Liens</u>"). The Adequate Protection Liens shall be subject to the Carve Out and, with respect to the Prepetition Secured Parties, shall have the same priority as such Prepetition Secured Parties enjoyed with respect to the Prepetition Collateral. The Adequate Protection Liens shall be junior only to the Carve Out and the Permitted Prior Liens. The Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the Debtors' assets that constitute Prepetition Collateral.<br><br>ii. To the extent of any Diminution in Value of their respective interests in the Prepetition Collateral, and subject in all respects to the Carve Out, allowed superpriority administrative expense claims in each of the Chapter 11 Cases | Interim Order ¶¶ 3–6 |

| SUMMARY OF MATERIAL TERMS OF THE INTERIM ORDER | | |
|---|---|---|
| | and any Successor Cases (the "Adequate Protection Superpriority Claims"). the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever as and to the extent provided for by sections 503(b) and 507(b) of the Bankruptcy Code. | |
| **Validity/Priority of Liens and Claims**<br><br>Bankruptcy Rule 4001(c)(1)(B)(iii) | The Debtors, on their own behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree to certain stipulations regarding the validity and extent of the Prepetition Secured Parties' liens and claims. | Interim Order ¶¶ F, 13 |
| **Carve-Out**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iii)<br><br>Local Rule 4001-2(F) | As used in this Interim Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth below); (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth below); and (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all accrued and unpaid fees, disbursements, costs and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Creditors' Committee, (if any, and subject to the Budget), pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Estate Professionals"); *provided, however*, nothing in the Interim Order shall be construed to impair the ability of any party to object to any fees, expenses, reimbursement or compensation sought by any such professionals or any other person or entity. | Interim Order ¶ 11 |

8

**RELIEF REQUESTED**

21.     The Debtors seek entry of the Interim Order and the Final Order, respectively, (i) authorizing the use of cash collateral, (ii) granting adequate protection to prepetition secured parties, and (iii) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing approximately twenty-one (21) days from the Petition Date.  For the reasons set forth herein, the Debtors submit that the relief requested herein is in the best interest of the Debtors, their estates, creditors, and other parties-in-interest, and therefore, should be granted.

**BASIS FOR RELIEF**

**I.     The Use of Cash Collateral and Proposed Adequate Protection Should Be Approved**

22.     The Debtors' use of property of their estates, including Cash Collateral, is governed by section 363 of the Bankruptcy Code, which provides in relevant part:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 262(c)(1).  Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use . . . in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2).

23.     Parties with an interest in cash collateral are entitled to adequate protection pursuant to section 363(e) of the Bankruptcy Code.  *See* 11 U.S.C. § 363(e).  Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay.  *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996) (*en banc*).  While

9

section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis. *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *In re Satcon Tech. Corp.*, No. 12-12869 (KG), 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *see also In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on Bankruptcy ¶ 361.01[1] at 361–66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding")).

24. As set forth above and in the Interim Order, the Debtors propose to provide the Prepetition Secured Parties with adequate protection to protect against the postpetition diminution in value of the Prepetition Collateral resulting from the use of Cash Collateral. Specifically, the Debtors propose to provide, to the extent of any Diminution in Value of such interests in the Prepetition Collateral, the Adequate Protection Liens consisting of continuing, valid, binding, enforceable, and perfected liens, which shall be senior in priority to the Prepetition Lien held by the applicable Prepetition Secured Party, upon such Prepetition Secured Party's Prepetition Collateral. The Adequate Protection Liens shall be subject to the Carve Out and, with respect to the Prepetition Secured Parties, shall have the same priority as such Prepetition Secured Parties enjoyed with respect to the Prepetition Collateral. The Adequate Protection Liens shall be junior only to the Carve Out and the Permitted Prior Liens. The Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the Debtors' assets that constitute Prepetition Collateral.

DOCS_DE:244657.1 62901/001

25. Further, to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral, and subject in all respects to the Carve Out, the Debtors propose to provide the Adequate Protection Superpriority Claims, consisting of allowed superpriority administrative expense claims in each of the Chapter 11 Cases and any Successor Cases. The Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever as and to the extent provided for by sections 503(b) and 507(b) of the Bankruptcy Code.

26. In addition to the forms of adequate protection the Debtors propose to provide pursuant to the Interim Order and the Final Order, the Debtors submit that the use of Cash Collateral to preserve and protect the Prepetition Collateral adequately protects the Prepetition Secured Parties against diminution in the value of the Prepetition Collateral. As is set forth above, absent the use of Cash Collateral, the Debtors would be unable to maintain the premises at which vehicles are located or hire independent contractors to secure such locations and assist in delivering vehicles to Ally. Absent the use of Cash Collateral, the Debtors submit that the value of Ally's security interest in their vehicles would deteriorate rapidly, with the risk of permanent loss and the necessity for Ally to retrieve such vehicles immediately, a virtual impossibility. Accordingly, by utilizing Cash Collateral to fund their wind down and the return of vehicles to Ally, the Debtors have adequately protected Ally against any diminution in value. Similarly, Spirit's interest in its Prepetition Collateral, consisting of certain real property and assets of Off Lease Only LLC, is protected through the Debtors' use of Cash Collateral. The Debtors cannot preserve and maintain such collateral without access to Cash Collateral. In addition, as noted above, Cerberus has consented to the Debtors' use of Cash Collateral.

27. The Debtors submit that the proposed adequate protection is sufficient to protect the Prepetition Secured Parties from any potential diminution in value of their collateral. In light of the foregoing, the Debtors further submit that the proposed forms adequate protection to be provided for the benefit of the Prepetition Secured Parties are appropriate. Thus, the Debtors' provision of adequate protection is not only necessary to protect against any diminution in value but is fair and appropriate under the circumstances of these Chapter 11 Cases to ensure the Debtors are able to continue using the Cash Collateral for the benefit of all parties in interest and their estates.

## II. The Carve Out Is Appropriate

28. Pursuant to the proposed Interim Order, the Prepetition Liens and Adequate Protection Liens are subject and subordinate to the Carve Out. The Carve Out contains similar terms to others that courts have found to be reasonable and necessary to ensure that a debtor's estate and any statutory committee can retain assistance from counsel and other appropriate advisors. Without the Carve Out, the Debtors' estates may be deprived of possible rights and powers if the services for which professionals may be compensated is restricted. *See In re Ames Dep't Stores*, 115 B.R. at 38 (observing that courts insist on carve outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced"). Additionally, the Carve Out protects against administrative insolvency during the course of these Chapter 11 Cases by ensuring that assets remain for the payment of the U.S. Trustee fees and professional fees, notwithstanding the grant of superpriority claims and replacement liens as part of the adequate protection of the Prepetition Secured Parties' interests in the Prepetition Collateral. Accordingly, the Carve Out is appropriate and should be approved.

**III.     Failure to Obtain Immediate Interim Access Cash Collateral Would Cause Immediate and Irreparable Harm**

29.     Bankruptcy Rules 4001(b) and 4001(c) provide that a final hearing on a motion to use Cash Collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion.  Upon request, however, the Court may conduct a preliminary, expedited hearing on the Motion and authorize the obtaining of credit and use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.  The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions.  In that context, the court has instructed that irreparable harm is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.  *See, e.g.*, *Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 F. App'x 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)).  Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated.  *See, e.g.*, *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653-55 (3d Cir. 1994).  The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and, accordingly, should be granted.

30.     For the reasons noted above, the Debtors have an immediate postpetition need to use Cash Collateral.  Absent use of Cash Collateral, the Debtors cannot preserve the value of their estates during the pendency of these Chapter 11 Cases.  The Debtors will use cash to conduct an orderly wind-down of their businesses and deliver to, or permit recover of, collateral by their secured lenders.  Substantially all of the Debtors' available cash constitutes the Cash Collateral of the Prepetition Secured Parties.  The Debtors will therefore be unable to wind down their business or otherwise fund these Chapter 11 Cases without access to Cash Collateral and will suffer

13

DOCS_DE:244657.1 62901/001

immediate and irreparable harm to the detriment of all creditors and other parties in interest. In short, the Debtors' ability to administer these Chapter 11 Cases through the use of Cash Collateral is vital to preserve and maximize the value of the Debtors' estates.

### IV.     Position of Secured Creditors

31.     Cerberus has consented to the use of Cash Collateral and the relief requested herein. The Debtors have requested, but have not yet received, a response from Ally or Spirit as to whether they consent to the use of Cash Collateral.

### WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

32.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements pursuant to Bankruptcy Rule 6004(a) and the fourteen (14)-day stay of an order authorizing the use, sale, or lease of property pursuant to Bankruptcy Rule 6004(h).

### RESERVATION OF RIGHTS

33.     Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Proposed Orders is intended or should be construed as: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of any party's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of any party's rights pursuant to the Bankruptcy Code or any other applicable law; or (g) a concession by any party that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and all parties' rights to contest the extent, validity, or perfection or seek avoidance of all such liens are hereby reserved. If the Court grants the relief sought herein, any payment made pursuant to

the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of any party's rights to subsequently dispute such claim.

## NOTICE

34. The Debtors have provided notice of this motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the holders of the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Department of Justice; (d) the office of the attorneys general for the states in which the Debtors operate; (e) the United States Attorney's Office for the District of Delaware; (f) the Internal Revenue Service; (g) Cerberus Off Lease Only LLC; (h) Spirit Realty, L.P.; (i) Ally Bank; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, within two (2) business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

35. No prior request for the relief sought herein has been made by the Debtors to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

**CONCLUSION**

**WHEREFORE**, the Debtors respectfully request that the Court enter the Interim Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

| | |
|---|---|
| Dated: September 7, 2023<br>Wilmington, Delaware | Respectfully submitted,<br><br>*/s/ Laura Davis Jones*<br>Laura Davis Jones, Esq.  (DE Bar No. 2436)<br>James E. O'Neill, Esq. (DE Bar No. 4042)<br>Colin R. Robinson, Esq. (DE Bar No. 5524)<br>**PACHULSKI STANG ZIEHL & JONES LLP**<br>919 North Market Street, 17th Floor<br>P.O. Box 8705<br>Wilmington, Delaware 19899-8705 (Courier 19801)<br>Telephone:  302-652-4100<br>Facsimile:   302-652-4400<br>email:  ljones@pszjlaw.com<br>            joneill@pszjlaw.com<br>            crobinson@pszjlaw.com<br><br>*Proposed Co-Counsel for the Debtors and Debtors in Possession*<br><br>-and-<br><br>Brian S. Rosen, Esq. (*pro hac vice* pending)<br>Megan R. Volin, Esq. (*pro hac vice* pending)<br>**PROSKAUER ROSE LLP**<br>Eleven Times Square<br>New York, New York 10036<br>Telephone: (212) 969-3000<br>Facsimile:  (212) 969-2900<br>Email:  brosen@proskauer.com<br>             mvolin@proskauer.com<br><br>-and- |

Ashley M. Weringa, Esq. (*pro hac vice* pending)
Christian J. Palacios, Esq. (*pro hac vice* pending)
**PROSKAUER ROSE LLP**
70 W. Madison, Suite 3800
Chicago, Illinois 60602
Telephone: (312) 962-3550
Facsimile: (312) 962-3551
Email:  aweringa@proskauer.com
              cpalacios@proskauer.com

*Proposed Counsel for the Debtors and Debtors in Possession*