**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| OFF LEASE ONLY LLC, *et al.*,[1] | ) Case No. 23-11388 (CTG) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

## MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS AND (II) GRANTING RELATED RELIEF

Off Lease Only LLC, Off Lease Only Parent LLC, and Colo Real Estate Holdings LLC, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order" and, together with the Interim Order, the "Proposed Orders"), respectively, pursuant to sections 105(a), 362(b), 363(b), and 503w(b)(9) of title 11 of the United States Code (the "Bankruptcy Code"), (i) authorizing the Debtors to continue paying allowed prepetition claims of Critical Vendors (defined below); and (ii) granting related relief. In support of this motion (the "Motion"), the Debtors rely upon and incorporate by reference the *Declaration of Leland Wilson in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"),[2] filed contemporaneously herewith. In further support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Off Lease Only LLC (7345), Off Lease Only Parent LLC (2753), and Colo Real Estate Holdings LLC (7453). The location of the Debtors' service address in these chapter 11 cases is 1200 S. Congress Ave., Palm Springs, FL, 33406.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

2.      Pursuant to Local Rule 9013-1(f) of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested in this Motion are sections 105(a), 362(b), 363(b), and 503(b)(9) of the Bankruptcy Code, Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1(m).

## BACKGROUND

5.      On the date hereof (the "Petition Date"), the Debtors commenced these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

6.      The Debtors continue to manage and operate their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      As of the date hereof, no trustee, examiner, or official committee has been appointed in the Chapter 11 Cases.

8.      A detailed description of the Debtors, including their business operations, their

corporate and capital structure, the events leading to the commencement of these Chapter 11 Cases, and the facts and circumstances supporting this Motion, are set forth in greater detail in the First Day Declaration and incorporated by reference herein.

## THE DEBTORS' CRITICAL VENDORS

9.      The Debtors engage seven (7) providers of services that are essential to the wind-down of the Debtors' operations to assist with such wind-down (the "Critical Vendors"). The Critical Vendors, by and large, provide a material economic or operational advantage when compared to other available suppliers and vendors, and are essential for the successful wind-down of the Debtors' operations. To that end, failure to pay prepetition claims held by these Critical Vendors and accrued in the ordinary course of business could cause such Critical Vendors to refuse to provide the services necessary for the winding down of the Debtors' businesses.

10.     The Debtors hope to assure continuing services from the Critical Vendors postpetition through negotiation and consensual agreements with such vendors. However, the Debtors acknowledge their fiduciary duties to consider and plan for the contingency that some or all of the Critical Vendors may refuse to continue providing services absent payment of their prepetition claims. Even if the Debtors were able to identify adequate replacements for the Critical Vendors, such replacements would likely result in delay and substantially higher costs to the Debtors.

## A.      The Critical Vendor Screening Process

11.     Prior to the Petition Date, the Debtors, with the assistance of their advisors, engaged in a process to (a) identify those trade vendors, suppliers, and service providers that are most critical to the wind-down of the Debtors' business and (b) estimate the aggregate amounts owed to such vendors as of the Petition Date. Through this process, the Debtors and their advisors spent

3

significant time reviewing and analyzing the Debtors' books and records, consulting operations management and purchasing personnel, reviewing contracts and supply agreements, and analyzing applicable laws, regulations, and historical practice to identify certain critical suppliers services, the loss of which could materially harm the Debtors' ability to successfully wind-down their business. The Debtors considered a variety of factors, including, among other things:

- whether a vendor is a sole or limited-source or high-volume supplier for services critical to the Debtors' business operations;
- whether alternative vendors are available that can provide similar services on equal or better terms and, if so, whether the Debtors would be able to continue winding down their operations while transitioning business thereto;
- the degree to which replacement costs (including pricing, transition expenses, professional fees, and lost sales or future revenue) exceed the amount of a vendor's prepetition claim;
- whether an agreement exists by which the Debtors could compel a vendor to continue performing on prepetition terms;
- whether certain specifications or contract requirements prevent, directly or indirectly, the Debtors from obtaining services from alternative sources;
- whether failure to pay all or part of a particular vendor's claim could cause the vendor to refuse to provide critical services on a postpetition basis;
- whether failure to pay a particular vendor could result in contraction of trade terms as a matter of applicable non-bankruptcy law or regulation; and
- whether authorization for payment of a particular vendor is being sought under another motion of the Debtors for first day relief.

12.    Following this analysis, the Debtors identified seven (7) Critical Vendors which are essential to the wind-down of the Debtors' business. The Debtors believe that their relationships with these Critical Vendors may materially deteriorate without such payments, thereby causing disruption to the Debtors' wind-down process if the Debtors are unable to pay Critical Vendor Claims (as defined herein) as provided herein. The Debtors seek authority to pay prepetition Critical Vendor Claims solely to the extent that such payments are needed to ensure particular vendor continues to provide services to the Debtors that are critical to the Debtors' wind-down

efforts.

**B.     Critical Vendors**

13.     In order to effectuate necessary wind-down activities, the Debtors will rely on a small subset of Critical Vendors to assist with such wind-down.  The Debtors' Critical Vendors may be broadly grouped into three categories – Vehicle Title Registration, Software as a Service, and Payroll Administration.

14.     Certain Critical Vendors (the "Vehicle Title Registration Vendors") provide on-site title clerk staffing.  In connection with sales of vehicles to customers, in the ordinary course of business, the Debtors typically completed title and registration on the customer's behalf.  Pursuant to Texas and Florida law, the Debtors are required to complete title and registration, while, in other states, customers could elect to do so on their own.  Given the short period of time between the cessation of the Debtors' business operations and the filing of these Chapter 11 Cases, the Debtors have not yet completed title and registration for all vehicles sold in the days leading up to the Petition Date. The services provided by the Vehicle Title Registration Vendors play a critical role in the Debtors' wind-down efforts.  Although certain services provided by the Vehicle Title Registration Vendors might be obtained elsewhere, the Debtors do not believe that alternative providers could be found within a reasonable amount of time.

15.     Certain other Critical Vendors (the "Software as a Service Vendors") provide essential cloud-based services critical for the Debtors' wind-down efforts.  The Software as a Service Vendors provide access to corporate e-mail, data and analytics services, file and server hosting, as well as provide the dealer management system for the company.  The Software as a Service Vendors have developed services tailored specifically to the Debtors and/or their operations are embedded in the Debtors' operations.

5

16.     Certain other Critical Vendors (the "Payroll Administration Vendors") provide payroll administrative services.  The Payroll Administration Vendors are critical for the Debtors' wind-down efforts as their services will be required to disburse pre-petition wages to former employees, pay 1099 contractors post-petition and process and send former employees their W2s for 2023.

17.     Accordingly, it is essential that the Debtors be able to maintain their business relationships with, and honor outstanding payment obligations to, the Critical Vendors given the critical role that they play in the Debtors' wind-down efforts.  To prevent the commencement of these Chapter 11 Cases from causing an unexpected or inopportune interruption to the Debtors' wind-down efforts, the Debtors are seeking to pay Critical Vendor Claims to ensure the Debtors' continued receipt of services and favorable credit terms from the Critical Vendors.

**C.      Critical Vendor Claims**

18.     The Debtors believe that it is imperative that the Debtors have the authority to pay Critical Vendors if determined necessary to facilitate the orderly wind-down of the business and liquidation of the Debtors' assets.  The Debtors therefore seek authority to honor prepetition obligations to the Critical Vendors.  As of the Petition Date, the Debtors believe that Critical Vendors hold prepetition Critical Vendor Claims totaling approximately $215,000, all of which may become due and payable within the first twenty-one (21) days after the Petition Date.

19.     By this Motion, the Debtors seek authority to pay all or a portion of the prepetition claims held by Critical Vendors (collectively, the "Critical Vendor Claims") on an interim basis in an amount not to exceed $215,000 and on a final basis in an amount not to exceed $215,000.  The Debtors submit that the requested relief will allow the Debtors to preserve stakeholder value by paying the prepetition claims of certain counterparties that are critical to the Debtors' business.

6

Moreover, the relief requested herein is necessary because certain of the Critical Vendors have no obligation to continue providing services under relevant contracts and, as a result, the Debtors would be unable to force those vendors to continue to perform pursuant to section 365 of the Bankruptcy Code.    Additionally, the Debtors do not seek authorization to honor prepetition obligations arising under contract, except where the Debtors determine, in their business judgment, such parties may be capable of terminating their contracts notwithstanding section 362(a) of the Bankruptcy Code or may otherwise inflict immediate and irreparable harm on the Debtors by their refusal to comply with their contractual obligations.

## **CONDITIONS TO PAYMENT OF CRITICAL VENDOR CLAIMS**

20.    In return for paying the Critical Vendor Claims, the Debtors propose that they may, in their discretion, condition payment of any such Critical Vendor Claims upon an agreement to continue to supply services to the Debtors on such creditor's "Customary Trade Terms"[3] for the 12-month period prior to the Petition Date and on other such terms and conditions as are acceptable to the Debtors.  However, in certain circumstances, a Critical Vendor may refuse to provide services to the Debtors on the creditor's Customary Trade Terms even after payment of its claim.  To accommodate these circumstances, the Debtors seek approval to enter into other agreements, in the Debtors' discretion, with each such Critical Vendor on a case-by-case basis.

21.    The Debtors further propose, that if a Critical Vendor accepts payment for a Critical Vendor Claim and thereafter refuses to continue to supply services to the Debtors on the Customary Trade Terms for the applicable period, or on such terms as were individually agreed to

---

[3]    As used herein, "Customary Trade Terms" means, with respect to a Critical Vendor, (a) the normal and customary trade terms, practices, and programs that were most favorable to the Debtors and in effect between such creditor and the Debtors in the 12-month period prior to the Petition Date or (b) such other trade terms as agreed by the Debtors and such creditor.

between the Debtors and such creditor, then the Debtors may, in their discretion, assert and request that the Court order: (a) that the payment of such Critical Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover from such Critical Vendor in cash, (b) that the creditor immediately return such payments in respect of its Critical Vendor Claim to the extent that the aggregate amount of such payments exceeds the postpetition obligations then outstanding without giving effect to alleged setoff rights, recoupment rights, adjustments, or offsets of any type whatsoever, and (c) upon recovery of such payment by the Debtors, such creditor's Critical Vendor Claim shall be reinstated in such an amount as to restore the Debtors and the applicable Critical Vendor to their original positions, as if the agreement had never been entered into and the payment of the creditor's Critical Vendor Claim had not been made.  In sum, the Debtors will return the parties to their positions immediately prior to the entry of the order approving the relief sought herein.

22.    To ensure that Critical Vendors transact business with the Debtors on Customary Trade Terms, the Debtors propose the following procedures, to be implemented in the Debtors' discretion, as a condition to paying any Critical Vendor: (a) that a letter or contract including provisions substantially in the form of the letter attached hereto as **Exhibit C** (a "Vendor Agreement") be delivered to, and executed by, the creditor along with a copy of the order granting the relief sought herein and (b) that payment of the creditor's Critical Vendor Claim include a communication of the following statement:

> By accepting this payment, the payee agrees to the terms of the Order of the U.S. Bankruptcy Court for the District of Delaware, dated [ ], 2023, in the chapter 11 cases of Off Lease Only LLC, *et al.* (jointly administered under Case No. 23-_____, entitled "*[Interim/Final] Order (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Vendors and (II) Granting Related Relief*" and submits to the jurisdiction of that Court for enforcement thereof.

8

23.     The Debtors further request authority to require, in their discretion, as a further condition of receiving payment on a Critical Vendor Claim, that a Critical Vendor agree to take whatever action is necessary to remove any existing liens at such Critical Vendor's sole cost and expense and waive any right to assert a trade lien on account of the paid Critical Vendor Claim.

24.     To the extent that an agreement relating to a Critical Vendor Claim is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtors do not, at this time, seek to assume the same.  Accordingly, if the Court authorizes the payments described above, such payments should not be deemed to constitute postpetition assumption, reaffirmation, or adoption of the programs, policies, or agreements as executory contracts pursuant to section 365 of the Bankruptcy Code, and the Debtors reserve all of their rights under the Bankruptcy Code in connection therewith.

## **RELIEF REQUESTED**

25.     The Debtors seek entry of the Interim and Final Orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, authorizing, but not directing, the Debtors to (i) continue paying allowed prepetition claims of Critical Vendors in an amount not to exceed $215,000 on an interim basis and $215,000 on a final basis; and (ii) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing approximately twenty-one (21) days from the Petition Date.  For the reasons set forth herein, the Debtors submit that the relief requested herein is in the best interest of the Debtors, their estates, creditors, and other parties-in-interest, and therefore, should be granted.

**BASIS FOR RELIEF**

I.    **The Court May Authorize Payment of the Critical Vendor Claims Pursuant To Section 363 of the Bankruptcy Code and the "Necessity of Payment" Doctrine.**

26.    Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Pursuant to section 363(b), courts require only that the debtor "show that a sound business purpose" justifies the proposed use of property.  *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring "good business reason" for use of property pursuant to section 363(b) of the Bankruptcy Code).  This Court has previously explained that the business judgment standard is "not a difficult standard to satisfy."  *In re AbitibiBowater, Inc.*, 418 B.R. 815, 831 (Bankr. D. Del. 2009).  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

27.    Further, federal courts have consistently permitted postpetition payment of certain prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  Moreover, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Accordingly, pursuant to section 105(a) of the Bankruptcy Code, the Debtors submit that the Court is empowered to grant the relief requested in this Motion. Pursuant to the "necessity of payment doctrine" and section 105(a) of the Bankruptcy Code, courts

10

have consistently permitted immediate payment of prepetition obligations where necessary to preserve or enhance the value of a debtors' estate for the benefit of all creditors. *See, e.g.*, *Miltenberger v. Logansport, C. & Sw. Ry.*, 106 U.S. 286, 309 (1882). The modern application of the doctrine of necessity is largely unchanged from the Supreme Court's reasoning in *Miltenberger*. *See In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the continued operation of the [debtor] in serious jeopardy."); *see also In re Just For Feet, Inc.*, 242 B.R. 821, 825 (Bankr. D. Del. 1999) ("The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11."); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (holding that a court may authorize a debtor to pay certain prepetition claims so long as a sound business purpose exists and stating that "courts consider a variety of factors, which essentially represent a 'business judgment test'"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994).

31.     The success of the Debtors' wind down depends on continued services from the Critical Vendors.  The prompt payment of Critical Vendor Claims is crucial to the ability of the Debtors to maximize the value of their estates.  Failure to pay for these essential services would cause irreparable harm to the Debtors' wind-down efforts.  Accordingly, the Debtors submit that the requested relief represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm, and is justified pursuant to sections 363(b) and 105(a) of the Bankruptcy Code.  Satisfaction of prepetition obligations owed to the Critical Vendors is vital to the Debtors' operations.

32.     This Court has routinely granted to chapter 11 debtors the same or similar relief as requested in this Motion.  *See, e.g.*, *In re Virgin Orbit Holdings, Inc.*, Case No. 23-10405 (KBO) (Bankr. D. Del. Apr. 26, 2023) (authorizing the payment of prepetition critical vendor claims); *In re Boxed, Inc.*, Case No. 23-10397 (BLS) (Bankr. D. Del. Apr. 25, 2023) (same); *In re SiO2 Medical Products, Inc.*, Case No. 23-10366 (JTD) (Bankr. D. Del. Apr. 24, 2023) (same); *In re Lucira Health, Inc.*, Case No. 23-10242 (MFW) (Bankr. D. Del. Mar. 21, 2023) (same); *In re Starry Group Holdings, Inc.*, Case No. 23-10219 (KBO) (Bankr. D. Del. Mar. 21, 2023) (same); *In re Taronis Fuels, Inc.*, Case No. 22-11121 (BLS) (Bankr. D. Del. Dec. 8, 2022) (same).[4]

33.     As explained above, it is critical to the Debtors' chapter 11 efforts that they continue to receive services from the Critical Vendors on an uninterrupted basis throughout the Debtors' wind-down process.  The Debtors believe that without the relief requested herein, many of the Critical Vendors may cease providing services to the Debtors, which could have devastating consequences for the Debtors and their estates.  To avoid the irreparable harm that would occur absent payment of the Critical Vendor Claims, the Debtors request authority to exercise their reasonable business judgment and pay such Critical Vendor Claims, during these Chapter 11 Cases.

## II.     The Debtors' Banks Should Be Authorized to Honor Checks, Wire Transfers, and Electronic Fund Transfers.

34.     The Debtors have sufficient liquidity to pay the amounts described in this Motion during these Chapter 11 Cases.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks, wire transfers, or electronic fund transfer requests as relating to an authorized payment in respect of the Critical Vendor Claims.  Accordingly, the

---

[4]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

Debtors believe that there is minimal risk that checks, wire transfers, and electronic fund transfer requests that the Court has not authorized will be honored inadvertently.  The Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks, wire transfers, or electronic fund transfer requests in respect of the relief requested in this Motion.  Further, the Debtors also seek authority to issue new postpetition checks, wire transfers, or electronic fund transfer requests to replace any prepetition checks, wire transfers, or funds transfers that may be dishonored or rejected as a result of the commencement of these Chapter 11 Cases.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

35.    Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions.  In that context, the court has instructed that irreparable harm is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.  *See, e.g.*, *Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 Fed. App'x 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)).  Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated.  *See, e.g.*, *Acierno v. New Castle County*, 40 F.3d 645, 653-55 (3d Cir. 1994).  The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and, accordingly, should be granted.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

36.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements pursuant to Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property pursuant to Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

37.    Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the interim or final orders is intended or should be construed as: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of any party's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of any party's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by any party that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and all parties' rights to contest the extent, validity, or perfection or seek avoidance of all such liens are hereby reserved.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of any party's rights to subsequently dispute such claim.

## NOTICE

38.    The Debtors have provided notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the holders of the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Securities and Exchange Commission; (d) the United States Department of Justice; (f) the office of the attorneys general

for the states in which the Debtors operate; (g) the United States Attorney's Office for the District

of Delaware; (h) the Internal Revenue Service; (i) Cerberus Off Lease Only LLC; (j) Spirit Realty,

L.P.; (k) Ally Bank; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002.

As this Motion is seeking "first day" relief, within two (2) business days of the hearing on this

Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion

as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief

requested, no other or further notice need be given.

## **NO PRIOR REQUEST**

39.    No prior request for the relief sought in this Motion has been made to this or any

other court.

## **CONCLUSION**

**WHEREFORE** the Debtors respectfully request that the Court enter interim and final

orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, granting the relief

requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: September 7, 2023
Wilmington, Delaware

Respectfully submitted,

*/s/ Laura Davis Jones*
Laura Davis Jones, Esq.  (DE Bar No. 2436)
James E. O'Neill, Esq. (DE Bar No. 4042)
Colin R. Robinson, Esq. (DE Bar No. 5524)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:  302-652-4100
Facsimile:  302-652-4400
email:  ljones@pszjlaw.com
           joneill@pszjlaw.com
           crobinson@pszjlaw.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

-and-

Brian S. Rosen, Esq. (*pro hac vice* pending)
Megan R. Volin, Esq. (*pro hac vice* pending)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email:  brosen@proskauer.com
            mvolin@proskauer.com

-and-

Ashley M. Weringa, Esq. (*pro hac vice* pending)
Christian J. Palacios, Esq. (*pro hac vice* pending)
**PROSKAUER ROSE LLP**
70 W. Madison, Suite 3800
Chicago, Illinois 60602
Telephone: (312) 962-3550
Facsimile: (312) 962-3551
Email:  aweringa@proskauer.com
            cpalacios@proskauer.com

*Proposed Counsel for the Debtors and Debtors in Possession*

16

# **EXHIBIT A**

## **Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| OFF LEASE ONLY LLC, *et al.*,[1] | Case No. 23-11388 (CTG) |
| Debtors. | (Joint Administration Requested) |
|  | **Re: Docket No. __** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS
TO PAY CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS AND (II)
GRANTING RELATED RELIEF**

Upon the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Vendors and (II) Granting Related Relief* (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Interim Order"), (i) authorizing, but not directing, the Debtors to pay Critical Vendor Claims on an interim basis; (ii) granting related relief; and (iii) scheduling a final hearing to consider approval of the Motion on a final basis, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration and the record of these Chapter 11 Cases; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Off Lease Only LLC (7345), Off Lease Only Parent LLC (2753), and Colo Real Estate Holdings LLC (7453). The location of the Debtors' service address in these chapter 11 cases is 1200 S. Congress Ave., Palm Springs, FL, 33406.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and the First Day Declaration and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.        The Motion is GRANTED on an interim basis as set forth herein.

2.        The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2023, at__:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed with the Court, and served so as to be **received** by the following parties, **by no later than 4:00 p.m., prevailing Eastern Time, on _____, 2023:** (i) proposed counsel to the Debtors, Proskauer Rose LLP, Eleven Times Square (Attn: Brian S. Rosen (brosen@proskauer.com) and Megan R. Volin (mvolin@proskauer.com) and Proskauer Rose LLP, 70 W. Madison, Suite 3800, Chicago, IL, 60602 (Attn: Ashley Weringa (aweringa@proskauer.com) and Christian Palacios (cpalacios@proskauer.com), (ii) proposed co-counsel to the Debtors, Pachulski, Stang, Ziehl, & Jones, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801 (Attn: Laura Davis Jones); (iii) Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801; and (v) if any statutory committee has been appointed in the Chapter 11 Cases, counsel to

2

such committee.

3.        The Debtors are authorized, but not directed, to honor, pay, or otherwise satisfy, in their discretion, prepetition amounts on account of Critical Vendor Claims, in an amount not to exceed $215,000 on an interim basis, absent further order of the Court; *provided*, *however*, that any Critical Vendor that accepts payment pursuant to the authority granted in this Interim Order agrees to services to the Debtors postpetition on Customary Trade Terms[3] or on such other favorable terms as are acceptable to the Debtors; *provided further*, that the Debtors' and any such Critical Vendor's inability to agree on Customary Trade Terms shall not preclude the Debtors from paying a Critical Vendor Claim of such Critical Vendor if the Debtors determine, in the reasonable exercise of their business judgment that such payment is necessary for the successful wind-down of the Debtors' business.

4.        The Debtors may further condition payment to the Critical Vendors on agreement by the applicable Critical Vendor to remove any existing liens at such Critical Vendor's sole cost and expense and waive any right to assert a trade lien on account of the paid Critical Vendor Claim.

5.        The form of Vendor Agreement, substantially in the form attached to the Motion as **Exhibit C**, is approved in its entirety.  The Debtors are authorized to enter into Vendor Agreements with Critical Vendors if the Debtors determine that such an agreement is necessary for their limited postpetition operations and wind-down process.

6.        Notwithstanding the provisions of paragraph 5 of this Interim Order, the Debtors may, in their reasonable business judgment, negotiate, amend, or modify the form of Vendor Agreement and decline to condition payment of Critical Vendor Claims upon the execution of

---

[3]        As used herein, "Customary Trade Terms" means, with respect to a Critical Vendor, (a) the normal and customary trade terms, practices, and programs that were most favorable to the Debtors and in effect between such creditor and the Debtors in the 12-month period prior to the Petition Date or (b) such other trade terms as agreed by the Debtors and such creditor.

3

Vendor Agreement if such payments are necessary for the Debtors' limited postpetition operations and wind-down process.

7.      If the Debtors determine that a Critical Vendor has not complied with the terms and provisions of a Vendor Agreement or has failed to continue to provide Customary Trade Terms following the date of the Vendor Agreement, or on such terms as were individually agreed to between the Debtors and such creditor, the Debtors may terminate such a Vendor Agreement or other arrangement, together with other benefits to the creditor as contained in this Interim Order; *provided*, *however*, that the Vendor Agreement may be reinstated if (a) such determination is subsequently reversed by the Court for good cause after it is shown that the determination was materially incorrect after notice and a hearing following a motion from the creditor, (b) the underlying default under the Vendor Agreement is fully cured by the creditor not later than five business days after the date the initial default occurred, or (c) the Debtors reach a subsequent agreement with the creditor.

8.      If a Vendor Agreement or other arrangement is terminated as set forth above, or if a Critical Vendor that has received payment of a Critical Vendor Claim later refuses to continue to services for the applicable period in compliance with the Vendor Agreement, other arrangement, or this Order, then the Debtors may assert, and request that the Court order, that (a) the payment of such Critical Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover in cash from such creditor, (b) the creditor shall immediately return such payments in respect of its claim to the extent that the aggregate amount of such payments exceeds the postpetition obligations then outstanding without giving effect to alleged setoff rights, recoupment rights, adjustments, or offsets of any type whatsoever, and (c) upon recovery of such payment by the Debtors, such creditor's Critical Vendor Claim shall be

reinstated in such an amount so as to restore the Debtors and the applicable Critical Vendor to their original positions as if the Vendor Agreement or other arrangement had never been entered into and no payment of the creditor's claim had been made.

9.      All Vendor Agreements shall be deemed to have terminated, together with the other benefits to Critical Vendors as contained in this Interim Order, upon entry of an order converting the Debtors' Chapter 11 Cases to cases pursuant to chapter 7 of the Bankruptcy Code.

10.      Payments of Critical Vendor Claims may include a communication of the following statement:

> By accepting this payment, the payee agrees to the terms of the Order of the U.S. Bankruptcy Court for the District of Delaware, dated [ ] 30, 2023, in the chapter 11 cases of Off Lease Only LLC, *et al.* (jointly administered under Case No. 23-_____, entitled "*[Interim/Final] Order (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Vendors and (II) Granting Related Relief*" and submits to the jurisdiction of that Court for enforcement thereof.

11.      Any Critical Vendor that accepts payment from the Debtors on account of all or a portion of a Critical Vendor Claim pursuant to this Interim Order shall be deemed to (a) agree to the terms and provisions of this Interim Order and (b) have waived, to the extent so paid, any and all prepetition claims, of any type, kind, or priority against the Debtors, their assets, and properties.

12.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

13.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with any Critical Vendor Claims.

14.     Payments made pursuant to this Interim Order shall be applied, in the first instance, against claims which arise under section 503(b)(9) of the Bankruptcy Code, in whole or in part, if applicable.

15.     Notwithstanding the relief granted herein or any actions taken hereunder, nothing contained in the Motion or this Interim Order or any payment made pursuant to this Interim Order shall constitute, nor is it intended to constitute, an implication or admission as to the validity or priority of any claim or lien against the Debtors, a waiver of the Debtors', or any party in interest's, rights to subsequently dispute such claim or lien, a promise or requirement to pay any prepetition claim, an implication or admission that any particular claim is of a type specified or defined in the Motion or any proposed order, a waiver of the Debtors', or any other party in interest's, rights pursuant to the Bankruptcy Code or any other applicable law, or the assumption or adoption of any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code.

16.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

17.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

18.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

19.     The Debtors are authorized to take all actions necessary to effectuate the relief

6

granted in this Interim Order in accordance with the Motion.

20.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

7

**EXHIBIT B**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| OFF LEASE ONLY LLC, *et al.*,[1] | Case No. 23-11388 (CTG) |
| Debtors. | (Joint Administration Requested) |
| | Re: Docket No. __ |

**FINAL ORDER (I) AUTHORIZING THE**
**DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF**
**CRITICAL VENDORS AND (III) GRANTING RELATED RELIEF**

Upon the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Vendors and (II) Granting Related Relief* (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Final Order") (i) authorizing, but not directing, the Debtors to pay Critical Vendor Claims on a final basis; and (ii) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration and the record of these Chapter 11 Cases; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors'

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Off Lease Only LLC (7345), Off Lease Only Parent LLC (2753), and Colo Real Estate Holdings LLC (7453). The location of the Debtors' service address in these chapter 11 cases is 1200 S. Congress Ave., Palm Springs, FL, 33406.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

estates, their creditors, and other parties in interest; and this Court having found that the Debtors'
notice of the Motion and opportunity for a hearing on the Motion were appropriate under the
circumstances and no other notice need be provided; and this Court having reviewed the Motion
and having heard the statements in support of the relief requested therein at a hearing before this
Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth
in the Motion and the First Day Declaration and at the Hearing establish just cause for the relief
granted herein; and upon all of the proceedings had before this Court; and after due deliberation
and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED on a final basis as set forth herein.

2. Any objections to the Motion not resolved or otherwise withdrawn are
OVERRULED.

3. The Debtors are authorized, but not directed, to honor, pay, or otherwise satisfy, in
their discretion, prepetition amounts on account of Critical Vendor Claims, in an amount not to
exceed $215,000 on a final basis, absent further order of the Court; *provided*, *however*, that any
Critical Vendor that accepts payment pursuant to the authority granted in this Final Order agrees to
supply services to the Debtors postpetition on Customary Trade Terms[3] or on such other favorable
terms as are acceptable to the Debtors; *provided further*, that the Debtors' and any such Critical
Vendor's inability to agree on Customary Trade Terms shall not preclude the Debtors from paying
a Critical Vendor Claim of such Critical Vendor if the Debtors determine, in the reasonable exercise
of their business judgment, that such payment is necessary for the successful wind-down of the

---

[3]  As used herein, "Customary Trade Terms" means, with respect to a Critical Vendor, (a) the normal and customary
trade terms, practices, and programs that were most favorable to the Debtors and in effect between such creditor
and the Debtors in the 12-month period prior to the Petition Date or (b) such other trade terms as agreed by the
Debtors and such creditor.

Debtors' business.

4.      The Debtors may further condition payment to the Critical Vendors on agreement by the applicable Critical Vendor to remove any existing liens at such Critical Vendor's sole cost and expense and waive any right to assert a trade lien on account of the paid Critical Vendor Claim.

5.      The form of Vendor Agreement, substantially in the form attached to the Motion as **Exhibit C**, is approved in its entirety.  The Debtors are authorized to enter into Vendor Agreements with Critical Vendors if the Debtors determine that such an agreement is necessary for their limited postpetition operations and wind-down process.

6.      Notwithstanding paragraph 5 of this Final Order, the Debtors may, in their reasonable business judgment, (a) negotiate, amend, or modify the form of Vendor Agreement and (b) decline to condition payment of Critical Vendor Claims upon the execution of Vendor Agreement if such payments are necessary for the Debtors' limited postpetition operations and wind-down process.

7.      If the Debtors determine that a Critical Vendor has not complied with the terms and provisions of a Vendor Agreement or has failed to continue to provide Customary Trade Terms following the date of the Vendor Agreement, or on such terms as were individually agreed to between the Debtors and such creditor, the Debtors may terminate such a Vendor Agreement or other arrangement, together with other benefits to the creditor as contained in this Final Order; *provided*, *however*, that the Vendor Agreement may be reinstated if (a) such determination is subsequently reversed by the Court for good cause after it is shown that the determination was materially incorrect after notice and a hearing following a motion from the creditor, (b) the underlying default under the Vendor Agreement is fully cured by the creditor not later than five business days after the date the initial default occurred, or (c) the Debtors reach a subsequent

3

agreement with the creditor.

8.      If a Vendor Agreement or other arrangement is terminated as set forth above, or if a Critical Vendor that has received payment of a Critical Vendor Claim later refuses to continue to supply services for the applicable period in compliance with the Vendor Agreement, other arrangement, or this Order, then the Debtors may assert, and request that the Court order, that (a) the payment of such Critical Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover in cash from such creditor, (b) the creditor shall immediately return such payments in respect of its claim to the extent that the aggregate amount of such payments exceeds the postpetition obligations then outstanding without giving effect to alleged setoff rights, recoupment rights, adjustments, or offsets of any type whatsoever, and (c) upon recovery of such payment by the Debtors, such creditor's Critical Vendor Claim shall be reinstated in such an amount so as to restore the Debtors and the applicable Critical Vendor to their original positions as if the Vendor Agreement or other arrangement had never been entered into and no payment of the creditor's claim had been made.

9.      All Vendor Agreements shall be deemed to have terminated, together with the other benefits to Critical Vendors as contained in this Final Order, upon entry of an order converting the Debtors' Chapter 11 Cases to cases pursuant to chapter 7 of the Bankruptcy Code.

10.     Payments of Critical Vendor Claims may include a communication of the following statement:

> By accepting this payment, the payee agrees to the terms of the Order of the U.S. Bankruptcy Court for the District of Delaware, dated [ ], 2023, in the chapter 11 cases of Off Lease Only LLC, *et al.* (jointly administered under Case No. 23-_____), entitled "*[Interim/Final] Order (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Vendors and (II) Granting Related Relief*" and submits to the jurisdiction of that Court for enforcement thereof.

4

11.     Any Critical Vendor that accepts payment from the Debtors on account of all or a portion of a Critical Vendor Claims pursuant to this Final Order shall be deemed to (a) agree to the terms and provisions of this Final Order and (b) have waived, to the extent so paid, any and all prepetition claims, of any type, kind, or priority against the Debtors, their assets, and properties.

12.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

13.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with any Critical Vendor Claims.

14.     Payments made pursuant to this Final Order shall be applied, in the first instance, against claims which arise pursuant to section 503(b)(9) of the Bankruptcy Code, in whole or in part, if applicable.

15.     Notwithstanding the relief granted herein or any actions taken hereunder, nothing contained in the Motion or this Final Order or any payment made pursuant to this Final Order shall constitute, nor is it intended to constitute, an implication or admission as to the validity or priority of any claim or lien against the Debtors, a waiver of the Debtors', or any party in interest's, rights to subsequently dispute such claim or lien, a promise or requirement to pay any prepetition claim, an implication or admission that any particular claim is of a type specified or defined in the Motion

5

or any proposed order, a waiver of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law, or the assumption or adoption of any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code.

16.    The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

17.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

18.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

19.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

20.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

# **EXHIBIT C**

**Form of Vendor Agreement**

**Off Lease Only LLC**

September [___], 2023

TO:      [Critical Vendor]

[Name]

[Address]

Dear Valued Supplier:

 As you are aware, Off Lease Only LLC and certain of its affiliates (collectively, the "Company") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Cases" and the "Bankruptcy Court," respectively) on September [___], 2023 (the "Petition Date").  On the Petition Date, the Company filed a motion requesting the Bankruptcy Court's authority to pay the prepetition claims of certain suppliers in recognition of the importance of the Company's relationship with such suppliers and its desire that the Bankruptcy Cases have as little effect on the Company's ongoing business operations as possible.  On _____, 2023, the Bankruptcy Court entered an order (the "Critical Vendors Order") authorizing the Company, under certain conditions, to pay the prepetition claims of certain suppliers that agree to the terms set forth below and to be bound by the terms of the Critical Vendors Order.  A copy of the Critical Vendors Order is enclosed.

 In order to receive payment on account of prepetition claims, you must sign this agreement ("Vendor Agreement") and agree to continue to supply goods and services to the Company based on "Customary Trade Terms." In the Critical Vendors Order, Customary Trade Terms are defined as the normal and customary trade terms, practices and programs that were most favorable to the Company and in effect between you and the Company in the 12-month period prior to the Petition Date, or such other trade terms as you and the Company agree upon.

 For purposes of administration of this trade program as authorized by the Bankruptcy Court, you and the Company both agree that:

 1. The agreed-upon balance of your prepetition claim (net of any setoffs, credits or discounts) is $[_] (the "Claim"), comprised of (a) if applicable, a claim pursuant to section 503(b)(9) of the Bankruptcy Code, in the amount of $[_____] and/or (b) a claim for amounts owed other than pursuant to section 503(b)(9) of the Bankruptcy Code in the amount of $[_].

 2. The Company agrees to pay you $[_] on account of the Claim (the "Vendor Payment"), which is comprised of [_%] of your Claim, upon the later of (a) execution of this Vendor Agreement or (b) as amounts become due and payable in the ordinary course of business.

 3. You hereby agree that your Claim is satisfied in full through receipt of the Vendor Payment.

 4. You agree to supply postpetition goods to the Company in accordance with the

Customary Trade Terms, which include (if more space is required, attach continuation pages):

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

5.      During the pendency of the Bankruptcy Cases, you will continue to extend to the Company all Customary Trade Terms (as described above).

6.      You will not demand a lump sum payment upon consummation of a chapter 11 plan in the Bankruptcy Cases on account of any administrative expense priority claim that you assert to the extent payment of such claim is not yet due, but instead agree that such claims will be paid in the ordinary course of business after consummation of a plan under applicable Customary Trade Terms, if the plan provides for the ongoing operations of the Company.

7.      You will not separately seek payment for reclamation and similar claims outside of the terms of the Critical Vendors Order.

8.      You will not file or otherwise assert against the Company, the estates, or any other person or entity or any of their respective assets or property (real or personal) any lien (regardless of the statute or other legal authority upon which such lien is asserted) or interest related in any way to any remaining prepetition amounts allegedly owed to you by the Company arising from agreements entered into prior to the Petition Date. Furthermore, you agree to take (at your own expense) all necessary steps to remove any such lien or interest as soon as possible.

9.      If either the Critical Vendors payment program authorized by the Critical Vendors Order (the "Critical Vendors Payment Program") or your participation therein terminates as provided in the Critical Vendors Order, or you later refuse to continue to supply goods to the Company on Customary Trade Terms during the pendency of the Bankruptcy Cases, any payments you receive on account of your Claim may be deemed voidable postpetition transfers pursuant to section 549(a) of the Bankruptcy Code. You may be required to immediately repay to the Company any payments made to you on account of your Claim to the extent that the aggregate amount of such payments exceeds the postpetition obligations then outstanding without giving effect to alleged setoff rights, recoupment rights, adjustments or offsets of any type whatsoever. And, if such determination is made, your Claim shall be reinstated in such an amount so as to restore the Company and you to the same positions as would have existed if the Vendor Payment had not been made.

10.      The undersigned, a duly authorized representative of [Critical Vendor], has reviewed the terms and provisions of the Critical Vendors Order and agrees that [Critical Vendor] is bound by such terms.

2

11.     Any dispute with respect to this letter agreement, the Critical Vendors Order, and/or your participation in the Critical Vendors Payment Program shall be determined by the Bankruptcy Court and both parties hereby submit to the exclusive jurisdiction of the Bankruptcy Court regarding any such dispute.

12.     If you have any questions about this letter agreement or our financial restructuring, please do not hesitate to call.

Sincerely,

[Off Lease Only LLC]

By: _____

    [Name]
    [Title]

Agreed and Accepted by:

_____
[Critical Vendor]

By: _____

Its: _____

Dated: [_____]

3