## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OFF LEASE ONLY LLC, *et al.*,[1] | ) | Case No. 23-11388 (CTG) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

## MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING MAINTENANCE, ADMINISTRATION, AND CONTINUATION OF THE DEBTORS' CUSTOMER PROGRAMS AND SALE PROGRAMS, AND (II) GRANTING RELATED RELIEF

Off Lease Only LLC, Off Lease Only Parent LLC, and Colo Real Estate Holdings LLC, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") seek entry of an interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order" and, together with the Interim Order, the "Proposed Orders"), respectively: (a) authorizing, but not directing, the Debtors to maintain and administer customer-related and inventory sale-related programs, practices, and policies (respectively, the "Customer Programs" and "Sale Programs") in the ordinary course of business and in a manner consistent with past practices as described herein, (b) authorizing, but not directing, the Debtors to honor certain prepetition obligations related thereto (the "Prepetition Customer Obligations" and "Prepetition Sale Obligations," respectively), (c) authorizing, but not directing, the Debtors to return the Customer Deposits (as defined below), (d) authorizing and directing applicable banks and financial institutions to honor and process checks and transfers related to such Prepetition Customer Obligations, and (e) granting certain related relief. In support of this

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Off Lease Only LLC (7345), Off Lease Only Parent LLC (2753), and Colo Real Estate Holdings LLC (7453). The location of the Debtors' service address in these chapter 11 cases is 1200 S. Congress Ave., Palm Springs, FL, 33406.

motion (the "Motion"), the Debtors rely upon and incorporate by reference the *Declaration of Leland Wilson in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"),[2] filed contemporaneously herewith.   In further support of this Motion, the Debtors, respectfully state as follows:

## JURISDICTION AND VENUE

1.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

2.    Pursuant to Local Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The statutory bases for the relief requested in this Motion are section 105(a) of the Bankruptcy Code, Bankruptcy Rule 1015(b), and Local Rules 1015-1 and 9013-1(m).

## BACKGROUND

5.    On the date hereof (the "Petition Date"), the Debtors commenced these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

6.      The Debtors continue to manage and operate their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      As of the date hereof, no trustee, examiner, or official committee has been appointed in the Chapter 11 Cases.

8.      A detailed description of the Debtors, including their business operations, their corporate and capital structure, the events leading to the commencement of these Chapter 11 Cases, and the facts and circumstances supporting this Motion, are set forth in greater detail in the First Day Declaration and incorporated by reference herein.

**THE DEBTORS' CUSTOMER PROGRAMS AND SALE PROGRAMS**

9.      Prior to the Petition Date, in the ordinary course of business, the Debtors maintained Customer Programs consisting of the Exchange Program, the Delivery Program, and the We Owe Program, each as defined below, pursuant to which the Debtors provided services to customers in connection with their purchase of vehicles.  In addition, when the Debtors sold a car to a customer, the Debtors were obligated to make payments on account of Sale Programs consisting of the payoff of existing liens, completion of title and registration, and the payment of certain amounts to contract counterparties offering F&I Products (as defined below) to customers.

10.     Although the Debtors are no longer selling vehicles, given the short timeframe between the cessation of the Debtors' operations on September 6, 2023 and the Petition Date, the Debtors have not yet fulfilled certain obligations in connection with the Customer Programs and Sale Programs for certain vehicles sold prepetition.  Such programs are key components of customers' purchases, and there are significant risks both to customers and to the revenue the Debtors earned prepetition if the Customer Programs and Sale Programs were not honored.  In addition, the Debtors seek to return the Customer Deposits (as defined below) to potential

3

customers whose purchases were not yet financed prior to the Debtors' cessation of business, but which the Debtors were unable to return prior to the Petition Date due to the short timeframe between the cessation of operations and the filing of these Chapter 11 Cases.  The Debtors believe that honoring the Customer Programs and Sale Programs, and returning the Customer Deposits, as described herein, is essential to the success of these Chapter 11 Cases and to maximize value of the Debtors' estates for the benefit of their creditors.

## I.    The Customer Programs

### A.    The Exchange Program

11.    The Debtors maintain a customer exchange program (the "Exchange Program") whereby the Debtors allow their customers to exchange one vehicle purchased by the customer for another vehicle in the Debtors' inventory, provided that the customer returned their previously purchased vehicle within five (5) days and drove less than five hundred (500) miles. The Exchange Program is not a refund policy, and customers are not entitled to their money back.  The Exchange Program only allows customers to exchange their original vehicle for another of equivalent value (measured by the original amount of the customer's qualifying loan). If the Debtors are unable to exchange the customer's vehicle for one of equivalent value, only then will the customer be entitled to a refund.

12.    The Debtors ceased operations on September 6, 2023 and are no longer selling vehicles.  Accordingly, customers have until September 11, 2023 to utilize the Exchange Program.  Historically, approximately one to two percent (1–2%) of the Debtors' customers utilized the Exchange Program.  The Debtors estimate that a small number of vehicles sold prepetition may be exchanged by customers following the Petition Date.

13.    Authorizing the Debtors to continue the Exchange Program retroactive to the Petition Date, through and including September 11, 2023, will have no impact on the Debtors'

4

liquidity or inventory. The Debtors have simply exchanged one car for another of comparable value. Accordingly, authorizing the Debtors to continue the Exchange Program will not impact the Debtors' estates or their creditors, but will protect retail customers from any impact the filing of these Chapter 11 Cases may have on their purchases. Further, if the Exchange Program were not maintained for the five (5) days following the Debtors' cessation of business operations, the Debtors believe there would be an increase in complaints by customers, and potential legal liability in the event customers seek to exchange vehicles due to mechanical problems, which would lead to increased claims against the Debtors' estates, consume valuable time and resources, and impede the success of these Chapter 11 Cases and the Debtors' wind-down of their operations.

14.     Accordingly, the Debtors seek authority, but not direction, to continue honoring their prepetition and postpetition obligations in connection with the Exchange Program retroactive to the Petition Date, through and including September 11, 2023.

**B.      The Delivery Program**

15.     The Debtors maintain a customer delivery program (the "Delivery Program") whereby customers within fifty (50) miles of one of the Debtors' five (5) locations are entitled to receive complimentary car delivery with the purchase of their vehicle. On average, the Debtors completed thirty (30) to thirty-five (35) home deliveries per month prior to the Petition Date. The Debtors believe that failing to deliver vehicles purchased prepetition to their customers would lead to an increase in customer claims against their estates, and that the cost of delivery is significantly less than the cost of refunding the purchase price to the customer in the event the Debtors are unable to make the delivery.

16.     Accordingly, the Debtors seek authority, but not direction, to continue honoring their prepetition and postpetition obligations in connection with the Delivery Program in a manner consistent with their past practices.

### C.     The "We Owe" Program

17.     The Debtors sold vehicles "as-is" prior to the Petition Date.  However, consistent with that, the Debtors have maintained a customer program whereby they provide post-purchase services to their customers to address customer concerns regarding their vehicle at the time of purchase (the "We Owe Program").  For example, on occasion, a small repair may be required as a contingency for a customer to purchase a vehicle.  A "We Owe" form is used to provide the customer with documentation of the work to be completed. "We Owe" promises to customers could include services such as restoring missing floor mats, repairing fuel gauges, replacing windshield wipers, or providing oil changes.  After the vehicle is delivered to the customer, the customer contacts the Debtors' service department to schedule an appointment for a diagnostic and potential repair of the specific concern detailed on the We Owe form.  At the appointment, the customer will sign a repair agreement stating that, in exchange for the Debtors providing this cost-free service, the customer will release the Debtors from liability for the repair.  A technician will inspect the vehicle, diagnose the concern, and recommend a course of action.  The concern may be non-existent, rectified by the Debtors, or sent to a third-party vendor to fix.  The Debtors do not charge the customer for the diagnostic or repair and, if the repair requires extensive time, the dealership reimburses the customer for the cost of a rental vehicle.

18.     The Debtors believe that failing to honor the We Owe forms and continue the We Owe Program would lead to an increase in customer claims against their estates, and that the cost of the We Owe Program is significantly less than the cost of refunding the purchase price to the customer in the event the Debtors are unable to perform their obligations.  Accordingly, the

DOCS_DE:244653.1

Debtors seek authority, but not direction, to continue honoring their prepetition and postpetition obligations in connection with the We Owe Program in a manner consistent with their past practices.

## II.    The Sale Programs

### A.    Lien Payoffs

19.    Many vehicles that the company acquired through its trade-in or We Buy Your Car programs prepetition, each of which are described in detail in the First Day Declaration, are encumbered by liens held by the previous owners' lenders.  When there is a lien on a vehicle, the lender holds the title.  However, in the ordinary course of business, the Debtors input the customer's name on the title when selling a vehicle to a customer regardless of whether there is an existing lien.  The Debtors pay off any existing liens on vehicles, after which the lenders release title to the Debtors.

20.    Prior to the Petition Date, the Debtors sold certain vehicles encumbered by liens to customers, and must pay off such liens to ensure the customers that purchase such vehicles receive their vehicles free and clear.  The Debtors estimate that approximately $600,000 in lien payoffs related to vehicles sold prepetition are outstanding as of the Petition Date.

### B.    Title and Registration

21.    In connection with sales of vehicles to customers, in the ordinary course of business, the Debtors typically completed title and registration on the customer's behalf. Pursuant to Texas and Florida law, the Debtors are required to complete title and registration, while, in other states, customers could elect to do so on their own.  Given the short period of time between the cessation of the Debtors' business operations and the filing of these Chapter 11 Cases, the Debtors have not yet completed title and registration for all vehicles sold in the days leading up to the Petition Date.

7

22.    The Debtors contract with a third-party agency to process title and registration for each vehicle, and pays a $25 fee to the vendor for each retail sale.  After any liens on a vehicle are fully paid off, it takes approximately thirty (30) days for title to be processed and transferred to the customer.  The Debtors estimate that, following the Petition Date, they will incur approximately $670,000 in expenses related to processing title and registration for vehicles sold prior to the Petition Date.

### C.    Payments in Connection with F&I Products

23.    The Debtors partner with third parties who provide certain insurance and other products (collectively, "F&I Products") to customers in connection with their purchase of a vehicle.  When a customer purchases a vehicle, the customer selects the F&I Products he or she wishes to purchase.  The F&I Products include gap insurance, theft insurance, paint and fabric protection, dent and ding removal, tire and wheel coverage, key replacement, and vehicle service contracts providing coverage for repairs.  The Debtors collect the cost of the F&I Products from the customer and, pursuant to the Debtors' agreements with the third parties who provide F&I Products, the Debtors are obligated to make certain payments to such parties.  The Debtors estimate that approximately $690,000 is accrued and unpaid on account of F&I Products as of the Petition Date.

24.    Further, F&I Product counterparties incur certain obligations to the Debtors pursuant to the applicable agreements.  For example, when a customer cancels insurance coverage and a refund is paid by the Debtors to the customer, certain F&I Product counterparties are obligated to pay the Debtors their pro rata share of the refund.  Payment of the Debtors' obligations on account of F&I Products is essential to ensure the Debtors continue to receive amounts owing from F&I Product counterparties.

DOCS_DE:244653.1

### III.    Customer Deposits

25.     In the ordinary course of business prior to the Petition Date, prior to the commencement of the financing process for customer purchases, the Debtors collected deposits from customers who intended to purchase a vehicle (the "Customer Deposits").  The Debtors ceased operations prior to the Petition Date, and are no longer able to sell vehicles to such customers or facilitate the financing of their purchases.  Prior to the Petition Date, the Debtors sought to return all Customer Deposits to customers whose purchases had not yet been financed. However, given the short timeframe between the Debtors' cessation of business and the Petition Date, the Debtors were not able to complete the return of all Customer Deposits prior to filing these Chapter 11 Cases.  The Debtors estimate that they hold approximately $350,000 in Customer Deposits as of the Petition Date.

### RELIEF REQUESTED

26.     By this Motion, the Debtors respectfully request entry of interim and final orders, (i) authorizing but not directing the Debtors, in their discretion, to (a) maintain and administer the Customer Programs and Sale Programs and honor the Prepetition Customer Obligations and Prepetition Sale Obligations as set forth herein, (b) return the Customer Deposits, and (ii) granting related relief.

27.     Further, the Debtors request that the Court authorize all applicable banks and other financial institutions to receive, process, honor, and pay all checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts before the Petition Date for Prepetition Customer Obligations, Prepetition Sale Obligations, or Customer Deposits (or to reissue checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts, as may be necessary), and authorize the banks and financial institutions to rely on the Debtors' representations as to which checks, drafts, electronic

fund transfers, or other forms of payment drawn or issued on the Debtors' bank accounts are subject to this motion; *provided that* sufficient funds are on deposit in the applicable bank accounts to cover such payments.

## BASIS FOR RELIEF

### A.    Honoring Customer Programs is Warranted Under Section 105(a) and 363(b) of the Bankruptcy Code

28.    The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code.  Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."   11 U.S.C. § 363(b)(l).   Under this section, a court may authorize a debtor to pay certain prepetition claims.  *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (discussing prior order authorizing payment of prepetition wage claims pursuant to section 363(b) of the Bankruptcy Code).  To do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors." *Id*.

29.    In addition, the Court may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.   Section 105(a) of the Bankruptcy Code, which codifies the equitable powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."   11 U.S.C. § 105(a).   Pursuant to the "necessity of payment doctrine" and section 105(a) of the Bankruptcy Code, courts have consistently permitted immediate payment of prepetition obligations where necessary to preserve or enhance the value of a debtors' estate for the benefit of all creditors. *See, e.g.*, *Miltenberger v. Logansport, C. & Sw. Ry.*, 106 U.S. 286, 309 (1882). The modern application of the doctrine of necessity is largely unchanged from the Supreme Court's reasoning in *Miltenberger*. *See In re Lehigh & New Eng.*

10

*Ry. Co.*, 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the continued operation of the [debtor] in serious jeopardy."); *see also In re Just For Feet, Inc.*, 242 B.R. 821, 825 (Bankr. D. Del. 1999) ("The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11."); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (holding that a court may authorize a debtor to pay certain prepetition claims so long as a sound business purpose exists and stating that "courts consider a variety of factors, which essentially represent a 'business judgment test'"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994).

30.     The Debtors seek to continue their Customer Programs and Sale Programs, as described above, and to honor the Prepetition Customer Obligations and Prepetition Sale Obligations, because such programs are essential components of the vehicle sales transactions that occurred shortly before the Petition Date.  Further, the Debtors seek to return the Customer Deposits, which were paid to the Debtors by customers who will no longer receive a vehicle and only remain outstanding due to the timing of these Chapter 11 Cases.  Absent the return of the Customer Deposits, such customers may assert claims against the Debtors, increasing the administrative costs of these Chapter 11 Cases and consuming valuable time and resources.  The Debtors believe that honoring the Prepetition Customer Obligations and Prepetition Sale Obligations and returning the Customer Deposits, as described above, during these Chapter 11 Cases is essential to maximize the revenue the Debtors received prior to the Petition Date, and the value of the Debtors' estates for the benefit of their creditors.  Further, if the Debtors are prohibited from honoring Prepetition Customer Obligations and Prepetition Sale

DOCS_DE:244653.1

Obligations in the manner consistent with their past business practices, customers who purchased vehicles prepetition may be left without insurance coverage, without title or registration to their vehicle, with a damaged vehicle, or even without a vehicle in the case of the Delivery Program. Honoring the Prepetition Customer Obligations and Prepetition Sale Obligations and returning the Customer Deposits is essential to protect innocent customers from any impact these Chapter 11 Cases may have on their recent purchases.  Absent payment of the Prepetition Customer Obligations and Prepetition Sale Obligations, customers may demand refunds and seek to return their vehicles, having not received the services and products they were promised when they contracted with the Debtors.  In the Debtors' business judgment, the cost of any such refunds far exceeds the cost associated with honoring and continuing such practices.

31.    Accordingly, the Court has authority to authorize the Debtors to continue the Customer Programs and Sale Programs, return the Customer Deposits, and pay prepetition claims arising in connection therewith (as applicable), pursuant to sections 363(b) and 105(a) of the Bankruptcy Code.

32.    The Debtors submit that the substantial benefit conferred on the Debtors' estates by the Customer Programs and Sale Programs substantially outweighs the costs associated therewith.  Accordingly, the Debtors respectfully request the authority to continue the Customer Programs and Sale Programs and honor prepetition commitments related thereto, and to refund the Customer Deposits, all in the Debtors' sole discretion, as set forth herein.

**B.    Cause Exists to Authorize the Debtors' Financial Institutions to Honor Electronic Fund Transfers**

33.    The Debtors also request that all applicable banks and other financial institutions (the "<u>Banks</u>") be authorized to (a) receive, process, honor, and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to the claims that

the Debtors request authority to pay in this Motion, regardless of whether the checks were presented or fund transfer requests were submitted before or after the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments, and (b) rely on the Debtors' designation of any particular check as approved by the Court's order.

### THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

34.     Certain aspects of the relief requested herein are subject to Bankruptcy Rule 6003. Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.  The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions.  In that context, the court has instructed that irreparable harm is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.  *See, e.g.*, *Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 Fed. App'x 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)).  Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated.  *See, e.g.*, *Acierno v. New Castle County*, 40 F.3d 645, 653-55 (3d Cir. 1994).  The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and, accordingly, should be granted.

### WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(h)

35.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements pursuant to Bankruptcy Rule 6004(a) and the fourteen (14)-day stay of an order authorizing the use, sale, or lease of property pursuant to Bankruptcy Rule 6004(h).

DOCS_DE:244653.1

## RESERVATION OF RIGHTS

36.    Nothing contained herein is intended or shall be construed as (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission to the validity, priority, enforceability, or perfection of any lien on, security interest in, or encumbrance on property of the Debtors' estates; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the interim order or final order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## NOTICE

37.    Notice of this Motion will be provided to:  (a) the U.S. Trustee; (b) the holders of the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Securities and Exchange Commission; (d) the United States Department of Justice; (f) the office of the attorneys general for the states in which the Debtors operate; (g) the United States Attorney's Office for the District of Delaware; (h) the Internal Revenue Service; (i) Cerberus Off Lease Only LLC; (j) Spirit Realty, L.P.; (k) Ally Bank; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).

The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

38.    No prior request for the relief sought herein has been made by the Debtors to this or any other court.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court (i) enter an interim order, substantially in the form attached hereto as **Exhibit A** granting the relief requested in this Motion, (ii) schedule a final hearing on this Motion and thereafter enter a final order substantially in the form attached hereto as **Exhibit B**, and (iii) grant such other and further relief as the Court may deem proper.

Dated: September 7, 2023             Respectfully submitted,
      Wilmington, Delaware

                                    */s/ Laura Davis Jones*
                                    Laura Davis Jones, Esq.  (DE Bar No. 2436)
                                    James E. O'Neill, Esq. (DE Bar No. 4042)
                                    Colin R. Robinson, Esq. (DE Bar No. 5524)
                                    **PACHULSKI STANG ZIEHL & JONES LLP**
                                    919 North Market Street, 17th Floor
                                    P.O. Box 8705
                                    Wilmington, Delaware 19899-8705 (Courier 19801)
                                    Telephone:  302-652-4100
                                    Facsimile:  302-652-4400
                                    email:  ljones@pszjlaw.com
                                              joneill@pszjlaw.com
                                              crobinson@pszjlaw.com

                                  *Proposed Co-Counsel for the Debtors and Debtors in Possession*

                                  -and-

Brian S. Rosen, Esq. (*pro hac vice* pending)
Megan R. Volin, Esq. (*pro hac vice* pending)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email:  brosen@proskauer.com
       mvolin@proskauer.com

-and-

Ashley M. Weringa, Esq. (*pro hac vice* pending)
Christian J. Palacios, Esq. (*pro hac vice* pending)
**PROSKAUER ROSE LLP**
70 W. Madison, Suite 3800
Chicago, Illinois 60602
Telephone: (312) 962-3550
Facsimile: (312) 962-3551
Email:  aweringa@proskauer.com
       cpalacios@proskauer.com

*Proposed Counsel for the Debtors and Debtors in Possession*

**EXHIBIT A**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OFF LEASE ONLY LLC, *et al.*,[1] | ) | Case No. 23-11388 (CTG) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |

**INTERIM ORDER (I) AUTHORIZING MAINTENANCE,
ADMINISTRATION, AND CONTINUATION OF THE DEBTORS' CUSTOMER
PROGRAMS AND SALE PROGRAMS, AND (II) GRANTING RELATED RELIEF**

Upon the *Motion of Debtors for Entry of Interim and Final Orders (i) Authorizing Maintenance, Administration, and Continuation of the Debtors' Customer Programs and Sale Programs and (ii) Granting Related Relief* (the "Motion"),[2] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), all as described in the Motion; and upon consideration of the First Day Declaration and the record of these Chapter 11 Cases; and this Court having found that (i) this Court has jurisdiction over the Debtors, their estates, property of their estates and to consider the Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware,* dated February 29, 2012, (ii) this Court may enter a final order consistent with Article III of the United States Constitution, (iii) this is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (iv) venue of this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409, and (v) no further or other notice of the Motion is required under the circumstances; and this Court having reviewed

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Off Lease Only LLC (7345), Off Lease Only Parent LLC (2753), and Colo Real Estate Holdings LLC (7453). The location of the Debtors' service address in these chapter 11 cases is 1200 S. Congress Ave., Palm Springs, FL, 33406.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

the Motion and having heard the statements in support of the relief requested in the Motion at a hearing before this Court; and having determined that the legal and factual bases set forth in the Motion and the First Day Declaration establish just cause for the relief granted in this Interim Order; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis, as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2023, at__:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed with the Court, and served so as to be **received** by the following parties, **by no later than 4:00 p.m., prevailing Eastern Time, on _____, 2023:** (i) proposed counsel to the Debtors, Proskauer Rose LLP, Eleven Times Square, New York, NY 10036 (Attn: Brian S. Rosen (brosen@proskauer.com) and Megan R. Volin (mvolin@proskauer.com); (ii) proposed co-counsel to the Debtors, Pachulski, Stang, Ziehl, & Jones, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801 (Attn: Laura Davis Jones);  (iii) Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801; and (iv) if any statutory committee has been appointed in the Chapter 11 Cases, counsel to such committee.

3.      The Debtors are authorized, but not directed, to maintain and administer the Customer Programs and Sale Programs, and to honor the obligations thereunder as set forth in the Motion.

2

4.    The Debtors are authorized, but not required, to honor, in their sole discretion, the Prepetition Customer Obligations and Sale Obligations that were due and payable as of the Petition Date and to return the Customer Deposits.

5.    The Debtors are authorized, but not directed, to honor, pay, or otherwise satisfy, in their discretion, prepetition amounts on account of the Sale Obligations and Customer Deposits, in an amount not to exceed $2,310,000 on an interim basis, absent further order of the Court.

6.    The Banks shall be and hereby are authorized and directed to receive, process, honor and pay all checks, drafts, wires, ACH transfers, and fund transfers on account of the Prepetition Customer Obligations, Prepetition Sale Obligations, and Customer Deposits that had not been honored and paid as of the Petition Date, *provided* that sufficient funds are on deposit in the applicable accounts to cover such payments.  The Banks are authorized to rely on the representations of the Debtors as to which checks and fund transfers are authorized to be honored and paid pursuant to this Interim Order.

7.    This Interim Order is without prejudice to the rights of the Debtors and their estates to contest the validity, priority or amounts of any Prepetition Customer Obligations on any grounds they deem appropriate, and any rights of the Debtors and their estates with respect to such matters shall be reserved.

8.    Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order or any payment made pursuant to this Interim Order shall constitute, nor is it intended to constitute: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other

applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission to the validity, priority, enforceability, or perfection of any lien on, security interest in, or encumbrance on property of the Debtors' estates; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.

9.      Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors.

10.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

11.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

12.     The Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

13.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

4

**EXHIBIT B**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| OFF LEASE ONLY LLC, *et al.*,[1] | ) | Case No. 23-11388 (CTG) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |
|  | ) | **Re: Docket No. __** |

**FINAL ORDER (I) AUTHORIZING MAINTENANCE, ADMINISTRATION,
AND CONTINUATION OF THE DEBTORS' CUSTOMER PROGRAMS AND
SALE PROGRAMS, AND (II) GRANTING RELATED RELIEF**

Upon the *Motion of Debtors for an Entry of Interim and Final Orders (i) Authorizing Maintenance, Administration, and Continuation of the Debtors' Customer Programs and Sale Programs, and (ii) Granting Related Relief* (the "Motion"),[2] filed by the above-captioned debtors and debtors in possession (the "Debtors") for entry of final order (this "Final Order"), all as described in the Motion; and upon consideration of the First Day Declaration and the record of these Chapter 11 Cases; and this Court having found that (i) this Court has jurisdiction over the Debtors, their estates, property of their estates and to consider the Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware,* dated February 29, 2012, (ii) this Court may enter a final order consistent with Article III of the United States Constitution, (iii) this is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (iv) venue of this

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Off Lease Only LLC (7345), Off Lease Only Parent LLC (2753), and Colo Real Estate Holdings LLC (7453). The location of the Debtors' service address in these chapter 11 cases is 1200 S. Congress Ave., Palm Springs, FL, 33406.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409, and (v) no further or other notice of the Motion is required under the circumstances; and this Court having reviewed the Motion and having heard the statements in support of the relief requested in the Motion at a hearing before this Court, as applicable; and this Court having entered an interim order approving the Motion; and this Court having determined that the legal and factual bases set forth in the Motion and the First Day Declaration establish just cause for the relief granted in this Final Order; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors' estates, their creditors and other parties in interest; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on a final basis, as set forth herein.

2.      The Debtors are authorized, but not directed, to maintain and administer the Customer Programs and Sale Programs, and to honor the obligations thereunder as set forth in the Motion.

3.      The Debtors are authorized, but not required, to honor, in their sole discretion, the Prepetition Customer Obligations and Sale Obligations that were due and payable as of the Petition Date and to return the Customer Deposits.

4.      The Debtors are authorized, but not directed, to honor, pay, or otherwise satisfy, in their discretion, prepetition amounts on account of the Sale Obligations and Customer Deposits, in an amount not to exceed $2,310,000 on a final basis, absent further order of the Court.

5.      The Banks shall be and hereby are authorized and directed to receive, process,

2

honor and pay all checks, drafts, wires, ACH transfers, and fund transfers on account of the Prepetition Customer Obligations, Prepetition Sale Obligations, and Customer Deposits that had not been honored and paid as of the Petition Date, *provided* that sufficient funds are on deposit in the applicable accounts to cover such payments.  The Banks are authorized to rely on the representations of the Debtors as to which checks and fund transfers are authorized to be honored and paid pursuant to this Final Order.

6.      This Final Order is without prejudice to the rights of the Debtors and their estates to contest the validity, priority or amounts of any Prepetition Customer Obligations on any grounds they deem appropriate, and any rights of the Debtors and their estates with respect to such matters shall be reserved.

7.      Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order or any payment made pursuant to this Final Order shall constitute, nor it is intended to constitute: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission to the validity, priority, enforceability, or perfection of any lien on, security interest in, or encumbrance on property of the Debtors' estates; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.

DOCS_DE:244653.1

8.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

9.      Notwithstanding Bankruptcy Rule 6004(h), the terms and provisions of this Final Order shall be immediately effective and enforceable upon its entry.

10.     The Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

11.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

DOCS_DE:244653.1