**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OFF LEASE ONLY LLC,[1] | ) | Case No. 23- 11388 (CTG) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | |

**MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I)
AUTHORIZING THE DEBTORS TO (A) MAINTAIN EXISTING INSURANCE
POLICIES AND THE SURETY BOND PROGRAM AND PAY ALL OBLIGATIONS
ARISING THEREUNDER AND (B) CONTINUE THEIR INSURANCE PREMIUM
FINANCING PROGRAM; AND (II) GRANTING RELATED RELIEF**

Off Lease Only LLC, Off Lease Only Parent LLC, and Colo Real Estate Holdings LLC,
the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), seek entry of
interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Interim
Order") and **Exhibit B** (the "Final Order" and, together with the Interim Order, the "Proposed
Orders"), respectively, pursuant to sections 105, 361, 362, 363, 1107 and 1108 of title 11 of the
United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of
Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1(m) of the Local Rules of
Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of
Delaware (the "Local Rules"), (i) authorizing, but not directing, the Debtors, in their sole discretion,
to (a) maintain their existing insurance policies and the surety bond program and pay all obligations
arising thereunder or in connection therewith, and (b) continue their insurance premium financing

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number (if applicable) are: Off Lease Only LLC (7345), Off Lease Only Parent LLC (2753), and Colo Real
Estate Holdings LLC (7453). The location of the Debtors' service address in these chapter 11 cases is 1200 S.
Congress Ave., Palm Springs, FL 33406.

program; and (ii) granting related relief.  In support of this motion (the "Motion"), the Debtors rely upon and incorporate by reference the *Declaration of Leland Wilson in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), [2] filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested in this Motion are sections 105, 361, 362, 363, 1107 and 1108 of the Bankruptcy Code, and Bankruptcy Rules 6003 and 6004.

## BACKGROUND

5.      On the date hereof (the "Petition Date"), the Debtors commenced these chapter 11 cases by filing petitions for relief pursuant to chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

6.      The Debtors continue to manage and operate their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

DOCS_DE:244654.1

7.     As of the date hereof, no trustee, examiner, or official committee has been appointed in the Chapter 11 Cases.

8.     A detailed description of the Debtors, including their business operations, their corporate and capital structure, the events leading to the filing of these Chapter 11 Cases, and the facts and circumstances supporting this Motion, are set forth in greater detail in the First Day Declaration and are incorporated by reference herein.

## THE DEBTORS' INSURANCE POLICIES AND SURETY BOND PROGRAMS

9.     Prior to the Petition Date, the Debtors maintained various insurance policies providing coverage for, among other things, commercial property and site pollution, management liability, commercial automobile liability, excess directors' and officers' liability, side A directors' and officers' liability, cyber liability, physical damage liability in Florida and Texas, and commercial umbrella liability and commercial excess liability. Prior to the Petition Date, the Debtors ceased their retail operations and, accordingly, during the wind-down of their operations, the Debtors only require continuation of property, cyber liability, environmental liability, directors' and officers' and general liability policies (each an "Insurance Policy," collectively, the "Insurance Policies," and, collectively with the Financing Agreements (as defined below), the "Insurance Program").[3] The Insurance Policies were obtained from various insurance carriers (each an "Insurance Carrier" and, collectively, the "Insurance Carriers"). A list of each Insurance Policy,

---

[3]    In addition to the Insurance Policies listed on Schedule 1, the Debtors maintain an insurance policy with respect to the Debtors' workers' compensation program (the "Workers' Compensation Program"), which is described in the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (II) Granting Related Relief* (the "Wages Motion"), filed contemporaneously herewith. Except as otherwise set forth herein, any relief requested with respect to the Workers' Compensation Program is requested in the Wages Motion.

3

including its coverage type, provider, policy term, and policy number can be found attached to the Interim Order and Final Order as <u>Schedule 1</u>.[4]

10.      The aggregate amount of annual premiums on account of the Debtors' Insurance Policies is approximately Two Million Eight Hundred Ninety-Eight Thousand Two Hundred Sixty Dollars ($2,898,260.00) (including premiums the Debtors have already paid to date).   The premiums for the Debtors' Insurance Policies are paid monthly, except with respect to those that are financed. As of the Petition Date, the Debtors are current on all amounts owed on account of the Insurance Policies. However, in an abundance of caution, the Debtors seek authority to pay any outstanding prepetition obligations on account of the Insurance Policies in the event the Debtors determine there are any accrued and unpaid amounts on account of the Insurance Policies. For example, there may be prepetition amounts due and owing to the Insurance Carriers of which the Debtors are unaware, including to the extent that audits are conducted after the Petition Date. The Debtors also seek authority to continue to pay any amounts due and owing during the wind-down of the Debtors' operations. The Debtors' maintenance of their relationships with the Insurance Carriers is critical to ensuring the continued availability of insurance coverage and reasonable pricing of such coverage during the pendency of these Chapter 11 Cases and throughout the wind-down of the Debtors' operations.

11.      Two (2) of the Insurance Policies (collectively, the "<u>Financed Policies</u>") are financed through insurance premium financing agreements (the "<u>Financing Agreements</u>"), both maintained with AFCO. The Debtors believe that it is economically beneficial to finance the

---

[4]    The Debtors believe that <u>Schedule 1</u> is a complete list of their Insurance Policies. To the extent that any Insurance Policy has been inadvertently omitted from that list, the Debtors request that the Interim and Final Orders granting the relief sought herein apply to any and all of Debtors' Insurance Policies.  Additionally, the descriptions of the Insurance Policies are intended only as a summary, and the actual terms of the Insurance Policies shall govern in the event of any inconsistency with the descriptions set forth herein.

premiums rather than pay in a lump sum.  Pursuant to the Financing Agreements, AFCO has agreed to pay the insurance premiums due under the Financed Policies in exchange for an aggregate upfront payment and thereafter, monthly payments from the Debtors. Under the Financing Agreements, the Debtors paid to AFCO a down payment of approximately (i) Sixty-Three Thousand One Hundred Ninety-Seven Dollars and Seventy-Six Cents ($63,197.76) on account of one of the premium financing agreements, and (ii) Fifty-Six Thousand Nine Hundred Four Dollars and Thirty-Nine Cents ($56,904.39) on account of the other premium financing agreement with AFCO. The Debtors do not believe any amounts are accrued and unpaid on account of the Financing Agreements as of the Petition Date.  The Financed Policies are essential to the Debtors' remaining businesses during these Chapter 11 Cases and for the duration of the wind-down of the Debtors' operations.

12.     It is critical that the Debtors maintain the Insurance Policies.  If the Debtors are unable to make payments that become due after the Petition Date on account of the Insurance Policies, the unpaid Insurance Carriers may seek relief from the automatic stay to terminate such Insurance Policies.  The Debtors would be required to obtain replacement insurance on an expedited basis and at a significant cost to their estates.

13.     In light of the importance of maintaining insurance coverage with respect to their business activities during the wind-down of the Debtors' operations, the Debtors believe it is in the best interest of their estates to receive Court approval to honor their obligations under the Insurance Program as necessary.

14.     In addition, maintenance of the Insurance Program is required pursuant to the *Operating Guidelines for Chapter 11 Cases* (the "Operating Guidelines") promulgated by the Office of the United States Trustee for Region 3 (the "U.S. Trustee"), the laws of the states in

which the Debtors operate, applicable federal law, and certain of the Debtors' contracts and leases. Thus, the Debtors submit that they should be authorized, but not directed, to continue to pay premiums, claims, deductibles, taxes, charges, fees, and other obligations owed under or with respect to the Insurance Program as such obligations come due for the duration of the wind-down of the Debtors' operations.

15.     Further, the Debtors are required by certain statutes, rules, and regulations to maintain surety bonds in favor of certain third parties, often governmental units or other public agencies, to secure the Debtors' payment or performance of certain obligations (the "Surety Bond Program"). The Surety Bond Program secures essential obligations necessary for the Debtors' operations. As such, failing to provide, maintain, or timely replace their surety bonds will prevent the Debtors from undertaking essential functions related to the wind-down of their operations. The Debtors believe that the Surety Bond Program provides coverage that is typical in scope and amount for businesses within the Debtors' industry.

16.     As of the Petition Date, the Debtors have three (3) outstanding surety bonds (the "Surety Bonds") totaling approximately Two Hundred Seventy-Five Thousand Dollars ($275,000.00), which are issued by Great American Insurance Company and Hartford Fire Insurance Company, (the "Sureties"). The following table summarizes the Surety Bonds:

| Debtor | Obligee | Surety | Surety Bond Number | Nature of Bond | Bond Amount |
|---|---|---|---|---|---|
| Off Lease Only LLC | State of Texas | Hartford Fire Insurance Company | 83BSBJA8948 | Performance Bond | $200,000 |
| Off Lease Only LLC | Florida Department of Highway Safety and Motor Vehicles | Great American Insurance Company | E387536 | N/A | $25,000 |

6

| Off Lease Only LLC | Texas Department of Motor Vehicles | Great American Insurance Company | E707576 | Motor Vehicle Dealer's Surety Bond | $50,000 |
|---|---|---|---|---|---|

17.    The premiums for the surety bonds generally are determined on an annual basis when a particular surety bond is issued or renewed (the "Surety Premiums"). The aggregate annual amount paid in Surety Premiums is approximately Six Thousand Sixty-Three Dollars ($6,063.00).

18.    For the duration of the wind-down of their operations, the Debtors must be able to provide financial assurance to governmental authorities and other third parties. This, in turn, requires the Debtors to maintain the existing Surety Bond Program. Failing to provide, maintain, or timely replace their surety bonds, as necessary, will prevent the Debtors from undertaking essential functions related to the wind-down of their operations.

19.     In light of the importance of maintaining insurance coverage with respect to the wind-down of their operations, the Debtors believe it is in the best interest of their estates to receive Court approval to honor their obligations under the Surety Bond Program as they become due.

20.    The Debtors believe they are current on all Surety Premiums as of the Petition Date and intend to pay any outstanding amounts as they come due during the wind-down of their operations. However, out of an abundance of caution, the Debtors seek authorization to pay any owed and unpaid prepetition Surety Bond Obligations, to maintain the Surety Bond Program in the same manner as they did prepetition and to pay any prepetition claims arising thereunder, and to honor the bonds currently in place for the duration of the wind-down of their operations.

## RELIEF REQUESTED

21.    By this Motion, the Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (i) authorizing, but not directing, the

Debtors to (a) maintain existing Insurance Policies and the Surety Bond Program and to pay all obligations related to the Insurance Policies and the Surety Bond Program (collectively, the "Insurance Obligations"), (b) continue their insurance premium financing program; (ii) authorizing the Banks (as defined below) to honor and process check and electronic transfer requests related thereto, and (iii) granting related relief.  For the reasons set forth herein, the Debtors submit that the relief requested herein is in the best interest of the Debtors, their estate, creditors and other parties in interest, and therefore, should be granted.

## BASIS FOR RELIEF

I.      **The Court Should Authorize, but Not Direct, the Debtors, in their Discretion, to Maintain Existing Insurance Policies and Surety Bonds and Make Necessary Payments in Respect Thereof**

22.      The Insurance Policies and the Surety Bond Program are essential for the duration of the wind-down of the Debtors' operations.  Not only are some of the Insurance Policies and the Surety Bond Program required by various regulations, laws and contracts that govern the Debtors' commercial activities, section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C).  Moreover, the U.S. Trustee's Operating Guidelines require the Debtors to maintain insurance coverage throughout the pendency of the Chapter 11 Cases.

23.      Payment of the Insurance Obligations is also authorized pursuant to sections 1107 and 1108 of the Bankruptcy Code, which authorizes a debtor to operate its business.  Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

8

24.     Payment of the Insurance Obligations is necessary to ensure the Debtors' ongoing operations for the duration of the wind-down of their operations.  As noted above, insurance coverage is required by the U.S. Trustee Guidelines.  Moreover, as fiduciaries for their bankruptcy estates, the Debtors have a duty to maintain the coverage provided under the Insurance Policies and the Surety Bond Program to preserve the value of the estates.

25.     As described above, non-payment of the Insurance Obligations could result in cancellation of the Insurance Policies and the Surety Bond Program, in which case, the Debtors would not only be in violation of the U.S. Trustee Guidelines, the laws of various states in which the Debtors operate and various contractual agreements, but also, may be unable to find alternative insurance coverage at a reasonable cost.  Therefore, the potential harm that would stem from the cancellation of the Insurance Policies and the Surety Bond Program would far outweigh the amount of the Insurance Obligations.

26.     Accordingly, to meet their obligations as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the U.S. Trustee Guidelines and their contracts, the Debtors request authority to pay the Insurance Obligations.

27.     Pursuant to the "necessity of payment doctrine" and section 105(a) of the Bankruptcy Code, courts have consistently permitted immediate payment of prepetition obligations where necessary to preserve or enhance the value of a debtors' estate for the benefit of all creditors.  *See, e.g.*, *Miltenberger v. Logansport, C. & Sw. Ry. Co.*, 106 U.S. 286, 309 (1882). The modern application of the doctrine of necessity is largely unchanged from the Supreme Court's reasoning in *Miltenberger*.  *See In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the continued operation of the [debtor] in

serious jeopardy."); *see also In re Just For Feet, Inc.*, 242 B.R. 821, 825 (Bankr. D. Del. 1999) ("The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11."); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (holding that a court may authorize a debtor to pay certain prepetition claims so long as a sound business purpose exists and stating that "courts consider a variety of factors, which essentially represent a 'business judgment test'"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994).

28.     Courts in this jurisdiction have authorized similar relief in other chapter 11 cases. *See, e.g.*, *In re Tricida, Inc.*, No. 23-11024 (JTD) (Bankr. D. Del. Feb. 6, 2023) (authorizing debtors to maintain existing insurance policies and pay all existing obligations thereunder); *In re Medly Health Inc.*, No. 22-11257 (KBO) (Bankr. D. Del. Jan. 6, 2023) (same); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Sept. 9, 2022) (same); *SportTechie Inc.*, No. 21-11306 (CTG) (Bankr. D. Del. Oct. 26, 2021) (same); *In re Teligent, Inc.*, No. 21-11332 (BLS) (Bankr. D. Del. Oct. 15, 2021) (same).

## II.     The Court Should Authorize, but Not Direct, the Debtors to Make Any Necessary Payments Under the Financing Agreements

29.     The Debtors request authority, but not direction, to pay any amounts outstanding in connection with the Financing Agreements.  If the Debtors are unable to make any payments that arise under the Financing Agreements, AFCO may be permitted to terminate the Financed Policies on account of which payment has not been made.  The Debtors would then be required to obtain replacement insurance on an expedited basis and likely at a significantly increased cost.  If the Debtors are required to obtain replacement insurance and to pay a lump sum premium for such insurance in advance, this payment may be the same as or greater than what the Debtors currently

pay under the Financing Agreements. Thus, in view of the importance of maintaining the related insurance coverage and preserving their cash flow by financing their insurance premiums, the Debtors believe that it is in the best interest of their estates and creditors for the Court to authorize the Debtors to honor their obligations under the Financing Agreements, to the extent any remain outstanding for the duration of the wind-down of their operations.  Any other alternative would likely require considerable cash expenditures and would be detrimental to the Debtors' chapter 11 and wind-down efforts.

30.     Each of the Financing Agreements grants AFCO a security interest in certain payments and proceeds under the applicable Financed Policy, including any unearned premiums or other sums that may become payable under the Financed Policies.  Security interests created by premium finance arrangements are generally recognized as secured claims in bankruptcy to the extent of the amount of unearned premiums financed pursuant to such agreements.  *See TIFCO, Inc. v. U.S. Repeating Arms Co. (In re U.S. Repeating Arms Co.)*, 67 B.R. 990, 994-95 (Bankr. D. Conn. 1986); *Drabkin v. A.I. Credit Corp. (In re Auto-Train Corp.)*, 9 B.R. 159, 164-66 (Bankr. D.D.C. 1981).  Moreover, section 361 of the Bankruptcy Code specifically contemplates providing adequate protection to the extent of the diminution in value of a secured creditor's collateral, and security interests such as those under the Financing Agreements warrant adequate protection in the form of periodic payments pursuant to the terms of the Financing Agreements.  *See, e.g.*, *In re Waverly Textile Processing, Inc.*, 214 B.R. 476, 480 (Bankr. E.D. Va. 1997); *TIFCO, Inc.*, 67 B.R. at 1000.

31.     Therefore, if the Debtors were unable to continue making payments pursuant to the Financing Agreements, AFCO could seek relief from the automatic stay to cancel the respective Financed Policies in accordance with the terms of the Financing Agreements or to seek adequate

protection of its respective investment. *See Universal Motor Express, Inc.*, 72 B.R. 208, 211 (Bankr. W.D.N.C. 1987) (recognizing that a default under the financing arrangement and the resulting decline in value of the unearned premiums justified relief from the automatic stay). Accordingly, for the reasons stated herein, the Debtors submit that it is in the best interests of the Debtors and their stakeholders to continue making the premium financing payments and will avoid immediate and irreparable harm to the Debtors' estates and interference with the wind-down of the Debtors' operations.

**III.     The Court Should Authorize, but Not Direct, the Banks to Honor and Process the Debtors' Payments Related to the Insurance Program and the Surety Bond Program**

32.     The Debtors also request that the Court authorize all applicable banks and other financial institutions (the "Banks"), when requested by the Debtors, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations, if any, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments. The Debtors further request that all Banks be authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Motion.

**THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED**

33.     Certain aspects of the relief requested herein are subject to Bankruptcy Rule 6003. Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions. In that context, the court has instructed that irreparable harm is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. *See, e.g.*, *Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 F.

12

App'x 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See, e.g.*, *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653-55 (3d Cir. 1994). The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and, accordingly, should be granted.

### WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

34.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements pursuant to Bankruptcy Rule 6004(a) and the fourteen (14)-day stay of an order authorizing the use, sale, or lease of property pursuant to Bankruptcy Rule 6004(h).

### RESERVATION OF RIGHTS

35.     Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Proposed Orders is intended or should be construed as: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of any party's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of any party's rights pursuant to the Bankruptcy Code or any other applicable law; or (g) a concession by any party that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and all parties' rights to contest the extent, validity, or perfection or seek avoidance of all such liens are hereby reserved. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of any party's rights to subsequently dispute such claim.

## NOTICE

36.     The Debtors have provided notice of this motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the holders of the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Department of Justice; (d) the office of the attorneys general for the states in which the Debtors operate; (e) the United States Attorney's Office for the District of Delaware; (f) the Internal Revenue Service; (g) the Insurance Carriers; (h) the Sureties; (i) Cerberus Off Lease Only LLC; (j) Spirit Realty, L.P.; (k) Ally Bank; and (l) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, within two (2) business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

37.     No prior request for the relief sought herein has been made by the Debtors to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court enter interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: September 7, 2023
Wilmington, Delaware

Respectfully submitted,

*/s/ Laura Davis Jones*
Laura Davis Jones, Esq.  (DE Bar No. 2436)
James E. O'Neill, Esq. (DE Bar No. 4042)
Colin R. Robinson, Esq. (DE Bar No. 5524)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:  302-652-4100
Facsimile:  302-652-4400
email:  ljones@pszjlaw.com
           joneill@pszjlaw.com
           crobinson@pszjlaw.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

-and-

Brian S. Rosen, Esq. (*pro hac vice* pending)
Megan R. Volin, Esq. (*pro hac vice* pending)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile:  (212) 969-2900
Email:  brosen@proskauer.com
           mvolin@proskauer.com

-and-

Ashley M. Weringa, Esq. (*pro hac vice* pending)
Christian J. Palacios, Esq. (*pro hac vice* pending)
**PROSKAUER ROSE LLP**
70 W. Madison, Suite 3800
Chicago, Illinois 60602
Telephone: (312) 962-3550
Facsimile: (312) 962-3551
Email:  aweringa@proskauer.com
       cpalacios@proskauer.com

*Proposed Counsel for the Debtors and Debtors in Possession*

**EXHIBIT A**

**Proposed Interim Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| OFF LEASE ONLY LLC, *et al.*,[1] | ) | Case No. 23-11388 (CTG) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | **Re: Docket No. __** |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) MAINTAIN EXISTING INSURANCE POLICIES AND THE SURETY BOND PROGRAM AND PAY ALL OBLIGATIONS ARISING THEREUNDER AND (B) CONTINUE THEIR INSURANCE PREMIUM FINANCING PROGRAM; AND (II) GRANTING RELATED RELIEF

Upon the *Motion of the Debtors for Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain Existing Insurance Policies and the Surety Bond Program and Pay All Obligations Arising Thereunder, (B) Continue Their Insurance Premium Financing Program, and (II) Granting Related Relief* (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (i) authorizing, but not directing, the Debtors to (a) maintain their existing insurance policies and the surety bond program and pay all obligations arising thereunder or in connection therewith and (b) continue their insurance premium financing program; (ii) authorizing the Banks to honor and process all checks and electronic transfer requests related to the foregoing; (iii) granting related relief; and (iv) scheduling a final hearing to consider approval of the Motion on a final basis, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration and the

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if applicable) are: Off Lease Only LLC (7345), Off Lease Only Parent LLC (2753), and Colo Real Estate Holdings LLC (7453). The location of the Debtors' service address in these chapter 11 cases is 1200 S. Congress Ave., Palm Springs, FL 33406.

[2]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

record of these Chapter 11 Cases; and this Court having jurisdiction over this matter pursuant to

28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States

District Court for the District of Delaware, dated February 29, 2012, and this Court having found

that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court having found that

venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408

and 1409; and this Court having found that the relief requested in the Motion is in the best interests

of the Debtors' estates, their creditors, and other parties in interest; and this Court having found

that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were

appropriate under the circumstances and no other notice need be provided; and this Court having

reviewed the Motion and having heard the statements in support of the relief requested therein at

a hearing before this Court (the "Hearing"); and this Court having determined that the legal and

factual bases set forth in the Motion and the First Day Declaration and at the Hearing establish just

cause for the relief granted herein; and upon all of the proceedings had before this Court; and after

due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____,

2023, at__:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order

on the Motion shall be filed with the Court, and served so as to be **received** by the following parties,

**by no later than 4:00 p.m., prevailing Eastern Time, on _____, 2023:** (i) proposed counsel

to the Debtors, Proskauer Rose LLP, Eleven Times Square, New York, NY 10036 (Attn: Brian S.

Rosen (brosen@proskauer.com) and Megan R. Volin (mvolin@proskauer.com); (ii) proposed co-

counsel to the Debtors, Pachulski, Stang, Ziehl, & Jones, 919 North Market Street, 17th Floor,

2

Wilmington, Delaware 19801 (Attn: Laura Davis Jones); (iii) Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801; and (iv) if any statutory committee has been appointed in the Chapter 11 Cases, counsel to such committee.

3.       The Debtors are authorized, but not directed, to continue to maintain and perform under their Insurance Program and the Surety Bond Program during the duration of the wind-down, consistent with the Debtors' past practice.

4.       The Debtors are authorized, but not directed, (i) to continue honoring, during the duration of the wind-down, consistent with the Debtors' past practice, the Financing Agreements and (ii) to pay their regular installment payments under the Financing Agreements as the same become due during the duration of the wind-down, consistent with the Debtors' past practice.

5.       Notwithstanding anything to the contrary in the Financing Agreements, the Debtors' filing of these Chapter 11 Cases shall not constitute a default pursuant to the Financing Agreements.

6.       The Debtors are authorized, but not directed, in their discretion, to pay, honor, or otherwise satisfy premiums, claims, deductibles, administrative fees, and any other prepetition or postpetition obligations on account of the Insurance Program and the Surety Bond Program, to the extent that the Debtors determine, in their sole discretion, that such actions are in the best interests of their estates.

7.       All Banks are authorized, but not directed, when requested by the Debtors, in the Debtors' discretion, to process and honor all checks and fund transfer requests for prepetition obligations related to the Insurance Program and the Surety Bond Program that the Debtors are authorized to pay pursuant to this Interim Order, regardless of whether the checks were presented

3

or fund transfer requests were submitted before or after the Petition Date, provided, that funds are available in the Debtors' accounts to cover the checks and fund transfers. The Banks are authorized, but not directed, to rely on the Debtors' designation of any particular check or fund transfer request to be honored, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Interim Order. The Debtors are authorized to issue new postpetition checks to replace any checks, drafts and other forms of payment, or effect new postpetition electronic transfers, which may be inadvertently dishonored or rejected, and to reimburse any expenses that may be incurred as a result of any bank's failure to honor a prepetition check.

8.      Neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to this Interim Order, shall be deemed an admission as to the validity of the underlying obligation or a waiver of any rights any party in interest may have to subsequently dispute any obligation on any ground that applicable law permits.

9.      Nothing in this Interim Order or the Motion shall be deemed to constitute assumption or adoption of any agreement pursuant to section 365 of the Bankruptcy Code. Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

10.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

11.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

4

12.     The Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

13.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**SCHEDULE 1**

**Insurance Policies**

| Schedule of Insurance Policies | | | |
|---|---|---|---|
| **Type of Policy Coverage** | **Insurance Carrier(s)** | **Policy Number** | **Policy Term** |
| Property | Starr Surplus Lines Insurance Company | SLSTPTY11776523 | 04/1/2023 – 04/1/2024 |
| D&O | Travelers Casualty and Surety Company of America | 107181358 | 11/15/2022– 11/15/2023 |
| Excess D&O | Liberty Mutual Insurance | DO6NACEPOO002 | 11/15/2022– 11/15/2023 |
| Side A D&O | Berkley Insurance Company | BPRO8086764 | 11/15/2022– 11/15/2023 |
| Commericial Liability Umbrella | Falls Lake Insurance Companies | AXS000024203 | 04/1/2023 – 04/1/2024 |
| Cyber | Ironshore Indemnity | EO5NACEDAK002 | 11/6/2022– 11/6/2023 |
| Site Pollution | Allied World Insurance Company (U.S.) Inc. | 0312 - 1168 | 11/15/2022 – 11/15/2025 |

**EXHIBIT B**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| OFF LEASE ONLY LLC, *et al.*,[1] | ) | Case No. 23-11388 (CTG) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |
|  | ) | **Re: Docket No. __** |

### FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) MAINTAIN EXISTING INSURANCE POLICIES AND THE SURETY BOND PROGRAM AND PAY ALL OBLIGATIONS ARISING THEREUNDER, (B) CONTINUE THEIR INSURANCE PREMIUM FINANCING PROGRAM; AND (II) GRANTING RELATED RELIEF

Upon the *Motion of the Debtors for Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain Existing Insurance Policies and the Surety Bond Program and Pay All Obligations Arising Thereunder, (B) Continue Their Insurance Premium Financing Program, and (II) Granting Related Relief* (the "Motion")[2] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order") (i) authorizing, but not directing, the Debtors to (a) maintain their existing insurance policies and the surety bond program and pay all obligations arising thereunder or in connection therewith and (b) continue their insurance premium financing program; (ii) authorizing the Banks to honor and process all checks and electronic transfer requests related to the foregoing; (iii) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration and the record of these Chapter 11 Cases; and this Court having jurisdiction over this matter

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if applicable) are: Off Lease Only LLC (7345), Off Lease Only Parent LLC (2753), and Colo Real Estate Holdings LLC (7453). The location of the Debtors' service address in these chapter 11 cases is 1200 S. Congress Ave., Palm Springs, FL 33406.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and the First Day Declaration and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED on a final basis to the extent set forth herein.

2.      Any objections to the Motion not resolved or otherwise withdrawn are OVERRULED.

3.      The Debtors are authorized, but not directed, in their discretion, to pay, honor, or otherwise satisfy premiums, claims, deductibles, administrative fees, and any other prepetition or postpetition obligations on account of the Insurance Program and the Surety Bond Program, to the extent that the Debtors determine, in their sole discretion, that such actions are in the best interests of their estates.

4.      The Debtors are authorized, but not directed, (i) to continue honoring, during the duration of the wind-down, consistent with the Debtors' past practice, the Financing Agreements, and (ii) to pay their regular installment payments under the Financing Agreements as the same become due during the duration of the wind-down, consistent with the Debtors' past practice.

5.      Notwithstanding anything to the contrary in the Financing Agreements, the Debtors' filing of these Chapter 11 Cases shall not constitute a default pursuant to the Financing Agreements.

6.      All banks are (a) authorized to receive, process, honor and pay any and all checks, drafts, electronic transfers and other forms of payment used by the Debtors to satisfy their Insurance Obligations, whether presented before, on or after the Petition Date; provided that sufficient funds are on deposit in the applicable accounts to cover such payments and that the total amount of Insurance Obligations does not exceed the amount authorized to be paid pursuant to this Final Order, and (b) prohibited from placing any holds on, or attempting to reverse, any automatic transfers on account of Insurance Obligations.  The Debtors are authorized to issue new postpetition checks to replace any checks, drafts and other forms of payment, or effect new postpetition electronic transfers, which may be inadvertently dishonored or rejected, and to reimburse any expenses that may be incurred as a result of any bank's failure to honor a prepetition check.

7.      Neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to this Final Order, shall be deemed an admission as to the validity of the underlying obligation or a waiver of any rights any party in interest may have to subsequently dispute any obligation on any ground that applicable law permits.

3

DOCS_DE:244654.1

8.      Nothing in this Final Order or the Motion shall be deemed to constitute assumption or adoption of any agreement pursuant to section 365 of the Bankruptcy Code.  Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

9.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

10.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

11.     The Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

12.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

DOCS_DE:244654.1

**SCHEDULE 1**

**Insurance Policies**

| Schedule of Insurance Policies | | | |
|---|---|---|---|
| **Type of Policy Coverage** | **Insurance Carrier(s)** | **Policy Number** | **Policy Term** |
| Property | Starr Surplus Lines Insurance Company | SLSTPTY11776523 | 04/1/2023 – 04/1/2024 |
| D&O | Travelers Casualty and Surety Company of America | 107181358 | 11/15/2022– 11/15/2023 |
| Excess D&O | Liberty Mutual Insurance | DO6NACEPOO002 | 11/15/2022– 11/15/2023 |
| Side A D&O | Berkley Insurance Company | BPRO8086764 | 11/15/2022– 11/15/2023 |
| Commericial Liability Umbrella | Falls Lake Insurance Companies | AXS000024203 | 04/1/2023 – 04/1/2024 |
| Cyber | Ironshore Indemnity | EO5NACEDAK002 | 11/6/2022– 11/6/2023 |
| Site Pollution | Allied World Insurance Company (U.S.) Inc. | 0312 - 1168 | 11/15/2022 – 11/15/2025 |