**<u>Exhibit A</u>**

## WHOLESALE SECURITY AGREEMENT

This Agreement made this _7th_ day of _January_, 20_08_ by and between **Off Lease Only, Inc.** (hereinafter referred to as "Dealer") and GMAC, an entity organized under the laws of Delaware, with an office at **12740 Gran Bay Parkway, West – Suite 2200, Jacksonville, FL. 32258**.

WHEREAS, Dealer has made application for a line of credit with GMAC, to finance Dealer's acquisition of motor vehicles from manufacturers, distributors, or others, to be secured by one or more security agreements covering motor vehicle inventory and other assets of Dealer.

NOW, THEREFORE, in consideration of the mutual promises contained herein, Dealer and GMAC agree as follows:

1.   GMAC hereby extends to Dealer a line of credit on the terms and conditions hereinafter set forth. The line of credit which has been extended, and which is extended hereunder, shall be used exclusively for the purpose of acquiring motor vehicles to be placed in Dealer's inventory for sale or lease, or borrowing money on the security of motor vehicles already held in Dealer's inventory for sale or lease. GMAC will advance funds in payment of said vehicles so acquired or held in an amount not in excess of the invoice price thereof in the case of new motor vehicles so acquired or held by Dealer, and not in excess of a mutually agreed valuation of used motor vehicles so acquired or held.

2.   The amount owed by Dealer to GMAC under this Agreement shall at any time be the total aggregate advances under Paragraph 1 of this Agreement, together with interest at the rate described in Paragraph 3 below, (collectively, the "Indebtedness").

3.   Dealer shall pay GMAC interest on a monthly basis, as billed, calculated on the amount of advances outstanding from the date of each such advance to the date of repayment thereof, at the rate per annum herein incorporated by reference to the rate designated under the GMAC Wholesale Plan as the rate currently in force at each such date of advance, provided, however, that if the rate designated under the GMAC Wholesale Plan is subsequently changed, the rate per annum, commencing on the effective date of each such change, shall, at the option of GMAC be such changed rate as to each prior advance hereunder which is outstanding on said effective date for such portion of said period or periods remaining after said effective date, and provided further that as to each advance hereunder which remains outstanding after the date repayment thereof is due, the rate per annum, commencing on such date, shall be the highest contract or corporate rate permitted by law. In no event will the interest rate to be applied to any advance hereunder exceed the highest contract or corporate rate permitted by law at the date of such advance.

4.   At the time the Dealer sells or otherwise disposes of vehicles or other assets for which GMAC has advanced funds pursuant to this Agreement, Dealer will immediately pay GMAC the amount of money which GMAC has advanced with respect to such vehicles or other assets, together with any unpaid interest thereon.

5.   In order to secure repayment of any and all Indebtedness now owing or hereafter owing to GMAC, whether such Indebtedness arises as a part of the transactions contemplated by this Agreement or otherwise, Dealer grants to GMAC a security interest in all motor vehicle inventory, and the proceeds thereof (the "Collateral"), which shall include all new and used vehicles held for sale or lease, now owned or hereafter acquired, and all additions and accessions thereto and all proceeds of such vehicles, including insurance proceeds.

GMAC's security interest in the vehicles shall attach to the full extent provided or permitted by law to the proceeds, in whatever form, of any retail sale or lease thereof by Dealer until such proceeds are accounted for, and to the proceeds of any other disposition of said vehicles or any part thereof. This grant of a security interest is additionally secure collectively the payment by Dealer of the amounts of all advances or obligations to advance made by GMAC to any manufacturer, distributor or other seller, and the interest due thereon.

6.   Upon the request of GMAC, Dealer will also execute and deliver to GMAC from time to time security agreements, together with further documents as requested by GMAC, which security agreements (and further documents, if any) shall be in such form as GMAC may in its sole discretion require.

7.   In the event of the Dealer's default in the payment of the amount advanced by GMAC or in the due performance of, or compliance with, any of the terms and conditions hereof, or in the event of a foreclosure proceeding or bankruptcy, insolvency or receivership instituted by or against the Dealer or the Dealer's property, or in the event that GMAC deems itself insecure or said Collateral or any part thereof is in danger of misuse, loss, seizure or confiscation, GMAC may take immediate possession of said Collateral, without demand or further notice and without legal process; for this purpose and in furtherance thereof, the Dealer shall, if GMAC so requests, assemble said Collateral and make it available for GMAC in a reasonably convenient place designated by it, and GMAC shall have the right, and the Dealer does hereby authorize and empower GMAC to enter upon the premises wherever said Collateral may be and remove same.  In the event of repossession of said Collateral, GMAC shall have such rights and remedies as are provided and permitted under Article 9 of, and relating to secured transactions under, the Uniform Commercial Code and other applicable law.  Dealer shall pay all expenses and reimburse GMAC for any expenditures, including reasonable attorneys' fees and legal expenses in connection with GMAC's exercise of any of its rights and remedies.

8.   No transfer, renewal, extension or assignment of this Agreement or any interest hereunder and no loss, damage or destruction of the Collateral, shall release Dealer from the obligation secured hereunder.

9.   Dealer shall at all times keep the Collateral free from all taxes, liens and encumbrances, and any sums of money that may be paid by GMAC in release or discharge thereof, or for insurance coverage if Dealer fails to arrange for such coverage as required by this Agreement or otherwise, shall be paid on demand as an additional part of the Indebtedness secured hereunder.  Dealer shall not mortgage, pledge, grant or create any other security interest in the Collateral and shall not transfer or otherwise dispose of said Collateral without the consent of GMAC until the payment of the Indebtedness hereunder.  Any and all cash proceeds of any sale permitted shall be fully accounted for and promptly paid to GMAC, to be applied to the payment of the Indebtedness secured hereunder. Dealer authorizes GMAC or any of its officers or employees or agents to execute such documents in Dealer's behalf and to supply any omitted information and correct patent errors in any document executed by Dealer.

10.  Dealer will insure the Collateral against loss, damage or destruction due to fire or physical damage and shall procure and maintain liability insurance against all liability for bodily injury or damage to property in such form and amount as GMAC may require.  Copies of such policies will be provided to GMAC upon request.  Dealer grants to GMAC a security interest in any proceeds of insurance affecting the Collateral.

11.  Notwithstanding any provision in this Agreement to the contrary, the line of credit extended hereunder may be canceled at any time by GMAC at its election without notice or demand; and in such event, all sums for which Dealer shall be indebted to GMAC under this Agreement or otherwise, plus interest, shall immediately become due and payable without notice.

12.  All provisions of the GMAC Wholesale Plan, including the insurance requirements expressed therein, shall apply to all floor plan financing transacted hereunder, except insofar as any provision of such plan may be inconsistent with the provisions of this Agreement, in which event the provisions of this Agreement shall control.

13.  Dealer will do all acts and execute all instruments of further assurance as shall be reasonably required by GMAC to do or effectuate for the purpose of fully carrying out and effecting this Agreement and its intent, and shall furnish all documents that GMAC shall reasonably request. When requested, Dealer also agrees to do all things necessary to perfect GMAC's security interest in the Collateral.

14. No delay or omission in the exercise of any power or remedy herein provided or otherwise available to GMAC shall impair or affect GMAC's right thereafter to exercise same.

15. Any provision of this Agreement prohibited by law shall be ineffective to the extent of such prohibition without invalidating the remaining provisions hereof.

16. This Agreement shall be interpreted according to the laws of the State of Florida and shall be binding upon and inure to the benefit of each of the parties hereto and their respective legal representatives, successors and assigns.

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed by its duly authorized representative this _7th_ day of _January_ , 20_08_.

WITNESS:

_(Signature)_

Print Name: _Joseph S. Glevenyak_

_(Signature)_

Print Name: _Connie Lynn Destrace_

**Off Lease Only, Inc.**

By: _____

_Mark Fische_
Type or print Name

Title: _Director_

**GMAC**

By: _____

_F. W. Rose_
Type or print Name

_(Signature)_

Print Name: _Joseph S. Glevenyak_

_(Signature)_

Print Name: _Connie Lynn Destrace_

Title: Assistant ~~Secretary~~ / Treasurer

GMAC Form W-178FL
(1/2000)