**Exhibit F**

Ally Confidential

## CREDIT BALANCE AGREEMENT

This Credit Balance Agreement ("Agreement") is between Ally Bank (Ally Capital in Hawaii, Mississippi, Montana and New Jersey) ("Bank"), and Off Lease Only LLC fka Off Lease Only Inc., an entity organized under the laws of Florida, whose address is 1200 S Congress Ave, Palm Springs, Florida 33406 ("Obligor").

### Recitals

A. Obligor has executed a Wholesale Security Agreement and/or Inventory Financing and Security Agreement (as amended from time to time, the "Wholesale Agreement") with the Bank.

B. The Bank has entered or may later enter into other commercial finance agreement(s) to provide loans, financing, or other credit accommodations to Obligor under which interest accrues and is payable to the Bank (all such agreements by Obligor, including the Wholesale Agreement, being the "Finance Agreements").

C. Obligor has a substantial interest in the satisfactory performance of the Finance Agreements because, among other reasons, Obligor has an obligation (direct or contingent) for repayment of the amounts due.

D. Obligor wishes to deliver money to Bank to provide a basis for reducing the principal indebtedness of the Obligor to the Bank (such outstanding indebtedness, the "Outstanding Amount") thereby reducing the amount of interest payable to the Bank under the Wholesale Agreement as more fully set forth in paragraph 6 of this Agreement, but without requiring that the money be applied in the form of accounting entries to reduce the principal balances of individual advances made pursuant to the Wholesale Agreement on the books of the Bank. The Bank is willing to accommodate that request on the terms and conditions set forth in this Agreement.

Bank and Obligor agree as follows:

### Agreement

In consideration of the premises and mutual covenants set forth herein, the sufficiency of which is acknowledged, the parties agree that each of the Recitals is incorporated herein and deemed to be the agreement of the parties to this Agreement and relied upon by the parties in agreeing to the terms of this Agreement and further agree as follows:

1. Obligor may, at its election, deliver drafts, checks, electronic monetary credits, or other good funds to Bank to be held as principal payments made on the Obligor's obligations under the Wholesale Agreement, and the Bank will hold and treat these principal payments as a reduction of the Obligor's indebtedness on the Wholesale Agreement for the total of these funds (the "Credit Balance"). Obligor acknowledges that principal payments made pursuant to this Agreement will not result in the release of any collateral pledged to Bank and that Obligor remains obligated to repay the principal amount advanced for each vehicle financed by Bank within Obligor's established release period. Bank may, in its sole discretion, modify the means by which funds may be transmitted or provided to Bank.

2. Obligor agrees to maintain (a) a Credit Balance equal to or greater than $10,000,000.00 so long as the consolidated floorplan Outstanding Amount is equal to or less than $160,000,000.00 and (b) a Credit Balance equal to or greater than $11,250,000.00 so long as the consolidated floorplan Outstanding Amount is greater than $160,000,000.00 at all times so long as any Obligor owes any debt to Bank or until Bank otherwise agrees in writing (the "Minimum Required Balance").

Ally Confidential

3.   The Credit Balance must be no less than the Minimum Required Balance and no greater than 50% of the total principal amount (excluding principal amounts owed by Obligor to Bank for financing accommodations provided in connection with vehicles ordered, sold or leased under the delayed payment privilege and/or as fleet vehicles ("Fleet Vehicles") owed to the Bank from time to time for new and used vehicle inventory financed by the Bank under the Wholesale Agreement (the "Wholesale Financing"). Although Fleet Vehicles do not generally qualify for purposes of determining the maximum amount of the Credit Balance, the Bank may, in its sole discretion, permit Fleet Vehicles to qualify in certain limited instances where, for example, the Fleet Vehicles do not represent significant volume or are not readily identifiable. In the event that the Credit Balance exceeds the maximum amount permitted by this Agreement, Bank may, in its sole discretion, refund the excess to Obligor via SmartCash.

4.   Subject to the limitations of paragraph 3, Obligor may, on any business day, increase the Credit Balance by making a principal payment of not less than $1,000. Bank will use its best efforts to add payments received by Bank in immediately available funds to the Credit Balance on the same business day or as soon thereafter as practicable. Principal payments received in other than immediately available funds will be added to the Credit Balance when good funds become available to the Bank.

5.   Absent a default under any obligation of Obligor to the Bank ("Default"), Obligor may, upon written request, require Bank to repay all or a portion of the Credit Balance that exceeds the Minimum Required Balance. Except upon termination of this Agreement, the minimum repayment amount is $1,000. Bank will honor such requests as soon as practicable; however, funds delivered to Bank via check will not be available for repayment for at least ten business days after receipt by Bank and funds delivered to Bank via ACH will not be available for repayment for at least three business days after receipt by Bank.

6.   Once each month, the Bank will credit against interest owed under the Wholesale Agreement the applicable amount described in the remainder of this paragraph 6 (the "Applicable Interest Credit"). Additionally, at the election of the Bank, in its sole discretion and with notice to the Obligor, the Bank may apply the Applicable Interest Credit to interest obligations due and owing under other Finance Agreements. The Applicable Interest Credit will be determined by multiplying each daily Credit Balance by a rate (the "Rate") calculated in accordance with the following formula:

   a)   For that portion of the Credit Balance that is less than or equal to 10% of the principal amount owed to Bank for Wholesale Financing, the Rate will be the then-current Wholesale Financing new vehicle rate of interest (less any applicable incentives) less one-hundred basis points (1.00%).

   b)   For that portion of the Credit Balance that exceeds 10% but is less than or equal to 50% of the principal amount owed to Bank for Wholesale Financing, the Rate will be the then-current Wholesale Financing new vehicle rate of interest (less any applicable incentives) less two-hundred basis points (2.00%).

Obligor understands that the Bank will incur expense in providing this Credit Balance service to Obligor and the Applicable Interest Credit afforded to the Obligor reflects an allowance to the Bank for its expenses in providing this service.

The Bank may modify the Applicable Interest Credit in its sole discretion upon thirty days prior written notice to Obligor. If the Applicable Interest Credit exceeds the interest owed Bank under the Wholesale Agreement for a particular monthly billing period, the excess will be either carried forward as a credit against interest due under the Wholesale Agreement in subsequent billing periods or applied to interest owed under other Finance Agreements, as determined by the Bank in its sole discretion. After Default, or upon the termination of the Wholesale Agreement, Applicable Interest Credits will cease to accrue and will cease to be applied, except as may be agreed by Bank in writing.

Ally Confidential

7.  Upon Default, Bank may immediately apply all principal payments made pursuant to this Agreement to such principal advances made pursuant to the Wholesale Agreement as Bank may determine in its sole discretion.

8.  The Obligor understands that the Credit Balance is a principal payment of an obligation under the Wholesale Agreement and is not a deposit or insured by the Federal Deposit Insurance Corporation.

9.  This Agreement does not alter any obligation to pay Bank when and in the amounts required under any of the Finance Agreements.

10. Bank and Obligor may implement this Agreement by conducting business with the (non-exclusive) use of electronic, computer, digital, or other paperless means, including the good faith reliance on electronic mail, facsimile transmittal, telephonic, or other usual and regular forms of communication (by Bank or other commercial parties) with or without confirmation or authentication of the communication by receipt of an original signature, document, paper, or otherwise.

11. Bank may assign this Agreement and/or its rights under this Agreement in the event that Bank also assigns its right to be paid the amounts owed to it under its Wholesale Agreement.  Bank may also assign this Agreement and/or its rights under this Agreement to one of its affiliates in the event that Bank ceases to provide ongoing wholesale floorplan financing to Obligor and such affiliate is providing or will provide such financing to Obligor.  Otherwise, this Agreement must not be assigned by any party without the prior written consent of the other.  In the event that Bank assigns this Agreement to Ally Financial ("AFI") in connection with an assignment of amounts owed by Obligor under the Wholesale Agreement or because Bank will not provide ongoing wholesale floorplan financing to Obligor and AFI provides or will provide such financing, Obligor agrees that any principal payments made pursuant to this Agreement will be held and used by AFI as principal reductions on any wholesale indebtedness assigned by Bank to AFI, any wholesale advances made by AFI prior to such assignment and any wholesale advances made by AFI after such assignment and that, effective as of the date of such assignment, this Agreement will be deemed to be amended such that wherever the words "Bank" or "Ally Bank" appear in this Agreement (other than in this paragraph 11), they will be replaced with "Ally Financial"

12. Any provision of this Agreement that is prohibited by law is ineffective to the extent of those prohibitions, but does not invalidate the remaining provisions of this Agreement.

13. Except as set forth herein, this Agreement may be changed only in a writing signed by both parties.

14. Any forbearance, delay or failure by Bank in exercising any of its rights or remedies does not constitute a waiver of such rights or remedies or of any existing or future default by Bank.

15. Subject to the limitations of paragraphs 2 and 3, any party may terminate this Agreement after giving ten days prior written notice to the others, provided, however that the Obligor may not terminate this Agreement if a Default then exists and no such termination shall affect the rights or remedies that Bank had immediately before the effective date of such termination.

16. This Agreement constitutes the entire agreement of the parties regarding its subject matter. The execution of this Agreement by Bank and Obligor replaces all previously executed agreements between them or between Ally Financial and Obligor of substantially similar nature and type, effective as of the date of this Agreement.

Ally Confidential

17.    This Agreement may be signed in counterparts, each of which is deemed an original, and all of which taken together constitute one and the same agreement.  The signatures of the parties, exchanged via fax or e-mail, shall constitute and be deemed original signatures for all purposes.

Signed February 13, 2023

Ally Bank

By:    _____

Name:    Kenneth D Geyer

Title:    Authorized Representative

Off Lease Only LLC

By:    _____

Name:    Leland Wilson

Title:    CEO

For purposes of acknowledging its rights and obligations pursuant top Paragraph 11 above

Ally Financial

By:    _____

Name:    Kenneth D Geyer

Title:    Authorized Representative