# EXHIBIT B

**REDLINE OF CASH  COLLATERAL ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| OFF LEASE ONLY LLC,[1] | ) | Case No. 23-~~——~~-11388 (~~——~~CTG) |
| | ) | |
| Debtors. | ) | ~~(Joint Administration Requested)~~(Jointly Administered) |
| | ) | |
| | ) | |

**INTERIM ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (~~IV~~V) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases"), seeking entry of an interim order for interim use of cash collateral (this "Interim Order") and entry of a Final Order (as defined herein) pursuant to sections 105, 361, 362, 363, 503, 507 and 552 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court, District of Delaware (the "Local Rules"), *inter alia*:

(i)      authorizing the Debtors to use "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "Cash Collateral"), including Cash Collateral in which the

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if applicable) are: Off Lease Only LLC (7345), Off Lease Only Parent LLC (2753), and Colo Real Estate Holdings LLC (7453). The location of the Debtors' service address in these chapter 11 cases is 1200 S. Congress Ave., Palm Springs, FL 33406.

[2]  Capitalized terms used but not defined herein have the meanings given to them in the Motion or the *Declaration of Leland Wilson in Support of Chapter 11 Petitions and First Day Motions (the "First Day Declaration")*, as applicable.

Prepetition Secured Parties (as defined below) have a Lien or other interest as of the Petition Date;

(ii)     modifying the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of this Interim Order;

(iii)     granting the Prepetition Secured Parties, as of the Petition Date and in accordance with the relative priorities set forth herein, the Prepetition Secured Parties Adequate Protection (as defined below), which consists of, among other things, the Adequate Protection Liens (as defined below), Adequate Protection Superiority Claims (as defined below);

(iv)     scheduling a final hearing on the Motion (the "Final Hearing") to be held no later than twenty five (25) calendar days after the Petition Date to consider entry of a final order that grants the relief requested in the Motion on a final basis, (the "Final Order"); and

(v)     providing for the immediate effectiveness of this Interim Order and waiving any applicable stay (including under Bankruptcy Rule 6004) to permit such immediate effectiveness.

The Court having considered the Motion, the exhibits attached thereto, the objections filed thereto, the First Day Declaration, the Transition Stipulation (as defined below), and the evidence submitted and arguments made at the interim hearing (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the Motion to the extent set forth below is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise being

fair and reasonable and in the best interests of the Debtors, their estates and all parties-in-interest, and essential for the preservation of the value of the Debtors' assets; and it appearing that that approval of the interim relief requested in the Motion is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.    **Petition Date**.  On September 7, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").

B.    **Debtors in Possession**.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.    **Jurisdiction and Venue**.  This Court has jurisdiction over the Chapter 11 Cases, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This Court may enter a final order consistent with Article III of the United States Constitution. Venue for the Chapter 11 Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3]  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

D.   **Committee Formation**.  As of the date hereof, the United States Trustee for the District of Delaware (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (any such committee subsequently appointed, a "Creditors' Committee").

E.   **Notice**.  Notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

F.   **Debtors' Stipulations**.   Subject and without prejudice to, the rights of parties-in-interest, including any Creditors' Committee or any other statutory committee that may be appointed in the Chapter 11 Cases, as set forth in decretal paragraph 13 hereof, the Debtors, on their own behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs F (i) through (iv) below are referred to herein, collectively, as the "Debtors' Stipulations"):

(i)   *Prepetition Secured Facilities and Obligations*.  The Debtors are party to three (3) secured credit facilities:

(a)   Floorplan Agreements:

~~(a)~~ (1) Off Lease Only LLC ("OLO"), as borrower, ~~Off Lease Only Parent LLC ("Parent"), as Guarantor,~~ and Ally ~~Bank and~~ Financial Inc. ("Ally Financial ~~(collectively~~" and together with Ally Bank, the "Ally Parties") are party to that certain Wholesale Security Agreement, dated as of January 7, 2008 (as amended, supplemented, or modified from time to time, the "Wholesale Security Agreement");

(2) OLO, as borrower, and Ally Bank are party to that certain Master Wholesale Agreement, dated as of October 11, 2010 (as amended,

supplemented, or modified from time to time, the "Master Wholesale Agreement"). Pursuant to the Wholesale Security Agreement and Master Wholesale Agreement, the Ally Parties provided inventory financing and lines of credit to OLO prior to the Petition Date;

(3) Pursuant to that certain Guaranty, dated as of September 6, 2022 (the "Parent Guaranty"), Off Lease Only Parent, LLC ("Parent") guaranteed all obligations owed to the Ally Parties arising under the Wholesale Security Agreement and Master Wholesale Agreement;

(4) In connection with the Wholesale Security Agreement and Master Wholesale Agreement, OLO and the Ally Parties are also parties to that certain (i) General Security Agreement, dated as of November 15, 2019; (ii) Cross Collateral, Cross Default and Guarantee Agreement, dated as of August 13, 2020; (iii) Credit Balance Agreement, dated as of February 13, 2023; and (iv) other related agreements and security documents (collectively with the Wholesale Security Agreement, Master Wholesale Agreement, and Parent Guaranty, the "Floorplan ~~Agreement")~~Agreements."

(b)     OLO, as borrower, Parent, as guarantor, and Spirit Realty, L.P ("Spirit"), as lender are party to that certain Loan Agreement, dated as of March 25, 2022 (as amended, supplemented, or modified from time to time (the "Katy Loan Agreement").

(c)     Parent, as maker, OLO and Colo Real Estate Holdings LLP, as guarantors, and Cerberus Off Lease Only LLC ("Cerberus" and, together with the Ally Parties and Spirit, the "Prepetition Secured Parties"), as holder, are party to that certain

5

Promissory Note, dated as of August 5, 2022 (as amended, supplemented, or modified from time, the "Cerberus Note" and, together with the Floorplan ~~Agreement~~Agreements and Katy Loan Agreement, the "Prepetition Secured Facilities").

The agreements documenting the Prepetition Secured Facilities, as amended, supplemented, or modified from time to time, are referred to herein as the "Prepetition Loan Documents."

(ii)    *Prepetition Liens and Prepetition Collateral*.  As more fully set forth in the Prepetition Loan Documents, prior to the Petition Date:

(a)    Pursuant to the Floorplan ~~Agreement~~Agreements, the Ally ~~holds a lien~~Parties assert liens on (i) all of the ~~Debtors'~~ vehicles in which the Debtors had, have or in the future acquire an interest in, including but not limited to, vehicles for which either of the Ally Parties provides financing, and regardless of whether such vehicles are inventory or equipment, ~~and~~ (ii) all funds provided to or held by Ally, regardless of whether such funds are considered accounts, general intangibles, or otherwise, and (iii) any and all proceeds thereof, including insurance proceeds (collectively, the "Ally Collateral").[4] The Ally Parties' liens on the Ally Collateral are evidenced by, *inter alia*, UCC-1 financing statements.

(b)    Pursuant to the Katy Loan Agreement, Spirit ~~holds~~asserts a lien on (i) land, improvements, fixtures, easements, and equipment related to certain real property located in Katy, Texas, and (ii) property and rights of OLO that may be subject to the Uniform Commercial Code (collectively, the "Spirit Collateral").

---

[4] ~~Notwithstanding anything to the contrary herein, the Debtors reserve the right to contest any security interest Ally may assert in proceeds of the Ally Collateral.~~

6

(c)       Pursuant to the Cerberus Note, Cerberus ~~holds~~asserts a lien on substantially all prepetition assets of the Debtors not constituting Ally Collateral (the "Cerberus Collateral" and, together with the Ally Collateral and Spirit Collateral, the "Prepetition Collateral" and the liens securing the Prepetition Secured Parties' interests in the Prepetition Collateral, the "Prepetition Liens").

(iii)      *Validity, Perfection and Priority of Prepetition Liens and Prepetition Secured Obligations.*  As of the Petition Date:  (a) the Prepetition Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to certain liens otherwise permitted by the Prepetition Loan Documents and any other lien arising as a matter of law (in each case, to the extent that such existing liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition Liens as of the Petition Date or were valid non-avoidable senior liens that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, the "Permitted Prior Liens")[~~5~~4]; (b) the Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected and were granted by the Prepetition Secured Parties to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value; (c) the Prepetition Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Secured Parties enforceable in accordance with the terms of the Prepetition Loan Documents; (d) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Secured Obligations exist, and no portion of the Prepetition

---

[~~5~~4] Nothing herein shall constitute a finding or ruling by this Court that any such Permitted Prior Lien is valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the Prepetition Secured Parties, or a Creditors' Committee (if appointed), to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any alleged Permitted Prior Lien and/or security interests.

Liens or Prepetition Secured Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no, and will assert no, claims, objections, challenges, and/or causes of action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code or otherwise or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, consultants, directors, and employees arising out of, based upon or related to the Debtors, the Debtors' business or the Prepetition Secured Facility; (f) the Debtors have waived, discharged and released any right to challenge any of the Prepetition Secured Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent and priority of the liens securing the Prepetition Secured Obligations (for the avoidance of doubt, subject and without prejudice to, the rights of parties-in-interest, including any Creditors' Committee or any other statutory committee that may be appointed in the Chapter 11 Cases, as set forth in decretal paragraph 13 herein), and (g) the Prepetition Secured Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(iv)    *Prepetition Secured Obligations*.    Pursuant to the Floorplan ~~Agreement~~Agreements, the Ally Parties provided to the Debtors with a $180 million line of credit, ~~approximately $67 million~~ of which no less than $57,691,584.50[5] in principal amounts was outstanding as of the Petition Date (together with all interest, costs, expenses and attorney's

---

[5]    The Ally Parties contend that they applied $10 million during the two day period prior to the Petition Date to reduce outstanding indebtedness from $67,691,584.50.  The Debtors reserve their rights with respect to such actions.

fees payable by the Debtors under the terms of the Floorplan Agreements, the "Ally Obligations"). Pursuant to the Katy Loan Agreement, Spirit provided the Debtors a term loan in the aggregate principal amount of $13.45 million (the amounts outstanding pursuant to such loan, the "Spirit Obligations"). Pursuant to the Cerberus Note, Cerberus provided the Debtors with a promissory note in the principal amount of $48,705,431.00, of which $52,835,616.20 in principal and interest was outstanding as of the Petition Date (the "Cerberus Obligations" and, together with the Ally Obligations and Spirit Obligations, the "Prepetition Secured Obligations").

G.     **Cash Collateral**.  All of the Debtors' cash, including any proceeds of Prepetition Collateral and any cash in deposit accounts, wherever located, constitutes Cash Collateral of one or more of the Prepetition Secured Parties as set forth in the Prepetition Loan Documents.

H.     **Findings Regarding Use of Cash Collateral**.

(i)     *Entitlement to Adequate Protection*.  The Prepetition Secured Parties are each entitled to receive adequate protection as set forth in this Interim Order pursuant to sections 361 and 363, of the Bankruptcy Code, to the extent of any aggregate diminution in value resulting from, among other things, the Debtors' use, of Cash Collateral and other Prepetition Collateral, the subordination to the Carve Out (as defined herein) and the imposition of the automatic stay ("Diminution in Value") of each of their respective interests in the Prepetition Collateral (including Cash Collateral).

(ii)     *Need for Use of Cash Collateral*.  The Debtors have an immediate and critical need to use Cash Collateral on an interim basis in order to, ~~administer these Chapter 11 Cases and~~ protect and preserve the Prepetition Secured Parties' collateral.   The Debtors do not have sufficient available sources of working capital and/or financing to ~~complete their~~facilitate

9

the full wind-down of their operations, transfer the Ally Collateral to the Ally Parties for liquidation and sale, and administer these Chapter 11 Cases without the authorized use of Cash Collateral.

        I.       **Adequate Protection**.  The Prepetition Secured Parties are entitled to receive adequate protection to the extent of any Diminution in Value of their interests in the Prepetition Collateral.  Pursuant to sections 361, 363 and 507(b) of the Bankruptcy Code, as adequate protection, subject in all respects to the Carve Out (as defined herein) the Prepetition Secured Parties will receive, to the extent of any Diminution in Value of their interests in the Prepetition Collateral, ~~adequate protection~~ liens and superpriority claims, and other relief as adequate protection, as more fully set forth in decretal paragraphs 3 ~~6~~9 herein.  ~~Further, the Debtors are utilizing Cash Collateral for the benefit of the Prepetition Secured Parties to preserve and protect the Prepetition Collateral.~~

        J.       **Relief Essential; Best Interest**. For the reasons stated above, the Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), and the Local Rules. Absent granting the relief set forth in this Interim Order, the Debtors' estates and their ability to preserve the value of their assets will be immediately and irreparably harmed. Authorization of the use of Cash Collateral in accordance with this Interim Order is therefore in the best interests of the Debtors' estates and consistent with their fiduciary duties. Based the foregoing, sufficient cause exists for immediate entry of the Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the applicable Bankruptcy Local Rules.

        K.       **Notice of Interim Hearing**.  Notice of the Interim Hearing and the relief requested in the Motion has been provided by the Debtors, whether by electronic mail or

overnight courier, to certain parties-in-interest, including, among others:  (i) the U.S. Trustee; (ii) the holders of the twenty (20) largest unsecured claims against the Debtors on a consolidated basis; (iii) the United States Securities and Exchange Commission; (iv) the United States Department of Justice; (v) the office of the attorneys general for the states in which the Debtors operate; (vi) the United States Attorney's Office for the District of Delaware; (vii) the Internal Revenue Service; (viii) Cerberus; (ix) Spirit; (x) the Ally Parties; (xi) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (xii) any such other party entitled to notice under the Bankruptcy Rules and Local Rules.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. <u>Motion Granted</u>.  The Motion is hereby granted on an interim basis ~~in accordance with~~<u>solely to the extent set forth in</u> the terms and conditions ~~set forth in~~<u>of</u>  this Interim Order.  Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived, or settled, ~~and all reservations of rights included therein,~~ are hereby denied and overruled.  This Interim Order shall become effective immediately upon its entry.

2. <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Interim Order, and in accordance <u>in all respects</u> with the budget attached hereto as **Exhibit 1** (the "<u>Budget</u>"), the Debtors are authorized to use Cash Collateral through ~~entry of the Final Order~~<u>September 30, 2023</u> (the period from the entry of this Interim Order through and including ~~such earlier date~~<u>September 30, 2023</u>, the "<u>Interim Period</u>").

11

3.      Adequate Protection Liens.

(i)      *Prepetition Adequate Protection Liens.*  Pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Secured Parties in the Prepetition Collateral, to the extent of any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to each of the Prepetition Secured Parties, subject to the terms and conditions set forth below, continuing, valid, binding, enforceable, and perfected Liens, which shall be senior in priority to the Prepetition Lien held by the applicable Prepetition Secured Party, upon such Prepetition Secured Party's Prepetition Collateral (the "Adequate Protection Liens").

4.      Priority of Adequate Protection Liens.

(i)      The Adequate Protection Liens shall be subject to the Carve Out and, with respect to the Prepetition Secured Parties, shall have the same priority as such Prepetition Secured Parties enjoyed with respect to the Prepetition Collateral.  The Adequate Protection Liens shall be junior only to the Carve Out and the Permitted Prior Liens.  The Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the Debtors' assets that constitute Prepetition Collateral.

(ii)      Except as provided herein, including, without limitation, with respect to the Carve Out, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Debtors' Chapter 11 Cases, or in any other proceedings superseding or related to any of the foregoing (each, a "Successor CasesCase") and shall be valid and enforceable against any trustee appointed in any of the Chapter 11 Cases or any Successor Cases, or upon the dismissal of any of the

12

Chapter 11 Cases or Successor Cases.  Subject to the Challenge Deadline and related provisions of paragraph 13, the Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

5.     Adequate Protection Superpriority Claims.  As further adequate protection of the interests of the Prepetition Secured Parties in the Prepetition Collateral, to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral, and subject in all respects to the Carve Out, the Prepetition Secured Parties are hereby granted as and to the extent provided by section 507(b) or the Bankruptcy Code allowed superpriority administrative expense claims in each of the Chapter 11 Cases and any Successor Cases (the "Adequate Protection Superpriority Claims").

6.     Priority of the Adequate Protection Superpriority Claims.  Except as set forth herein, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever as and to the extent provided for by sections 503(b) and 507(b) of the Bankruptcy Code.

7.     Ally Parties' Professionals Fees & Expenses.

(i)     As further adequate protection for the Ally Parties, the Debtors shall pay or reimburse the Ally Parties for all reasonable and documented fees and expenses incurred by them (including the reasonable and documented fees and expenses of counsel to the Ally Parties) in connection with the Chapter 11 Cases, which shall be funded solely with the Ally Parties' Cash Collateral in an amount not to exceed $150,000 for the period through September 30, 2023,

whether incurred prior to or after the Petition Date; provided, however, that nothing in this Interim Order shall preclude or in any way prejudice the Ally Parties from asserting a claim against the Debtors' estates (or otherwise recover against the value of the Ally Parties' Collateral) for any fees and expenses incurred by them in connection with the Chapter 11 Cases, or in connection with the transfer of the Ally Collateral, in excess of the amounts paid pursuant to this Interim Order or from seeking payment of such fees as further adequate protection.

(ii)    None of the fees and expenses payable pursuant to this Paragraph 7 shall be subject to separate approval by this Court, but the Ally Parties shall provide copies of any invoices to the U.S. Trustee, counsel to the Debtors, and counsel to the Committee (if any) (the "Notice Parties").  The invoices for such fees and expenses may be in summary form only, and shall not be subject to application or allowance by the Court.  The Notice Parties may object to the reasonableness of such fees and expenses within ten (10) days of the receipt of an invoice detailing such fees and expenses, and this Court shall resolve any dispute as to the reasonableness of any such fees and expenses that cannot be consensually resolved, and any professionals retained by the Ally Parties in connection herewith shall not be required to file any interim or final fee application with respect thereto.  Promptly following the completion of a ten (10) day objection period (the "Fee Objection Period"), if no objection is made or following the resolution of any dispute regarding the fees and expenses payable pursuant to this paragraph, the Debtors shall pay the professional fees and expenses provided for this paragraph within two (2) business days.  To the extent any of the Notice Parties in good faith believe an invoice for fees and expenses is unreasonable (the disputed portion of any such invoice, a "Disputed Invoice"), the Debtors, the applicable Notice Party, and the Ally Parties shall meet and confer regarding the Disputed Invoice.  If the parties are unable to resolve any dispute regarding a Disputed Invoice

14

within five (5) business days after meeting and conferring, any such party may request that this Court adjudicate the dispute.  For the avoidance of doubt, the undisputed portion of any Disputed Invoice shall be paid within five (5) business days after the completion of the Fee Objection Period regardless of any ongoing dispute resolution pertaining to such Disputed Invoice.

8.     Reporting & Transparency. Each Monday by 4 p.m. Eastern Time, the Debtors shall provide the Prepetition Secured Parties with a weekly report detailing the Debtors' cash receipts and cash disbursements for the seven (7) day period ending on the preceding Friday, with detail consistent with the Budget attached hereto; provided, however, that the Debtors shall provide such additional information with respect to any of the cash receipts or cash disbursements as may be reasonably requested by the Prepetition Secured Parties and available to the Debtors or their professionals without the incurrence of any fees and expenses outside of the budgeted amounts.  Without limiting the foregoing, the Debtors shall provide the Ally Parties with updated information and projections of transition team costs and other operating expenditures based on the progress of the ongoing wind-down of the Debtors' operations, and the Debtors and the Ally Parties shall work cooperatively to minimize wind-down costs and expenditures.

9.     Transition Stipulation.  The Debtors and the Ally Parties shall perform all obligations pursuant to the *Stipulation and Order (A) Granting Limited Relief from the Automatic Stay, (B) Providing for the Return and Sale of Ally Collateral, and (C) Scheduling a Hearing to Determine the Valuation of the Ally Collateral* attached hereto as **Exhibit 2** (with the Transition Procedures attached thereto as Annex A, the "Transition Stipulation") providing for the orderly transfer of all vehicles and related title documentation to the Ally Parties and the subsequent sale of the Ally Collateral on the terms set forth therein.

10.    7.  Adequate Protection Reservation.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Chapter 11 Cases or any Successor Cases.  Further, this Interim Order shall not (i) be interpreted as an agreement by the Prepetition Secured Parties that such parties are adequately protected, or (ii) in any way prejudice or limit the rights of the Prepetition Secured Parties to seek additional or different relief with respect to the use of Cash Collateral or for additional or different forms of adequate protection.

**Provisions Common to Use of Cash Collateral**

11.    Events of Default.  The occurrence of any of the following events during the Interim Period, unless waived by the Ally Parties in writing, shall constitute an event of default hereunder (each, an "Event of Default"):

(i)    the Debtors' failure to perform any of their obligations under this Interim Order or with respect to the Transition Stipulation;

(ii)    upon the Debtors' delivery of the weekly report provided for in Paragraph 8 above, the amount of the Debtors actual disbursements (whether operating disbursements or restructuring costs) for any line item exceeding the amount of such projected disbursement for that line item (whether operating disbursements or restructuring costs) set forth in the Budget since the Petition Date;

(iii)    dismissal of any of the Chapter 11 Cases or conversion of any of the Chapter 11 Cases to chapter 7 or the Debtors' application for any such dismissal or conversion;

(iv)    the appointment of a chapter 11 trustee or examiner with expanded powers in any of the Chapter 11 Cases;

(v)    the failure of the Debtors to make any payment to the Ally Parties in accordance with Paragraph 7 hereof;

(vi)    the Court shall have entered an order reversing, amending, supplementing, staying, vacation or otherwise modifying this Interim Order in a manner adverse to the Ally Parties without the prior written consent of the Ally Parties;

(vii)    this Interim Order or the Transition Stipulation ceases, for any reason (except as agreed to, by the express written agreement of the Ally Parties) to be in full force and effect, or any Debtor so asserts, in writing, or the Adequate Protection Liens or Adequate Protection Superpriority Claims created by this Interim Order in favor of the Ally Parties cease to be enforceable and of the same effect and priority proposed to be created hereby, or any Debtor so asserts in writing; and

(viii)    the Debtors file any pleading or commencing any action against the Ally Parties challenging the validity or enforceability of the Ally Obligations or the Ally Parties' liens on the Ally Collateral, or seeking to avoid, disallow, subordinate, or recharacterize any claim, lien, or interest held by any of the Ally Parties arising under or related to the Ally Obligations (or if the Debtors directly or indirectly support any such motion, pleading, application or adversary proceeding commenced by any third party); provided that nothing herein shall prohibit the Debtors from filing any motion or pleading or commencing or continuing any action (a) seeking further authorization to use the Ally Parties' cash collateral or (b) with regard to good faith disputes over the payment of expenses and fees, subject in all respects to the Ally Parties' rights to contest and object to such request on any basis.

17

Upon the occurrence and during the continuation of any Event of Default, and notwithstanding the provisions of section 362 of the Bankruptcy Code, the Ally Parties may (a) provide notice to the Debtors (such notice, a "Termination Notice") that their consent to use Cash Collateral pursuant hereto will terminate within three (3) business days after the Termination Notice has been delivered (the "Termination Notice Date"), unless otherwise ordered or extended by the Court, and/or (b) file an appropriate pleading with the Court and seek an emergency hearing on notice for relief from the automatic stay to exercise rights and remedies to the extent available in accordance with the Floorplan Agreements, this Interim Order, and applicable law, and the Debtors shall not oppose the holding of such emergency hearing.  Prior to the Termination Notice Date, the Debtors, any Creditors' Committee, and/or any party in interest shall be entitled to seek an emergency hearing with the Court and the Ally Parties shall not oppose such hearing for the purpose of contesting, among other things, whether an Event of Default has occurred or is continuing or seeking approval for the non-consensual use of Cash Collateral, and the Termination Notice Date shall be automatically extended to the extent reasonably necessary to accommodate the Court's schedule to hold such an emergency hearing and adjudicate the dispute.  Unless the Court orders otherwise, upon the Termination Notice Date, the Debtors' authorization to use Cash Collateral shall terminate. Notwithstanding anything to the contrary herein, upon the declaration of an Event of Default, the delivery of a Termination Notice, the occurrence of the Termination Notice Date, all of the rights, remedies, benefits, and protections provided to the Ally Parties under this Interim Order shall survive.

12.    8.  Modification of Automatic Stay.  The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to:  (a) permit the

Debtors to grant the Adequate Protection Liens and Adequate Protection Superpriority Claims; (b) permit the Debtors to incur all liabilities and obligations to the Prepetition Secured Parties under this Interim Order; and (d(c) authorize the Debtors to make, and the Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of this Interim Order, and (d) facilitate the immediate transfer of all vehicles and corresponding title documentation to the Ally Parties and subsequent sale of the Ally Collateral pursuant to the Transition Stipulation.

13.   9.  Perfection of Adequate Protection Liens.  This Interim Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, securities account control agreement, or other similar agreement) to grant, attach, validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens, or to entitle the Prepetition Secured Parties and the Prepetition Secured Obligations to the priorities granted herein.  Notwithstanding the foregoing the Prepetition Secured Parties and their agents are authorized, but not required, to file, subject to the terms and priorities of this Interim Order, as they in their sole discretion deem necessary or advisable, such financing statements, security agreements, mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the Adequate Protection Liens and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided*, *however*, that no such filing or recordation shall be necessary or required in order to create or perfect the

19

Adequate Protection Liens.  The Debtors, without further consent of any party, are authorized to execute and deliver all such financing statements, mortgages, notices, and other documents as the Prepetition Secured Parties may reasonably request.

14.    10. Cash Management.  From and after the date of the entry of this Interim Order, the Debtors shall maintain cash management consistent with prepetition practices and in accordance with the Cash Management Order; provided, however, that the Debtors shall use reasonable efforts to establish a segregated account, or shall use an existing bank account that does not hold any other funds, for any vehicle sale proceeds received by the Debtors on or after the Petition Date (the "Post-Petition Proceeds Account"), and all sale receipts received by the Debtors on or after the Petition Date from any vehicles sales or dispositions, including prepetition vehicle sales, shall be deposited and held in the Post-Petition Proceeds Account.  The (a) Ally Parties assert (i) liens on the Post-Petition Proceeds Account and the funds held therein, (ii) that the funds held in the Post-Petition Proceeds Account constitute Ally Collateral, and reserve all rights thereto, and (b) the Debtors reserve their rights with respect thereto.  Pending further order of the Court, the Post-Petition Proceeds Account and the funds held therein shall not be used by the Debtors for any purposes so long as the Debtors have sufficient cash in the other accounts (on an aggregate basis) to make disbursements permitted in accordance with the Budget.  Except as otherwise permitted in the Cash Management Order and herein, the Debtors shall maintain no accounts except those identified, or open or closed in accordance with the procedures set forth in, the Cash Management Order and this Interim Order.

15.    11. Carve Out.

(a)    Carve Out.  As used in this Interim Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States

Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth below); plus the sum of (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth below); and (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all accrued and unpaid fees, disbursements, costs and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Creditors' Committee, (if any, and subject to the Budget), pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Estate Professionals"), in each case an in all respect subject to the Budget; *provided*, *however*, nothing herein shall be construed to impair the ability of any party to object to any fees, expenses, reimbursement or compensation sought by any such professionals or any other person or entity.

(b)      For the avoidance of doubt and notwithstanding anything to the contrary herein, the Carve Out shall be senior to all liens and claims securing the Adequate Protection Liens, and the Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, liens, or claims securing the Prepetition Secured Obligations.

(c)      No Direct Obligation To Pay Allowed Professional Fees.  The Prepetition Secured Parties shall not be responsible for the payment or reimbursement of any fees or disbursements of any Estate Professional incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate the Prepetition Secured Parties, in any way, to directly pay

21

compensation to, or to reimburse expenses of, any Estate Professional or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(d)    <u>Payment of Allowed Professional Fees</u>.  The Debtors shall be permitted to pay compensation and reimbursement of all Allowed Professional Fees of Estate Professionals, as the same may be due and payable, and such payments shall not reduce the Carve Out; *provided*, that any such payment with respect to ~~Committee~~<u>all Estate</u> Professionals is in accordance with the Budget when made.

16.    ~~12.~~ <u>Payment of Compensation</u>.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Estate Professional or shall affect the right of the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses <u>on any basis</u>.

17.    ~~13.~~ <u>Effect of Stipulations on Third Parties</u>.

(i)    *Generally*.  The admissions, stipulations, agreements, and waivers set forth in this Interim Order are and shall be <u>immediately</u> binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including, without limitation, any official committee that may be appointed in these cases, unless, and solely to the extent that, (i) a Creditors' Committee (if any) or any other party in interest with standing and requisite authority (other than the Debtors, as to which any Challenge (as defined herein) shall be waived) has timely ~~filed the appropriate pleadings, and timely~~ commenced ~~the appropriate~~<u>a</u> proceeding ~~required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant the Bankruptcy Rules~~ challenging the Debtors' Stipulations (each such proceeding or appropriate pleading

commencing a proceeding or other contested matter, a "Challenge") no later than ~~(1) if a~~ ~~Creditors' Committee is appointed, sixty (60) calendar days from the date of the Creditors'~~ ~~Committee's appointment, or (2) to the extent no Creditors' Committee is appointed,~~ seventy-five (75) calendar days from the entry of the Interim Order for any Creditors' Committee or other party in interest with requisite standing (the "Challenge Deadline"), and (ii) this Court enters judgment in favor of the plaintiff or movant in any such ~~timely and properly commenced~~ Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal; *provided* that any trustee appointed or elected in these Chapter 11 Cases prior to the expiration of the Challenge Deadline shall have until the later of (x) the Challenge Deadline or (y) ~~10~~twenty (20) calendar days from the date such trustee is appointed to commence a Challenge proceeding.  If the Creditors' Committee (if any) or any other party in interest files a motion for standing to bring a Challenge before expiration of the Challenge Deadline which attaches a proposed Challenge, such Challenge Deadline shall be tolled with respect solely to that party until ~~two~~three (~~2~~3) Business Days after the Court approves the standing motion or such other period ordered by the Court in approving the standing motion.

(ii)     *Binding Effect*.  To the extent no Challenge is timely ~~and properly~~ commenced by the Challenge Deadline, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, (a) the Debtors' Stipulations shall, pursuant to this Interim Order, become binding, conclusive, and final on any person, entity, or party in interest in the Chapter 11 Cases, or any Chapter 7 trustee, and their successors and assigns, and in any Successor Case for all purposes and shall not be subject to challenge or objection by any party in interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other

representative of the Debtors' estates; (b) any and all payments made to or for the benefit of the Prepetition Secured Parties or otherwise authorized by this Interim Order (whether made prior to, on, or after the Petition Date) shall not be subject to counterclaim, set-off, subordination, recharacterization, defense, disallowance, recovery, or avoidance by any party in interest; and (c) all of the Prepetition Secured Obligations shall be deemed to be fully allowed claims within the meaning of section 506 of the Bankruptcy Code. Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Debtors' Stipulations and the other provisions in clauses (a) through (c) of the preceding sentence shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (i) above, except to the extent that any of such Debtors' Stipulations or the other provisions in clauses (a) through (c) of the preceding sentence is expressly the subject of a ~~timely and properly filed~~ Challenge, which Challenge is successful as set forth in a final judgment~~, and only as to plaintiffs or movants that have complied with the terms hereof~~. Notwithstanding any provision to the contrary herein, nothing in this Interim Order shall be construed to grant standing on any party in interest, including the Creditors' Committee, to bring a Challenge on behalf of the Debtors' Estates. The failure of any party in interest to obtain an order of this Court prior to the Challenge Deadline granting standing to bring any Challenge on behalf of the Debtors' estates shall not be a defense to failing to commence a Challenge prior to the Challenge Deadline. ~~To the extent any such Challenge proceeding is timely and properly commenced, the applicable Prepetition Secured Party shall be entitled to payment of the related costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred under the respective Prepetition Loan Documents in defending itself in any such proceeding as adequate protection.~~

(iii)    Until the Prepetition Secured Obligations have been indefeasibly paid in full, without further order of the Court, none of the Cash Collateral (including the Carve Out) to be used in connection with the Chapter 11 Cases may be used to pay or reimburse any fees and expenses incurred in connection with directly or indirectly asserting, commencing, or prosecuting any claims, causes of action, or contested matters, including any Challenge or any other actions under chapter 5 of the Bankruptcy Code (or any similar law), against the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, professionals, officers, directors, or employees; provided, however, that, upon appointment, the Creditors' Committee may use up to $30,000 of the Cash Collateral allocated to Committee Professionals' fees as set forth in the Budget to investigate (but not prosecute or Challenge, or commence, or initiate the prosecution of, any Challenge, including the preparation of any complaint or motion on account of, or objection to) the Stipulations set forth in Paragraph F.

18.    Section 552(b).  In light of the subordination of the liens and superpriority administrative claims of the Prepetition Secured Parties to the Carve-Out, subject to entry of the Final Order, the Prepetition Secured Parties are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply to any of the Prepetition Secured Parties with respect to the proceeds, products, rents, issues offspring or profits of any of the Prepetition Secured Collateral, and no expenses of the administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation or any other proceedings under the Bankruptcy Code, may be charged against proceeds, products, rents, issues, offspring or profits from any of the Prepetition Secured Collateral under section 552(b) of the Bankruptcy Code.  Subject to entry of the Final Order, the Debtors waive, and agree not to assert, any claim or right under section 552 of the Bankruptcy Code seeking to avoid

25

the imposition of the liens pursuant to the Prepetition Loan Documents, or the Adequate Protection Liens on any property acquired by any of the Debtors or any of their estates or, subject to the Carve-Out, seeking to surcharge any costs or expenses incurred in connection with the preservation, protection, or enhancement of, or realization by, the Prepetition Secured Parties upon the Prepetition Collateral, unless otherwise agreed by the Prepetition Secured Parties.

19.    No Marshaling.  Subject to entry of the Final Order, the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any of the Prepetition Collateral, and proceeds of the Prepetition Collateral shall be received and applied pursuant to the Prepetition Loan Documents and Transition Stipulation notwithstanding any other agreement or provision to the contrary.

20.    Section 506(c).  Subject to entry of the Final Order, the Debtors (and any successors thereto or any representatives thereof, including any trustees appointed in the Chapter 11 Cases or any Successor Case) shall be deemed to have waived any rights, benefits or causes of action section 506(c) of the Bankruptcy Code as they may be related to or be asserted against the Ally Parties or the Ally Collateral. Subject to entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases at any time shall be charged against the Ally Parties, the Ally Collateral, or any of the Ally Parties' claims pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the Ally Parties.  Nothing contained in this Interim Order shall be deemed a consent by the Ally Parties to any charge, lien, assessment, or claim against, or in respect of, the Ally Collateral under section 506(c) of the Bankruptcy Code or otherwise, and no consent shall be implied from any other action, inaction, or acquiescence by any such parties.

21.    Continuation of Prepetition Liens.  Subject to the rights set forth in Paragraph 17, until the Prepetition Secured Obligations are indefeasibly paid in full, all liens and security interests of the Prepetition Secured Parties, including the Adequate Protection Liens, shall remain valid and enforceable with the same continuing priority as provided in the Prepetition Loan Documents and as described or otherwise provided for herein.

22.    Provisions Relating to Spirit.  Solely as to Spirit and its affiliates, and notwithstanding anything in this Interim Order to the contrary:

(i)    For the avoidance of doubt, no Adequate Protection Liens (or other liens granted pursuant to this Order) granted to any Prepetition Secured Party other than Spirit shall encumber: (a) any leasehold interests of non-residential real property to which Spirit is a party, except as permitted under the applicable lease; or (b) any security deposits in possession of the landlord or the Debtors' interests, if any, in pre-paid rent.

(ii)    Nothing contained herein authorizes the Prepetition Secured Parties to use or occupy any premises subject to a lease of non-residential real property with Spirit, except as permitted under the applicable documents governing the lease, including any landlord's waiver between Spirit and the Ally Parties, and Spirit and the Ally Parties agree to comply with their respective obligations thereunder, including as modified or otherwise agreed to by Spirit and the Ally Parties.

(iii)    For the avoidance of doubt, the Debtors will use Cash Collateral in accordance with the budget to pay all postpetition rent owing to Spirit through the Court-approved effective date of any rejection of a lease for which Spirit is landlord.

23.    ~~14.~~ No Third-Party Rights.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, landlord, equity holder or any direct, indirect, or incidental beneficiary.

24.    ~~15.~~ Limits on Lender Liability.  Nothing in this Interim Order or in any of the Prepetition Loan Documents or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the restructuring efforts and the administration of these Chapter 11 Cases.  Nothing in this Interim Order or the Prepetition Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

25.    ~~16.~~ Preservation of Rights Granted under this Interim Order.

(i)    Other than those claims and liens expressly granted or permitted by this Interim Order, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order shall be permitted while any of the Prepetition Secured Obligations or the Adequate Protection Superpriority Claims remain outstanding, and, except as otherwise expressly provided in or permitted under this Interim Order, the Prepetition Liens and the Adequate Protection Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or

security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Prepetition Secured Parties; or (iv) subject or junior to any intercompany or affiliate liens or security interests of the Prepetition Secured Parties.

(ii)    Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or converting these Chapter 11 Cases to cases under chapter 7: (A) the Prepetition Secured Obligations, the Prepetition Liens, the Adequate Protection Superpriority Claims, and the Adequate Protection Liens, and any claims related to the foregoing, shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Prepetition Secured Obligations and Adequate Protection

Superpriority Claims shall have been paid in full (and that such Prepetition Secured Obligations, Prepetition Liens, Adequate Protection Superpriority Claims, Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (B) the other rights granted by this Interim Order, including with respect to the Carve-Out, shall not be affected; and (C) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph 1625 and otherwise in this Interim Order.

(iii)    If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect: (i) the validity, priority or enforceability of any Prepetition Secured Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Prepetition Secured Parties of the effective date of such reversal, modification, vacatur or stay; or

29

(ii) the validity, priority or enforceability of the Prepetition Liens, the Adequate Protection Liens, or the Carve-Out. Notwithstanding any such reversal, modification, vacatur or stay of any use of Cash Collateral, any Prepetition Secured Obligations, Prepetition Liens, Adequate Protection Superpriority Claims or Adequate Protection Liens incurred by the Debtors and granted to the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the Prepetition Secured Parties, of the effective date of such reversal, modification, vacatur or stay shall be governed in all respects by the original provisions of this Interim Order.

(iv)    Except as expressly provided in this Interim Order or in the Prepetition Loan Documents, the Prepetition Liens, the Prepetition Secured Obligations, the Adequate Protection Liens, the Adequate Protection Superpriority Claims and all other rights and remedies of the Prepetition Secured Parties granted by the provisions of this Interim Order and the Prepetition Loan Documents and the Carve-Out shall survive, and shall not be modified, impaired or discharged by: (a) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases or terminating the joint administration of these Chapter 11 Cases or by any other act or omission; (b) the entry of an order approving the sale of any Prepetition Collateral pursuant to section 363(b) of the Bankruptcy Code); (c) the entry of an order confirming a ~~chapter~~Chapter 11 plan in any of the Chapter 11 Cases. The terms and provisions of this Final Order and the Prepetition Loan Documents shall continue in these Chapter 11 Cases, in any Successor Cases if these Chapter 11 Cases cease to be jointly administered, and in any superseding chapter 7 cases under the Bankruptcy Code, and the Prepetition Liens, the Prepetition Secured Obligations, the Adequate Protection Liens and the Adequate Protection Superpriority Claims and all other rights and remedies of the other Prepetition Secured Parties granted by the provisions of this Interim

Order and the Prepetition Loan Documents shall continue in full force and effect until the Prepetition Secured Obligations and the Adequate Protection Superpriority Claims are indefeasibly paid in full in cash, as set forth herein and in the Prepetition Loan Documents, and the commitments under the Prepetition Loan Documents have been terminated, and the Carve-Out shall continue in full force and effect.

26.    17. Rights Preserved.  Except as provided in this Interim Order and the Prepetition Loan Documents, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly:  (a) the Prepetition Secured Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases or Successor Cases, conversion of any of the Chapter 11 Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the Prepetition Secured Parties. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', a Creditors' Committee's (if appointed) or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Interim Order.  Entry of this Interim Order is without prejudice to any and all rights of any party in interest with respect to the terms and approval of the Final Order and any Budget beyond the Interim Period and any other position which any party in interest deems appropriate to raise

in the Chapter 11 Cases. Nothing in this Interim Order or the Budget attached hereto shall imply that the Prepetition Secured Parties consent to the Debtors' use of Cash Collateral beyond the Interim Period or will agree to the future use of Cash Collateral after the expiration of the Interim Period, and nothing in this Interim Order shall preclude the Prepetition Secured Parties from objecting to the use of the Cash Collateral after the Interim Period on any basis, including on the basis that the Prepetition Secured Parties are not adequately protected as required by the Bankruptcy Code.

27.    18. No Waiver by Failure to Seek Relief.  The failure of the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the Prepetition Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the Prepetition Secured Parties.

28.    19. Binding Effect of Interim Order.  Immediately upon the entry of the Interim Order by this Court, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the Prepetition Secured Parties, all other creditors of any of the Debtors, any Creditors' Committee (or any other court appointed committee) appointed in the Chapter 11 Cases, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases, any Successor Cases, or upon dismissal of any Chapter 11 Case or Successor Case.

29.    20. Interim Order Controls.  In the event of any inconsistency between the terms and conditions of the Prepetition Loan Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

30.    21. Survival.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases or Successor Cases.  The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections granted to the Prepetition Secured Parties shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until all of the Prepetition Secured Obligations and Adequate Protection Superpriority Claims pursuant to the Prepetition Loan Documents and this Interim Order have been indefeasibly paid in full in cash.

31.    22. Final Hearing.  The Final Hearing to consider entry of the Final Order and any requested use of Cash Collateral beyond the Interim Period is scheduled for **September [——— 26 ], 2023, at** 9:30 a **.m. (Eastern Standard Time)** before the Honorable United States Bankruptcy Judge [———]Craig T. Goldblatt, at the United States Bankruptcy Court for the District of Delaware.  On or before —— Sept. 15 , 2023, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Interim Order, the proposed Final Order and the Motion, on:  (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for a Creditors' Committee (if appointed); and (d) the Internal Revenue Service.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final

Order shall file written objections with the Clerk of the Court no later than on Sept. 21  **, 2023**, which objections shall be served so as to be received on or before such date by: (i) proposed counsel to the Debtors, Proskauer Rose LLP, Eleven Times Square, New York, NY 10036 (Attn: Brian S. Rosen (brosen@proskauer.com) and Megan R. Volin (mvolin@proskauer.com); (ii) proposed co-counsel to the Debtors, Pachulski, Stang, Ziehl, & Jones, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801 (Attn: Laura Davis Jones); and (iii) Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Richard Schepacarter); (iv) co-counsel to the Ally Parties, (a) Sidley Austin LLP, One South Dearborn, Chicago, Illinois 60603 (Attn: Matthew A. Clemente (mclemente@sidley.com), Allison Ross Stromberg (astromberg@sidley.com), and Ian C. Ferrell (iferrell@sidley.com)) and (b) Morris James LLP, 500 Delaware Avenue, Suite 1500, Wilmington, Delaware 19801 (Attn: Eric J. Monzo (emonzo@morrisjames.com) and Brya M. Keilson (bkeilson@morrisjames.com); and (v) co-counsel to Spirit, (a) Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020 (Attn: Ted A. Dillman (ted.dillman@lw.com) and Madeleine C. Parish (madeleine.parish@lw.com)) and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor (mnestor@ycst.com) and Kara Hammond Coyle (kcoyle@ycst.com)).

32.  23. Nunc Pro Tunc Effect of this Interim Order. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable nunc pro tunc to the Petition Date immediately upon execution thereof.

33.   24.  Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

34.   25.  No later than two (2) business days after the date of this Interim Order, the Debtors shall serve a copy of the Interim Order on the Notice Parties and shall file a certificate of service no later than 24 hours after service.

Dated: September [ ], 2023
Wilmington, Delaware

**EXHIBIT 1Exhibit 1**

**Budget**

**Exhibit 2**

**Transition Stipulation**

Document comparison by Workshare Compare on Thursday, September 14, 2023 2:09:13 PM

| Input: | |
|---|---|
| Document 1 ID | iManage://filesitex.proskauer.com/CURRENT/140362580/2 |
| Description | #140362580v2<filesitex.proskauer.com> - OLO - Cash Collateral Order |
| Document 2 ID | file://C:\Work10Recent\OFF LEASE ONLY_ LLC - RESTRUCTURING ADVICE (81144.001)\OLO - Cash Collateral Order(140362580.8).docx |
| Description | OLO - Cash Collateral Order(140362580.8) |
| Rendering set | Standard no moves |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 167 |
| Deletions | 80 |
| Moved from | 0 |
| Moved to | 0 |
| Style changes | 0 |
| Format changes | 0 |

| Total changes | 247 |
|---|---|