# EXHIBIT 1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| OFF LEASE ONLY LLC, *et al.*,[1] | Case No. 23-11388 (CTG) |
| Debtors. | (Joint Administration Requested) |

## MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES, AND (II) GRANTING RELATED RELIEF

Off Lease Only LLC, Off Lease Only Parent LLC, and Colo Real Estate Holdings LLC, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), seek entry of interim and final orders, substantially in the form attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order" and, together with the Interim Order, the "Proposed Orders"), respectively, pursuant to sections 105(a), 362(d), 363(b), 507(a), and 541(b)(1) of title 11 of the United States Code (the "Bankruptcy Code"), (i) authorizing the Debtors to pay all prepetition wages, salaries, other compensation, reimbursable expenses, and other benefits on account of the Workforce Programs (as defined herein), to the extent any such amounts are accrued and unpaid, and (ii) granting related relief.  In support of this motion (the "Motion"), the Debtors rely upon and incorporate by reference the *Declaration of Leland Wilson in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"),[2] filed contemporaneously herewith. In further support of this Motion, the Debtors respectfully state as follows:

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if applicable) are: Off Lease Only LLC (7345), Off Lease Only Parent LLC (2753), and Colo Real Estate Holdings LLC (7453). The location of the Debtors' service address in these chapter 11 cases is 1200 S. Congress Ave., Palm Springs, FL 33406.

[2]  Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the First Day Declaration.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested in this Motion are sections 105(a), 362(d), 363(b), 507(a), and 541(b)(1) of the Bankruptcy Code, Rule 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1(m).

## BACKGROUND

5.      On the date hereof (the "Petition Date"), each of the Debtors commenced a chapter 11 case by filing a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

6.      The Debtors continue to manage and operate their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      As of the date hereof, no trustee, examiner, or official committee has been appointed in the Chapter 11 Cases.

2

8.     A detailed description of the Debtors, including their business operations, their corporate and capital structure, the events leading to the filing of these Chapter 11 Cases, and the facts and circumstances supporting this Motion, are set forth in greater detail in the First Day Declaration and incorporated by reference herein.

## THE DEBTORS' WORKFORCE AND WORKFORCE PROGRAMS

9.     Immediately prior to the Petition Date, the Debtors terminated the entirety of their workforce (the "Prepetition Employees"), which included approximately five hundred forty-five (545) Prepetition Employees. Notices pursuant to the federal Worker Adjustment and Retraining Notification Act (the "WARN Act") were properly issued to all Prepetition Employees and twenty-four (24) Prepetition Employees terminated in July 2023, and all Prepetition Employees received their final paychecks, including all compensation and benefits owed to them through September 5, 2023, estimated compensation and benefits owed to them through September 7, 2023, and fifty-nine (59) days' worth of wages and benefits pursuant to the WARN Act. Specifically, the Debtors were required to and did, fund payroll on September 5, 2023, as well as all accrued payroll taxes and benefits, before Prepetition Employees had worked their last two (2) days, so the Debtors estimated the amount of outstanding wages owed to Prepetition Employees for the two (2) day period in their final payroll. As explained below, by this Motion, the Debtors seek authority to pay any additional amounts on account of prepetition wages to Prepetition Employees once the Debtors' have determined their actual hours worked from September 5 through 7, 2023, as well as any accrued, but unpaid, Prepetition Commissions (as defined below). The Debtors estimate that the amounts accrued and unpaid to Prepetition Employees as of the Petition Date is Two Hundred Fifty Thousand Dollars ($250,000.00).

10.    The Debtors also paid the premiums for the month of September 2023 prior to the Petition Date on account of the Medical Plans (as defined below) and the Debtors anticipate that

3

the payment of such premiums, together with employee contributions from the September 7, 2023 Payroll (as defined below), will enable Prepetition Employees to continue receiving medical benefits through September 2023. The Debtors also paid the premiums for the month of September 2023 prior to the Petition Date on account of the Dental Plans and Legal Assistance programs (each as defined below), which are both fully covered by the Prepetition Employees. The Debtors anticipate that the payment of such premiums with the employee contributions from the September 7, 2023 Payroll (as defined below), will enable Prepetition Employees to continue receiving the benefits from the Dental Plans and Legal Assistance program through September 2023. The Debtors anticipate that the Medical Plans, Dental Plans, and Legal Assistance will terminate following the month of September 2023, as the Debtors will have terminated all of the Debtors' other benefits programs (together with the Medical Plans, Dental Plans, and Legal Assistance program, the "Workforce Programs"), besides the 401(k) Plan (as defined below). However, no further amounts will accrue on account of the Workforce Programs as of the Petition Date.

11. Prior to the Petition Date, the Debtors retained approximately sixty-seven (67) former employees as independent contractors (collectively, the "Independent Contractors"), who the Debtors determined are essential to wind-down the Debtors' operations. The sixty-seven (67) Independent Contractors consist of corporate Independent Contractors including management, accounting, and information technology staff, and certain other Independent Contractors at each of the Debtors' retail locations who remain employed by the Debtors to assist with the orderly wind-down of the Debtors' operations. The Debtors intend to pay compensation as it comes due and owing to the Independent Contractors pursuant to the terms of the individual agreements entered into between the Debtors and each Independent Contractor (the "Independent Contractor Agreements"). The Independent Contractors' compensation is consistent with the compensation

4

they received as Prepetition Employees. The Debtors will report payments to the Independent Contractors pursuant to IRS Form 1099.

12.     As set forth in the First Day Declaration, the Independent Contractors are integral to the orderly wind-down of the Debtors' operations. They perform a wide variety of functions critical to the Debtors' wind-down process, both at the Debtors' corporate headquarters and retail locations in Florida and Texas, including, among other things, overseeing the wind-down of the Debtors' operations, the processing of vehicle related items including administration of customer programs in connection with prepetition sales and management of title processing issues, security, bankruptcy court reporting requirements, record-keeping and accounting, and other general wind-down activities. As a whole, the Independent Contractors have an essential working knowledge of the Debtors' business that cannot be easily replaced during the wind-down process. The efforts of and service of the Independent Contractors will ensure a smooth transition into chapter 11 and a successful wind-down of the Debtors' estates.

13.     To the extent any Independent Contractor Agreements have not been finalized and entered into prior to the Petition Date, the Debtors will enter into and otherwise finalize the Independent Contractor Agreements with the Independent Contractors who are necessary for the wind down of the Debtors' operations. Without the continued service and dedication of the Independent Contractors, it will be difficult, if not impossible, to wind down the Debtors' businesses without an unexpected or inopportune interruption and to prosecute these Chapter 11 Cases in a manner that will maximize the value of the Debtors' estates.

14.     By this Motion, the Debtors further seek authority to pay the aggregate prepetition amounts owed to the Prepetition Employees on account of certain of the Workforce Programs described below. As of the Petition Date, the Debtors estimate the total amount outstanding on

5

account of the Workforce Programs is approximately Three Hundred Fifty-Six Thousand One Hundred Dollars ($356,100.00), all of which will become due and owing within the first twenty-one (21) days of these chapter 11 cases. The Debtors do not believe any Prepetition Employee is owed any prepetition amounts in excess of the Fifteen Thousand One Hundred Fifty Dollars ($15,150.00) priority wage cap imposed by sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, and the Debtors seek approval to pay such amounts, if any, solely pursuant to the Final Order.

15. Otherwise, as is explained above, the Debtors paid all prepetition wages to the Prepetition Employees, including estimated amounts for the two (2) day period between funding of Payroll (as defined below) and the filing of these Chapter 11 Cases, as well as related taxes and benefits, immediately prior to the Petition Date. Accordingly, the Debtors seek authority to pay any additional prepetition amounts in wages and Prepetition Commissions (as defined below) to the Prepetition Employees once the Debtors have determined the number of hours actually worked by the Prepetition Employees during the two (2) day period between Payroll (as defined below) and the filing of these Chapter 11 Cases, and have calculated any outstanding Prepetition Commissions. The Debtors estimate that such amounts will total approximately Two Hundred Fifty Thousand Dollars ($250,000.00).

A. **Employee Payroll and Payroll Deductions**

16. As noted above, the Debtors paid their salaried and hourly Prepetition Employees' wages (the "Prepetition Employee Wages"), and a portion of the Prepetition Commissions owed to Prepetition Commissioned Employees (each as defined below), through bi-weekly payroll on Thursdays (the "Payroll"). The Debtors utilized ADP and DailyPay for the administration of Payroll for the Prepetition Employees. In addition, as is explained below, the Debtors reimbursed certain Reimbursable Expenses (as defined below) to Prepetition Employees through Payroll.

6

Prepetition Employees were paid in one (1) week arrears, so that they received their bi-weekly earnings on the Thursday directly following the pay period that ended the previous Sunday. As explained above, the Debtors estimated Prepetition Employee Wages accrued in the two (2) days prior to the Petition Date in their final Payroll.

17.     Certain of the Prepetition Employees (the "<u>Prepetition Commissioned Employees</u>") received one hundred percent (100%) of their compensation in commissions (the "<u>Prepetition Commissions</u>"). Specifically, Prepetition Commissioned Employees received an hourly wage in their bi-weekly Payroll in accordance with the requirement of section 7(i) of the Fair Labor Standards Act that Prepetition Commissioned Employees be paid at least one and one half (1½) times the applicable state's minimum wage for each hour worked. Then, on a monthly basis, the Debtors determined the Prepetition Commissions earned by each Prepetition Commissioned Employee, and any Prepetition Commissions not already paid to such Prepetition Commissioned Employees through Payroll were paid on or before the twentieth (20th) day of the following month. However, prior to the Petition Date, the Debtors paid the estimated Prepetition Commissions owing to Prepetition Employees that accrued through the date the Debtors stopped selling vehicles.

18.     As is explained above, the Debtors paid (i) all prepetition wages to the Prepetition Employees, including estimated amounts for the two (2) day period between funding of Payroll and the filing of these Chapter 11 Cases, as well as related taxes and benefits, immediately prior to the Petition Date and (ii) the estimated Prepetition Commissions owing to Prepetition Employees that accrued through the date the Debtors stopped selling vehicles. Accordingly, the Debtors seek authority to pay any additional Prepetition Employee Wages and Prepetition Commissions that the Debtors determine are accrued and unpaid once the Debtors determined the number of hours actually worked by the Prepetition Employees during the two (2) day period

7

between Payroll and the filing of these Chapter 11 Cases, and have calculated any outstanding Prepetition Commissions. The Debtors estimate that approximately Two Hundred Fifty Thousand Dollars ($250,000.00) in Prepetition Employee Wages and Prepetition Commissions, in the aggregate, are accrued and outstanding as of the Petition Date.

19.     In the ordinary course of their businesses, the Debtors made deductions from Prepetition Employees' paychecks for payments to third parties on behalf of Prepetition Employees, including, without limitation for various federal payroll and unemployment taxes, insurance premiums, health savings account premiums, payroll advances, court-ordered child support and garnishments, and relocation recoupment and other similar programs (collectively, the "Deductions"). Deductions were made twenty-four (24) times per year, where there are two (2) months in which three (3) payrolls are administered and therefore, two (2) payrolls without any benefit deduction. All applicable Deductions were made from Prepetition Employees' final paychecks and WARN Act payments. Accordingly, except to the limited extent set forth herein, the Debtors do not believe there are any petition amounts outstanding on account of Deductions.

20.     However, the Debtors were required to garnish certain Prepetition Employees' wages pursuant to applicable state court orders on account of child support and other obligations of the Prepetition Employees. The Debtors made such Deductions from the Prepetition Employees' final paychecks and WARN Act payments prior to the Petition Date. Pursuant to certain of the garnishment orders, however, the Debtors are holding approximately Fifteen Thousand One Hundred Dollars ($15,100.00) of cash on hand for the beneficiaries of such garnishments, which cannot be paid to beneficiaries until certain actions are taken in the applicable state court. The Debtors intend to work with the beneficiaries' counsel to ensure that such actions are taken and that garnishments held in cash on hand can be distributed to beneficiaries as soon as practicable

8

after the Petition Date.  Accordingly, the Debtors seek authority to distribute such garnishments when they become due and owing pursuant to applicable state law.

**B.      Employee Benefits**

21.      Prior to the Petition Date, the Debtors offered a variety of benefits to the Prepetition Employees in the form of the Workforce Programs and paid various fees and premiums in connection therewith, including, among others things, (i) reimbursing certain Prepetition Employees for certain expenses incurred in the scope of their duties ("Reimbursable Expenses"), (ii) fully insured medical and prescription drug benefit programs (the "Medical Plans") administered by Florida Blue, (iii) one hundred percent (100%) employer paid life and accidental death and dismemberment insurance coverage (the "Basic Life and AD&D Insurance") through Unum, (iv) disability coverage to executives and certain directors (the "Executive Disability Benefits") administered by The Guardian Life Insurance Company of America, (v) paid time off ("PTO"), (vi) certain other paid (the "Paid Time Off") and unpaid time off (the "Unpaid Time Off"), (vii) a severance plan (the "Severance Plan") that provides severance pay to Prepetition Employees upon a qualifying termination of employment or other qualifying event, (viii) a 401(k)-retirement savings plan (the "401(k) Plan"), and (ix) workers' compensation coverage for claims arising from or related to their employment (the "Workers' Compensation Program").

22.      As mentioned above, the Debtors paid all prepetition wages to the Prepetition Employees, as well as related taxes and benefits, immediately prior to the Petition Date and paid the premiums for the month of September 2023 prior to the Petition Date on account of the Medical Plans, which will enable Prepetition Employees to continue receiving the medical benefits through September 2023. Furthermore, while, the Debtors have terminated the Workforce Programs (besides the 401(k) Plan) and no further amounts will accrue on account of the Workforce Programs as of the Petition Date, the Debtors believe that, as of the Petition Date, there is

9

approximately Fifty Thousand Dollars ($50,000.00) in Reimbursable Expenses to be reimbursed to the Prepetition Employees and approximately Twenty-Six Thousand Dollars ($26,000.00) outstanding in prepetition amounts related to the Workers' Compensation Program, all of which will come due during the first twenty-one (21) days of these cases. By this Motion, the Debtors further seek authority to pay the aggregate prepetition amounts owed to the Prepetition Employees on account of the Reimbursable Expenses and Workers' Compensation Program.

### C.    401(k) Plan

23.    As is explained above, the Debtors did not terminate the 401(k) Plan prior to the Petition Date and complete the necessary steps to properly wind-down the 401(k) Plan and distribute all plan assets. To properly wind down the 401(k) Plan postpetition, the Debtors are required to complete the following: (i) amend and terminate the 401(k) Plan, (ii) restore any forfeited accounts that are required to be restored under the Employee Retirement Income Security Act of 1974 and the Internal Revenue Code of 1986, (iii) distribute all plan assets, including, among other things, (a) locating any missing participants in fulfillment of applicable fiduciary responsibilities, such as engaging a commercial locator service; (b) providing notice to participants and beneficiaries to comply with legal requirements and applicable fiduciary responsibilities; and (c) engaging a provider of individual retirement accounts to which remaining account balances may be transferred, and (iv) preparing and filing a final Form 5500 with the Department of Labor and the Internal Revenue Service. To properly complete the aforementioned steps to wind-down the 401(k) Plan, the Debtors will be required to incur minor costs and expenses relating to the termination and wind down of the 401(k) Plan. By this Motion, the Debtors seek authority to pay any such amounts incurred in connection with the wind-down and termination of the 401(k) Plan. The Debtors estimate that the amount of costs and expenses incurred relating to the orderly wind-down of the 401(k) Plan will be approximately Fifty Thousand Dollars ($50,000.00).

### D.     Other Benefit Programs

24.     Prepetition Employees were also able to participate in certain supplemental benefits (collectively, the "Other Benefits Programs"), including, dental insurance administered by Cigna Dental (the "Dental Plans"), legal services administered by Metlife (the "Legal Assistance"), vision insurance plans administered by Unum Vision (the "Vision Plans"), health savings accounts, supplemental life and AD&D insurance, short-term and long-term disability benefits, voluntary hospital indemnity, voluntary critical illness insurance, and voluntary accident insurance, each administered by Unum, identity theft protection administered by Infoarmor, travel assistance administered through Unum, and pet insurance administered by Benefit Solutions. The Debtors did not make any contributions on account of the Other Benefits Programs.

25.     As explained above, the Debtors paid the premiums for the month of September 2023 prior to the Petition Date on account of the Dental Plans and Legal Assistance programs, which are both fully covered by the Prepetition Employees. The Debtors anticipate that the payment of such premiums with the employee contributions from the September 7, 2023 Payroll, will enable Prepetition Employees to continue receiving the benefits from the Dental Plans and Legal Assistance program through September 2023. The Debtors anticipate that the Dental Plans, and Legal Assistance will terminate following the month of September 2023, as the Debtors will have terminated all of the Debtors' other benefits programs.

26.     However, while, the Debtors have terminated the Workforce Programs (besides the 401(k) Plan) and no further amounts will accrue on account of the Workforce Programs as of the Petition Date, the Debtors believe that, as of the Petition Date, there is approximately Fifteen Thousand Dollars ($15,000.00) outstanding in prepetition amounts related to the Vision Plans, all of which will come due during the first twenty-one (21) days of these cases.

11

## RELIEF REQUESTED

27.     The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (i) authorizing the Debtors to pay all prepetition wages, salaries, other compensation, reimbursable expenses, and other benefits on account of the Workforce Programs to the extent any such amounts are accrued and unpaid, and (ii) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing approximately twenty-one (21) days from the Petition Date.  For the reasons set forth herein, the Debtors submit that the relief requested herein is in the best interest of the Debtors, their estates, creditors, and other parties-in-interest, and therefore, should be granted.

## BASIS FOR RELIEF

### I.     Sufficient Cause Exists to Authorize the Debtors to Honor the Workforce Programs

#### A.     Certain Workforce Programs Are Entitled to Priority Treatment

28.     Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle certain of the Workforce Programs owed to the Prepetition Employees to priority treatment, to the extent such payments do not exceed Fifteen Thousand One Hundred Fifty Dollars ($15,150.00) for each individual as provided for pursuant to sections 507(a)(4) and (5) of the Bankruptcy Code.  As priority claims, the Debtors are required to pay these claims in full to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment in full of certain allowed unsecured claims for (a) wages, salaries, or commissions, including severance, and sick leave pay earned by an individual, and (b) contributions to an employee benefit plan).  Thus, granting the relief requested herein should only affect the timing of certain payments to the Prepetition Employees, if such payments are determined to be accrued and outstanding, and should not negatively affect recoveries for general unsecured creditors.  Indeed, the Debtors submit that payment of the

Workforce Programs, if such payments are determined to be accrued and outstanding, at this time enhances value for the benefit of all interested parties.

**B.     Payment of Certain Workforce Programs Is Required by Law**

29.     The Debtors seek authority to pay the Deductions to the appropriate third-party entities, to the extent any Deductions are accrued and outstanding.  These amounts principally represent Prepetition Employee earnings that governments, Prepetition Employees, and judicial authorities designated for deduction from the Prepetition Employees' paychecks.  Indeed, certain Deductions are not property of the Debtors' estates because the Debtors withheld such amounts from the Prepetition Employees' paychecks on another party's behalf.  *See* 11 U.S.C. §§ 541(b)(1) and (d).  Furthermore, federal and state laws required the Debtors to withhold certain tax payments from the Prepetition Employees' paychecks and to pay such amounts to the appropriate taxing authority.  26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *DuCharmes & Co. v. Michigan (In re DuCharmes & Co.)*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes).  Because the Deductions may not be property of the Debtors' estates, the Debtors request that the Court authorize them to transmit the Deductions on account of the Prepetition Employees to the proper parties, to the extent it is determined that such Deductions are accrued and outstanding. *See Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 155 F.3d 718, 721 (4th Cir. 1998).  The Debtors therefore respectfully request that the Court recognize that the Deductions are not property of the Debtors' estates and, regardless of whether the Debtors collected the amounts prior to the Petition Date, authorize the Debtors to

13

transmit such monies to the proper parties, to the extent it is determined that such amounts are accrued and outstanding.

## II. Payment of the Workforce Programs Is a Proper Exercise of the Debtors' Business Judgment

30.     Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including the value of an operating business' going-concern.  *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 825-26 (D. Del. 1999); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983).  In doing so, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims.

31.     Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions."  *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (collecting cases); *see also Armstrong World*, 29 B.R. at 397 (relying on section 363 to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors); *Ionosphere Clubs*, 98 B.R. at 175 (finding that a sound business justification existed to justify payment of certain prepetition wages); *In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987)

14

(requiring the debtor to show a "good business reason" for a proposed transaction pursuant to section 363(b)).

32.     Courts also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Pursuant to section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses.  *See Just for Feet*, 242 B.R. at 825-26. Specifically, a court may use its power pursuant to section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").  *See, e.g.*, *Ionosphere Clubs*, 98 B.R. at 176; *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the business).  A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."  *Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)).  Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim."  *In re CoServ*, 273 B.R. at 497.

15

33.     Payment on account of the Workforce Programs, to the extent any amounts are accrued and outstanding, is warranted pursuant to this authority and the facts of these Chapter 11 Cases.  As explained above, the Debtors paid all prepetition wages to the Prepetition Employees, including estimated Prepetition Employee Wages for the two (2) day period prior to the filing of these Chapter 11 Cases and estimated Prepetition Commissions, as well as related taxes and benefits, immediately prior to the Petition Date. In addition, the Debtors paid the premiums for the month of September 2023 prior to the Petition Date on account of the Medical Plans, Dental Plans, and Legal Assistance program, which will enable Prepetition Employees to continue receiving the medical benefits and benefits of the Dental Plans and Legal Assistance program through September 2023.

34.     Furthermore, while, the Debtors have terminated the Workforce Programs (besides the 401(k) Plan) and no further amounts will accrue on account of the Workforce Programs as of the Petition Date and none of the Independent Contractors will be offered any benefits pursuant to their agreements with the Debtors, the Debtors believe that, as of the Petition Date, there is approximately Fifty Thousand Dollars ($50,000.00) in Reimbursable Expenses to be  reimbursed to the Prepetition Employees, approximately Twenty-Six Thousand Dollars ($26,000.00) outstanding in prepetition amounts related to the Workers' Compensation Program, and approximately Fifteen Thousand Dollars ($15,000.00) outstanding in prepetition amounts relating to the Vision Plans, all of which will come due during the first twenty-one (21) days of these cases. Accordingly, the Debtors seek authority to pay such accrued and outstanding amounts to Prepetition Employees pursuant to the Workforce Programs.

35.     Moreover, courts in this district have granted similar relief to that requested in this Motion in previous chapter 11 cases.  *See, e.g.*, *In re Tricida, Inc.*, No. 23-11024 (JTD) (Bankr. D.

Del. Feb. 6, 2023) (authorizing debtors to continue employee compensation and benefit programs and pay certain prepetition obligations related thereto on a postpetition basis); *In re Medly Health Inc.*, No. 22-11257 (KBO) (Bankr. D. Del. Jan. 6, 2023) (same); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Sept. 22, 2022) (same); *In re TECT Aerospace Grp. Holdings, Inc.*, No. 21-10670 (KBO) (Bankr. D. Del. May 5, 2021) (same); *In re CraftWorks Parent, LLC*, No. 20-10475 (BLS) (Bankr. D. Del. Mar. 4, 2020) (same); *In re BL Rests. Holding, LLC*, No. 20-10156 (MFW) (Bankr. D. Del. Feb 26, 2020) (same).  Accordingly, the Debtors respectfully request that the Court authorize the Debtors to pay any amounts owed on behalf of the Workforce Programs.

### III.   A Limited Waiver of the Automatic Stay for Workers' Compensation Claims Is Appropriate Here

36.     Section 362(a) of the Bankruptcy Code operates to stay:

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. § 362(a)(1).

37.     Section 362 of the Bankruptcy Code, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." *Id.* at § 362(d)(1).  Cause exists here to modify the automatic stay to permit the Prepetition Employees to proceed with workers' compensation claims in the appropriate judicial or administrative forum.  Staying the workers' compensation claims could have a detrimental effect on the financial well-being and morale of the Prepetition Employees.

## PROCESSING OF CHECKS AND ELECTRONIC FUND TRANSFERS SHOULD BE AUTHORIZED

38.     The Debtors have sufficient funds to pay the amounts described in this Motion by virtue of anticipated access to cash collateral.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

39.     Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.  The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions.  In that context, the court has instructed that irreparable harm is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.  *See, e.g.*, *Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 F. App'x 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)).  Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated.  *See, e.g.*, *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653-55 (3d Cir. 1994).  The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and, accordingly, should be granted.

18

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

40.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements pursuant to Bankruptcy Rule 6004(a) and the fourteen (14)-day stay of an order authorizing the use, sale, or lease of property pursuant to Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

41.     Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the interim or final orders is intended or should be construed as: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of any party's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of any party's rights pursuant to the Bankruptcy Code or any other applicable law; or (g) a concession by any party that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and all parties' rights to contest the extent, validity, or perfection or seek avoidance of all such liens are hereby reserved.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of any party's rights to subsequently dispute such claim.

## NOTICE

42.     The Debtors have provided notice of this motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the holders of the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Securities and Exchange Commission; (d) the United States Department of Justice; (e) the office of the attorneys general for the states in which the Debtors operate; (f) the United States Attorney's Office for the District

of Delaware; (g) the Internal Revenue Service; (h) Cerberus Off Lease Only LLC; (i) Spirit Realty, L.P.; (j) Ally Bank; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, within two (2) business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

43.    No prior request for the relief sought herein has been made by the Debtors to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

20

## <u>CONCLUSION</u>

**WHEREFORE**, the Debtors respectfully request that the Court enter interim and final orders, substantially in the forms attached hereto as **<u>Exhibit A</u>** and **<u>Exhibit B</u>**, respectively, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: September 7, 2023
Wilmington, Delaware

Respectfully submitted,

*/s/ Laura Davis Jones*
Laura Davis Jones, Esq.  (DE Bar No. 2436)
James E. O'Neill, Esq. (DE Bar No. 4042)
Colin R. Robinson, Esq. (DE Bar No. 5524)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:  302-652-4100
Facsimile:  302-652-4400
email:  ljones@pszjlaw.com
          joneill@pszjlaw.com
          crobinson@pszjlaw.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

-and-

Brian S. Rosen, Esq. (*pro hac vice* pending)
Megan R. Volin, Esq. (*pro hac vice* pending)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile:  (212) 969-2900
Email:  brosen@proskauer.com
          mvolin@proskauer.com

-and-

Ashley M. Weringa, Esq. (*pro hac vice* pending)
Christian J. Palacios, Esq. (*pro hac vice* pending)
**PROSKAUER ROSE LLP**
70 W. Madison, Suite 3800
Chicago, Illinois 60602
Telephone: (312) 962-3550
Facsimile: (312) 962-3551
Email:  aweringa@proskauer.com
         cpalacios@proskauer.com

22

# EXHIBIT A

## Proposed Interim Order

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| OFF LEASE ONLY LLC, *et al.*,[1] | ) Case No. 23-11388 (CTG) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |
| | ) **Re: Docket No. __** |

## INTERIM ORDER (I) AUTHORIZING
## THE DEBTORS TO PAY PREPETITION WAGES,
## SALARIES, OTHER COMPENSATION, AND REIMBURSABLE
## EXPENSES, AND (II) GRANTING RELATED RELIEF

Upon the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses, and (II) Granting Related Relief* (the "Motion")[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (i) authorizing the Debtors to pay all prepetition wages, salaries, other compensation, reimbursable expenses, and other benefits on account of the Workforce Programs to the extent any such amounts are accrued and unpaid, (ii) granting related relief, and (iii) scheduling a final hearing to consider approval of the Motion on a final basis, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration and the record of these Chapter 11 Cases; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, and this Court having found that this is a core proceeding pursuant to 28

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if applicable) are: Off Lease Only LLC (7345), Off Lease Only Parent LLC (2753), and Colo Real Estate Holdings LLC (7453). The location of the Debtors' service address in these chapter 11 cases is 1200 S. Congress Ave., Palm Springs, FL 33406.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

U.S.C. § 157(b)(2), and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and the First Day Declaration and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED on an interim basis as set forth in this Interim Order.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2023, at__:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed with the Court, and served so as to be **received** by the following parties, **by no later than 4:00 p.m., prevailing Eastern Time, on _____, 2023:** (i) proposed counsel to the Debtors, Proskauer Rose LLP, Eleven Times Square, New York, NY 10036 (Attn: Brian S. Rosen (brosen@proskauer.com) and Megan R. Volin (mvolin@proskauer.com); (ii) proposed co-counsel to the Debtors, Pachulski, Stang, Ziehl, & Jones, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801 (Attn: Laura Davis Jones); and (iii) Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801.

2

3.      The Debtors are authorized, but not directed, in their discretion, to pay and honor prepetition amounts related to the Workforce Programs, to the extent any such amounts are accrued and outstanding, in connection with the Prepetition Employees, in an aggregate interim amount not to exceed Three Hundred Fifty-Six Thousand One Hundred Dollars ($356,100.00) pursuant to this Interim Order.

4.      Nothing herein shall be deemed to authorize the payment of any prepetition amounts above the statutory cap imposed by section 507(a)(4) and 507(a)(5) of the Bankruptcy Code with respect to the prepetition amounts owed, if any, on account of the Workforce Programs, except upon further order of this Court.

5.      Nothing herein shall be deemed to authorize the payment of any amounts in satisfaction of bonus or severance obligations that implicate section 503(c) of the Bankruptcy Code; *provided* that nothing herein shall prejudice the Debtors' ability to seek approval of relief pursuant to section 503(c) of the Bankruptcy Code at a later time.

6.      Pursuant to section 362(d) of the Bankruptcy Code, (a) Prepetition Employees are authorized to proceed with their workers' compensation claims in the appropriate judicial or administrative forum pursuant to the Workers' Compensation Program, and the Debtors are authorized to pay all undisputed prepetition amounts relating thereto in the ordinary course of business, and (b) the notice requirements pursuant to Bankruptcy Rule 4001(d) with respect to clause (a) are waived.  This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program, and any such claims must be pursued in accordance with the applicable Workers' Compensation Program.  Payment on account of any recoveries obtained in connection with a claim brought pursuant to this paragraph is limited to the terms and conditions

3

of the applicable Workers' Compensation Program, including with regard to any policy limits or caps.

7.      Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver of the Debtors' or any other party in interest's rights pursuant to the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

8.      The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

9.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored

4

as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein.

10.     The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

11.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

12.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

13.     The Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

14.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

DOCS_DE:244642.1

**EXHIBIT B**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| OFF LEASE ONLY LLC, *et al.*,[1] | ) Case No. 23-11388(CTG) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |
| | ) **Re: Docket No. __** |

### FINAL ORDER (I) AUTHORIZING
### THE DEBTORS TO PAY PREPETITION WAGES,
### SALARIES, OTHER COMPENSATION, AND REIMBURSABLE
### EXPENSES, AND (II) GRANTING RELATED RELIEF

Upon the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses, and (II) Granting Related Relief* (the "Motion")[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), (i) authorizing the Debtors to pay (a) all prepetition wages, salaries, other compensation, reimbursable expenses, and other benefits on account of the Workforce Programs to the extent any such amounts are accrued and unpaid, and (b) to pay compensation to the Independent Contractors as it becomes due and owing during the wind-down of the Debtors' operations, and (ii) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration and the record of these Chapter 11 Cases; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, and this

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if applicable) are: Off Lease Only LLC (7345), Off Lease Only Parent LLC (2753), and Colo Real Estate Holdings LLC (7453). The location of the Debtors' service address in these chapter 11 cases is 1200 S. Congress Ave., Palm Springs, FL 33406.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and the First Day Declaration and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.       The Motion is GRANTED on a final basis as set forth in this Final Order.

2.       Any objections to the Motion not resolved or otherwise withdrawn are OVERRULED.

3.       The Debtors are authorized, but not directed, in their discretion, to pay and honor prepetition amounts related to the Workforce Programs, to the extent any such amounts are accrued and outstanding, in connection with the Prepetition Employees, in an aggregate final amount not to exceed Four Hundred Six Thousand One Hundred Dollars ($406,100.00) pursuant to this Final Order.

4.       Nothing herein shall be deemed to authorize the payment of any prepetition amounts above the statutory cap imposed by section 507(a)(4) and 507(a)(5) of the Bankruptcy

2

Code with respect to the prepetition amounts owed on account of the Workforce Programs, except upon further order of this Court.

5.      Nothing herein shall be deemed to authorize the payment of any amounts in satisfaction of bonus or severance obligations that implicate section 503(c) of the Bankruptcy Code; *provided* that nothing herein shall prejudice the Debtors' ability to seek approval of relief pursuant to section 503(c) of the Bankruptcy Code at a later time.

6.      Pursuant to section 362(d) of the Bankruptcy Code, (a) Prepetition Employees are authorized to proceed with their workers' compensation claims in the appropriate judicial or administrative forum pursuant to the Workers' Compensation Program, and the Debtors are authorized to pay all undisputed prepetition amounts relating thereto in the ordinary course of business, and (b) the notice requirements pursuant to Bankruptcy Rule 4001(d) with respect to clause (a) are waived.  This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program and any such claims must be pursued in accordance with the applicable Workers' Compensation Program.  Payment on account of any recoveries obtained in connection with a claim brought pursuant to this paragraph is limited to the terms and conditions of the applicable Workers' Compensation Program, including with regard to any policy limits or caps.

7.      Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Motion; (e) a request or authorization to

3

assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver of the Debtors' or any other party in interest's rights pursuant to the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

8.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

9.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein.

10.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

11.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

12.    The Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

4

This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

5