# EXHIBIT 1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| OFF LEASE ONLY LLC,[1] | Case No. 23- 11388 (CTG) |
| Debtors. | (Joint Administration Requested) |

**MOTION OF THE DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF**

Off Lease Only LLC, Off Lease Only Parent LLC, and Colo Real Estate Holdings LLC, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") seek entry of an interim order, substantially in the form attached hereto as **Exhibit A** (the "Interim Order") and a final order (the "Final Order" and, together with the Interim Order, the "Cash Collateral Orders"), respectively, pursuant to sections 105, 361, 362, 363, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 4001, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) authorizing the use of cash collateral, (ii) granting adequate protection to prepetition secured parties, and (iii) granting related relief. In support of this motion (the "Motion"), the Debtors rely upon and incorporate by reference the *Declaration of Leland*

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if applicable) are: Off Lease Only LLC (7345), Off Lease Only Parent LLC (2753), and Colo Real Estate Holdings LLC (7453). The location of the Debtors' service address in these chapter 11 cases is 1200 S. Congress Ave., Palm Springs, FL 33406.

*Wilson in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"),[2] filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.       The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.       Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.       Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.       The statutory bases for the relief requested in this Motion are sections 105, 361, 362, 363, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, and 6004, and Local Rule 4001-2.

## BACKGROUND

5.       On the date hereof (the "Petition Date"), the Debtors commenced these chapter 11 cases by filing petitions for relief pursuant to chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

6.       The Debtors continue to manage and operate their business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

2

7.     As of the date hereof, no trustee, examiner, or official committee has been appointed in the Chapter 11 Cases.

8.     A detailed description of the Debtors, including their business operations, their corporate and capital structure, the events leading to the filing of these Chapter 11 Cases, and the facts and circumstances supporting this Motion, are set forth in greater detail in the First Day Declaration and are incorporated by reference herein.

## PRELIMINARY STATEMENT

9.     Prior to the Petition Date, the Debtors were a leading regional used car retailer, operating dealerships in the States of Florida and Texas.  The company was founded in 2004 with just two cars and grew to become one of the largest volume used car dealers in Florida.

10.     However, beginning in 2022, the Debtors experienced a significant decline in revenue due to macroeconomic factors impacting the used car industry.  The Debtors took a number of actions to reduce costs and improve profitability to offset these macroeconomic conditions.  The Debtors reduced their employee headcount significantly, implemented broad-based cost reduction, launched the We Buy Your Car program in 2022 to acquire inventory at lower prices, and increased dealer and administration fees charged to customers.  The Debtors also expanded their inventory to include higher mileage, older vehicles sold at lower prices in an attempt to address customer affordability.  However, despite the Debtors' efforts, as a result of its declining performance and aging inventory, the Debtors began to face increased pressure from Ally (as defined below), their floorplan lender.  As described in detail in the First Day Declaration, due to restrictions imposed by Ally on the Debtors' ability to purchase vehicles and limited liquidity, the Debtors were no longer able to purchase sufficient profit generating inventory in August 2023.

3

11.     Accordingly, the Debtors determined that their only option was to cease operations, allow Ally to collect the vehicles securing its debt, and wind down their businesses in these Chapter 11 Cases.  The Debtors stopped selling vehicles on September 6, 2023 and terminated all of their employees prior to the Petition Date.

12.     By this Motion, the Debtors seek authority to use Cash Collateral (as defined below) securing obligations owed to their three lenders—Ally, Spirit, and Cerberus (each as defined below)—during these Chapter 11 Cases to wind down their businesses and preserve and protect the Prepetition Collateral (as defined below) of each lender in order to maximize the value of their estates for the lenders and all stakeholders.  The Debtors require immediate access to Cash Collateral in order to maximize the value of their estates, and submit that the continued use of Cash Collateral is necessary to avoid immediate and irreparable harm and is critical to the success of these Chapter 11 Cases and the Debtors' ability to wind down their businesses.

13.     Importantly, the Debtors seek access to Cash Collateral in order to preserve their assets for the benefit of their secured lenders.  Absent the Debtors' use of Cash Collateral, Ally would face significant challenges in recovering the vehicles securing its Floorplan Line (as defined below).  The Debtors would be unable to pay rent at the locations at which such vehicles are stored, or to hire independent contractors to provide security services to protect such vehicles and assist in delivering them to Ally.  Likewise, the Debtors would be unable to pay rent to Spirit which, in addition to acting as a lender, is the Debtors' primary landlord.  Further, Cerberus has consented to the Debtors' use of Cash Collateral.

14.     Accordingly, for the foregoing reasons and as set forth herein, the Debtors respectfully request that the Court authorize the Debtors to use Cash Collateral.

4

## BACKGROUND

15.     The Debtors' capital structure consists of outstanding funded debt obligations in the aggregate principal amount of approximately $138,654,548, comprised of (i) approximately $67,368,932 outstanding pursuant to the Floorplan Agreement; (ii) $5,000,000 in principal outstanding pursuant to the Spirit Note; (iii) $13,450,000 in principal outstanding pursuant to the Katy Loan Agreement; and (iv) $52,835,616 in principal and paid-in-kind interest outstanding pursuant to the Cerberus Note (each as defined below).

16.     Floorplan Agreement.  Debtor Off Lease Only LLC ("OLO"), as borrower, Off Lease Only Parent LLC ("Parent"), as guarantor, and Ally Bank and Ally Financial (collectively, "Ally") are party to that certain Master Wholesale Agreement, dated as of October 11, 2010 (as amended, supplemented, or modified from time to time, the "Floorplan Agreement").  Pursuant to the Floorplan Agreement, Ally financed the Debtors' acquisition of the majority of their inventory through a $180 million line of credit (the "Floorplan Line"), as described in detail in the First Day Declaration.  The Floorplan Line is secured by a lien on (i) all of the Debtors' vehicles, including but not limited to, vehicles for which Ally provides financing, and regardless of whether such vehicles are inventory or equipment, and (ii) all funds provided to or held by Ally, regardless of whether such funds are considered accounts, general intangibles, or otherwise.  Pursuant to the Floorplan Agreement, Ally also holds $10 million of the Debtors cash as restricted cash.

17.     Spirit Loans.  OLO, as borrower, Parent, as guarantor, and Spirit Realty, L.P. ("Spirit"), as lender are party to that certain Loan Agreement, dated as of March 25, 2022 (as amended, supplemented, or modified from time to time (the "Katy Loan Agreement"), pursuant to which Spirit provided a $13.45 million construction loan for use in constructing a new dealership in Katy, Texas (the "Katy Loan").  The Katy Loan is secured by, among other things, (i) land,

improvements, fixtures, easements, and equipment related to the Katy property, and (ii) property and rights of OLO that may be subject to the Uniform Commercial Code, regardless of whether such assets are related to the Katy property. In addition, OLO, as maker, Parent, as guarantor, and Spirit, as holder, are party to that certain Promissory Note, dated as of May 17, 2023 (as amended, supplemented, or modified from time to time, the "Spirit Note") pursuant to which OLO issued a $5 million promissory note to Spirit. The obligations pursuant to the Spirit Note are unsecured.

18. <u>Cerberus Note</u>. Parent, as maker, OLO and Colo Real Estate Holdings LLC, as guarantors, and Cerberus Off Lease Only LLC ("Cerberus" and, together with Ally and Spirit, the "Prepetition Secured Parties"), as holder, are party to that certain Promissory Note, dated as of August 5, 2022 (as amended, supplemented, or modified from time, the "Cerberus Note"). The principal amount of the Cerberus Note is approximately $46.7 million, and as of the Petition Date, $52,835,616.20 in principal and paid-in-kind interest are outstanding. The Cerberus note is secured by substantially all of the Debtors' assets, excluding Ally's collateral.

19. As set forth above, all of the Debtors' cash (the "Cash Collateral") is encumbered by the Prepetition Secured Parties' security interests. And, as explained above, the Debtors require immediate access to Cash Collateral to administer these Chapter 11 Cases, preserve and protect the Prepetition Secured Parties' collateral, and successfully wind down their businesses. The Debtors, in consultation with their advisors, have reviewed and analyzed their projected cash needs during these Chapter 11 Cases and have prepared a budget outlining such needs (the "Budget"), a copy of which is attached as <u>Exhibit 1</u> to the Interim Order. The Debtors submit that the Budget accurately reflects their cash needs and will allow them to meet their obligations in these Chapter 11 Cases. The Debtors submit that the use of Cash Collateral in accordance Budget is reasonable and necessary to maximize the value of their estates for the benefit of all stakeholders.

## CONCISE STATEMENT PURSUANT TO
## BANKRUPTCY RULE 4001(b) AND LOCAL RULE 4001-2

20.     The below chart contains a summary of the material terms of the proposed Interim

Order, together with references to the applicable provisions thereof, as required by Bankruptcy

Rules 4001(b)(1)(B) and 4001(c)(1)(B) and Local Rule 4001-2.  The majority of the provisions of

such Bankruptcy Rules and Local Rule are inapplicable to the Interim Order and the Debtors'

proposed use of Cash Collateral, accordingly only the applicable provisions are summarized below.

| SUMMARY OF MATERIAL TERMS OF THE INTERIM ORDER | | |
|---|---|---|
| **Adequate Protection**<br><br>Bankruptcy Rule 4001(c)(1)(B)(ii) | As adequate protection of the interests of the Prepetition Secured Parties in the Prepetition Collateral, the Debtors propose to provide the following:<br><br>i.   to the extent of any Diminution in Value of such interests in the Prepetition Collateral, continuing, valid, binding, enforceable, and perfected Liens, which shall be senior in priority to the Prepetition Lien held by the applicable Prepetition Secured Party, upon such Prepetition Secured Party's Prepetition Collateral (the "<u>Adequate Protection Liens</u>").  The Adequate Protection Liens shall be subject to the Carve Out and, with respect to the Prepetition Secured Parties, shall have the same priority as such Prepetition Secured Parties enjoyed with respect to the Prepetition Collateral.  The Adequate Protection Liens shall be junior only to the Carve Out and the Permitted Prior Liens.   The Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the Debtors' assets that constitute Prepetition Collateral.<br><br>ii.   To the extent of any Diminution in Value of their respective interests in the Prepetition Collateral, and subject in all respects to the Carve Out, allowed superpriority administrative expense claims in each of the Chapter 11 Cases | Interim Order ¶¶ 3–6 |

| SUMMARY OF MATERIAL TERMS OF THE INTERIM ORDER | | |
|---|---|---|
| | and any Successor Cases (the "Adequate Protection Superpriority Claims"). the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever as and to the extent provided for by sections 503(b) and 507(b) of the Bankruptcy Code. | |
| **Validity/Priority of Liens and Claims**<br><br>Bankruptcy Rule 4001(c)(1)(B)(iii) | The Debtors, on their own behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree to certain stipulations regarding the validity and extent of the Prepetition Secured Parties' liens and claims. | Interim Order ¶¶ F, 13 |
| **Carve-Out**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iii)<br><br>Local Rule 4001-2(F) | As used in this Interim Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth below); (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth below); and (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all accrued and unpaid fees, disbursements, costs and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Creditors' Committee, (if any, and subject to the Budget), pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Estate Professionals"); *provided*, *however*, nothing in the Interim Order shall be construed to impair the ability of any party to object to any fees, expenses, reimbursement or compensation sought by any such professionals or any other person or entity. | Interim Order ¶ 11 |

**RELIEF REQUESTED**

21.      The Debtors seek entry of the Interim Order and the Final Order, respectively, (i) authorizing the use of cash collateral, (ii) granting adequate protection to prepetition secured parties, and (iii) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing approximately twenty-one (21) days from the Petition Date.  For the reasons set forth herein, the Debtors submit that the relief requested herein is in the best interest of the Debtors, their estates, creditors, and other parties-in-interest, and therefore, should be granted.

**BASIS FOR RELIEF**

**I.      The Use of Cash Collateral and Proposed Adequate Protection Should Be Approved**

22.      The Debtors' use of property of their estates, including Cash Collateral, is governed by section 363 of the Bankruptcy Code, which provides in relevant part:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 262(c)(1).  Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use . . . in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2).

23.      Parties with an interest in cash collateral are entitled to adequate protection pursuant to section 363(e) of the Bankruptcy Code.  *See* 11 U.S.C. § 363(e).  Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay.  *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996) (*en banc*).  While

section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis. *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *In re Satcon Tech. Corp.*, No. 12-12869 (KG), 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *see also In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on Bankruptcy ¶ 361.01[1] at 361–66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding")).

24.     As set forth above and in the Interim Order, the Debtors propose to provide the Prepetition Secured Parties with adequate protection to protect against the postpetition diminution in value of the Prepetition Collateral resulting from the use of Cash Collateral. Specifically, the Debtors propose to provide, to the extent of any Diminution in Value of such interests in the Prepetition Collateral, the Adequate Protection Liens consisting of continuing, valid, binding, enforceable, and perfected liens, which shall be senior in priority to the Prepetition Lien held by the applicable Prepetition Secured Party, upon such Prepetition Secured Party's Prepetition Collateral. The Adequate Protection Liens shall be subject to the Carve Out and, with respect to the Prepetition Secured Parties, shall have the same priority as such Prepetition Secured Parties enjoyed with respect to the Prepetition Collateral. The Adequate Protection Liens shall be junior only to the Carve Out and the Permitted Prior Liens. The Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the Debtors' assets that constitute Prepetition Collateral.

25.     Further, to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral, and subject in all respects to the Carve Out, the Debtors propose to provide the Adequate Protection Superpriority Claims, consisting of allowed superpriority administrative expense claims in each of the Chapter 11 Cases and any Successor Cases. The Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever as and to the extent provided for by sections 503(b) and 507(b) of the Bankruptcy Code.

26.     In addition to the forms of adequate protection the Debtors propose to provide pursuant to the Interim Order and the Final Order, the Debtors submit that the use of Cash Collateral to preserve and protect the Prepetition Collateral adequately protects the Prepetition Secured Parties against diminution in the value of the Prepetition Collateral. As is set forth above, absent the use of Cash Collateral, the Debtors would be unable to maintain the premises at which vehicles are located or hire independent contractors to secure such locations and assist in delivering vehicles to Ally. Absent the use of Cash Collateral, the Debtors submit that the value of Ally's security interest in their vehicles would deteriorate rapidly, with the risk of permanent loss and the necessity for Ally to retrieve such vehicles immediately, a virtual impossibility. Accordingly, by utilizing Cash Collateral to fund their wind down and the return of vehicles to Ally, the Debtors have adequately protected Ally against any diminution in value. Similarly, Spirit's interest in its Prepetition Collateral, consisting of certain real property and assets of Off Lease Only LLC, is protected through the Debtors' use of Cash Collateral. The Debtors cannot preserve and maintain such collateral without access to Cash Collateral. In addition, as noted above, Cerberus has consented to the Debtors' use of Cash Collateral.

11

27.     The Debtors submit that the proposed adequate protection is sufficient to protect the Prepetition Secured Parties from any potential diminution in value of their collateral.  In light of the foregoing, the Debtors further submit that the proposed forms adequate protection to be provided for the benefit of the Prepetition Secured Parties are appropriate.  Thus, the Debtors' provision of adequate protection is not only necessary to protect against any diminution in value but is fair and appropriate under the circumstances of these Chapter 11 Cases to ensure the Debtors are able to continue using the Cash Collateral for the benefit of all parties in interest and their estates.

## II.     The Carve Out Is Appropriate

28.     Pursuant to the proposed Interim Order, the Prepetition Liens and Adequate Protection Liens are subject and subordinate to the Carve Out.  The Carve Out contains similar terms to others that courts have found to be reasonable and necessary to ensure that a debtor's estate and any statutory committee can retain assistance from counsel and other appropriate advisors.  Without the Carve Out, the Debtors' estates may be deprived of possible rights and powers if the services for which professionals may be compensated is restricted.  *See In re Ames Dep't Stores*, 115 B.R. at 38 (observing that courts insist on carve outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced").  Additionally, the Carve Out protects against administrative insolvency during the course of these Chapter 11 Cases by ensuring that assets remain for the payment of the U.S. Trustee fees and professional fees, notwithstanding the grant of superpriority claims and replacement liens as part of the adequate protection of the Prepetition Secured Parties' interests in the Prepetition Collateral.  Accordingly, the Carve Out is appropriate and should be approved.

### III. Failure to Obtain Immediate Interim Access Cash Collateral Would Cause Immediate and Irreparable Harm

29.     Bankruptcy Rules 4001(b) and 4001(c) provide that a final hearing on a motion to use Cash Collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion.  Upon request, however, the Court may conduct a preliminary, expedited hearing on the Motion and authorize the obtaining of credit and use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.  The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions.  In that context, the court has instructed that irreparable harm is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.  *See, e.g.*, *Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 F. App'x 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)).  Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated.  *See, e.g.*, *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653-55 (3d Cir. 1994).  The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and, accordingly, should be granted.

30.     For the reasons noted above, the Debtors have an immediate postpetition need to use Cash Collateral.  Absent use of Cash Collateral, the Debtors cannot preserve the value of their estates during the pendency of these Chapter 11 Cases.  The Debtors will use cash to conduct an orderly wind-down of their businesses and deliver to, or permit recover of, collateral by their secured lenders.  Substantially all of the Debtors' available cash constitutes the Cash Collateral of the Prepetition Secured Parties.  The Debtors will therefore be unable to wind down their business or otherwise fund these Chapter 11 Cases without access to Cash Collateral and will suffer

13

immediate and irreparable harm to the detriment of all creditors and other parties in interest.  In short, the Debtors' ability to administer these Chapter 11 Cases through the use of Cash Collateral is vital to preserve and maximize the value of the Debtors' estates.

## IV.    Position of Secured Creditors

31.    Cerberus has consented to the use of Cash Collateral and the relief requested herein. The Debtors have requested, but have not yet received, a response from Ally or Spirit as to whether they consent to the use of Cash Collateral.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

32.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements pursuant to Bankruptcy Rule 6004(a) and the fourteen (14)-day stay of an order authorizing the use, sale, or lease of property pursuant to Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

33.    Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Proposed Orders is intended or should be construed as: (a) an admission as to the validity of any particular claim against the Debtors; (b) a waiver of any party's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of any party's rights pursuant to the Bankruptcy Code or any other applicable law; or (g) a concession by any party that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and all parties' rights to contest the extent, validity, or perfection or seek avoidance of all such liens are hereby reserved.  If the Court grants the relief sought herein, any payment made pursuant to

14

the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of any party's rights to subsequently dispute such claim.

## NOTICE

34.     The Debtors have provided notice of this motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the holders of the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis); (c) the United States Department of Justice; (d) the office of the attorneys general for the states in which the Debtors operate; (e) the United States Attorney's Office for the District of Delaware; (f) the Internal Revenue Service; (g) Cerberus Off Lease Only LLC; (h) Spirit Realty, L.P.; (i) Ally Bank; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, within two (2) business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

35.     No prior request for the relief sought herein has been made by the Debtors to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court enter the Interim Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: September 7, 2023
Wilmington, Delaware

Respectfully submitted,

*/s/ Laura Davis Jones*
Laura Davis Jones, Esq.  (DE Bar No. 2436)
James E. O'Neill, Esq. (DE Bar No. 4042)
Colin R. Robinson, Esq. (DE Bar No. 5524)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:  302-652-4100
Facsimile:  302-652-4400
email:  ljones@pszjlaw.com
          joneill@pszjlaw.com
          crobinson@pszjlaw.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

-and-

Brian S. Rosen, Esq. (*pro hac vice* pending)
Megan R. Volin, Esq. (*pro hac vice* pending)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Facsimile:  (212) 969-2900
Email:  brosen@proskauer.com
          mvolin@proskauer.com

-and-

Ashley M. Weringa, Esq. (*pro hac vice* pending)
Christian J. Palacios, Esq. (*pro hac vice* pending)
**PROSKAUER ROSE LLP**
70 W. Madison, Suite 3800
Chicago, Illinois 60602
Telephone: (312) 962-3550
Facsimile: (312) 962-3551
Email:  aweringa@proskauer.com
           cpalacios@proskauer.com

*Proposed Counsel for the Debtors and Debtors in Possession*

17

**EXHIBIT A**

**<u>Interim Order</u>**

DOCS_DE:244657.1 62901/001

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| OFF LEASE ONLY LLC,[1] | ) | Case No. 23- 11388 (CTG) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |
|  | ) |  |

**INTERIM ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases"), seeking entry of an interim order for interim use of cash collateral (this "Interim Order") and entry of a Final Order (as defined herein) pursuant to sections 105, 361, 362, 363, 503, 507 and 552 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court, District of Delaware (the "Local Rules"), *inter alia*:

(i)     authorizing the Debtors to use "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "Cash Collateral"), including Cash Collateral in which the Prepetition Secured Parties (as defined below) have a Lien or other interest as of the Petition Date;

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if applicable) are: Off Lease Only LLC (7345), Off Lease Only Parent LLC (2753), and Colo Real Estate Holdings LLC (7453). The location of the Debtors' service address in these chapter 11 cases is 1200 S. Congress Ave., Palm Springs, FL 33406.

[2]     Capitalized terms used but not defined herein have the meanings given to them in the Motion or the *Declaration of Leland Wilson in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), as applicable.

(ii)  modifying the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of this Interim Order;

(iii)  granting the Prepetition Secured Parties, as of the Petition Date and in accordance with the relative priorities set forth herein, the Prepetition Secured Parties Adequate Protection (as defined below), which consists of, among other things, the Adequate Protection Liens (as defined below), Adequate Protection Superiority Claims (as defined below);

(iv)  scheduling a final hearing on the Motion (the "<u>Final Hearing</u>") to be held no later than twenty five (25) calendar days after the Petition Date to consider entry of a final order that grants the relief requested in the Motion on a final basis,(the "<u>Final Order</u>"); and

(v)  providing for the immediate effectiveness of this Interim Order and waiving any applicable stay (including under Bankruptcy Rule 6004) to permit such immediate effectiveness.

The Court having considered the Motion, the exhibits attached thereto, the First Day Declaration, and the evidence submitted and arguments made at the interim hearing (the "<u>Interim Hearing</u>"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise being fair and reasonable and in the best interests of the Debtors, their estates and all parties-in-interest, and essential for the preservation of the value of the Debtors' assets; and it appearing that that approval of the interim

relief requested in the Motion is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.     **Petition Date**.  On September 7, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").

B.     **Debtors in Possession**.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.     **Jurisdiction and Venue**.  This Court has jurisdiction over the Chapter 11 Cases, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  This Court may enter a final order consistent with Article III of the United States Constitution.  Venue for the Chapter 11 Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     **Committee Formation**.  As of the date hereof, the United States Trustee for the District of Delaware (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (any such committee subsequently appointed, a "Creditors' Committee").

---

[3]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

3

E.    **Notice**.  Notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

F.    **Debtors' Stipulations**.  Subject and without prejudice to, the rights of parties-in-interest, including any Creditors' Committee or any other statutory committee that may be appointed in the Chapter 11 Cases, as set forth in decretal paragraph 13 hereof, the Debtors, on their own behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree as follows (paragraphs F(i) through (iv) below are referred to herein, collectively, as the "Debtors' Stipulations"):

(i)    *Prepetition Secured Facilities and Obligations*.  The Debtors are party to three (3) secured credit facilities:

(a)    Off Lease Only LLC ("OLO"), as borrower, Off Lease Only Parent LLC ("Parent"), as Guarantor, and Ally Bank and Ally Financial (collectively, "Ally") are party to that certain Master Wholesale Agreement, dated as of October 11, 2010 (as amended, supplemented, or modified from time to time, the "Floorplan Agreement").

(b)    OLO, as borrower, Parent, as guarantor, and Spirit Realty, L.P ("Spirit"), as lender are party to that certain Loan Agreement, dated as of March 25, 2022 (as amended, supplemented, or modified from time to time (the "Katy Loan Agreement").

(c)    Parent, as maker, OLO and Colo Real Estate Holdings LLP, as guarantors, and Cerberus Off Lease Only LLC ("Cerberus" and, together with Ally and Spirit, the "Prepetition Secured Parties"), as holder, are party to that certain Promissory Note, dated as of August 5, 2022 (as amended, supplemented, or modified from time, the "Cerberus Note" and, together with the Floorplan Agreement and Katy Loan Agreement, the "Prepetition Secured Facilities").

The agreements documenting the Prepetition Secured Facilities, as amended, supplemented, or modified from time to time, are referred to herein as the "<u>Prepetition Loan Documents</u>."

       (ii)    *Prepetition Liens and Prepetition Collateral.*  As more fully set forth in the Prepetition Loan Documents, prior to the Petition Date:

       (a)    Pursuant to the Floorplan Agreement, Ally holds a lien on (i) all of the Debtors' vehicles, including but not limited to, vehicles for which Ally provides financing, and regardless of whether such vehicles are inventory or equipment, and (ii) all funds provided to or held by Ally, regardless of whether such funds are considered accounts, general intangibles, or otherwise (collectively, the "<u>Ally Collateral</u>").[4]

       (b)    Pursuant to the Katy Loan Agreement, Spirit holds a lien on (i) land, improvements, fixtures, easements, and equipment related to certain real property located in Katy, Texas, and (ii) property and rights of OLO that may be subject to the Uniform Commercial Code (collectively, the "<u>Spirit Collateral</u>").

       (c)    Pursuant to the Cerberus Note, Cerberus holds a lien on substantially all prepetition assets of the Debtors not constituting Ally Collateral (the "<u>Cerberus Collateral</u>" and, together with the Ally Collateral and Spirit Collateral, the "<u>Prepetition Collateral</u>" and the liens securing the Prepetition Secured Parties' interests in the Prepetition Collateral, the "<u>Prepetition Liens</u>").

       (iii)    *Validity, Perfection and Priority of Prepetition Liens and Prepetition Secured Obligations.*  As of the Petition Date:  (a) the Prepetition Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to certain liens otherwise permitted by the Prepetition Loan Documents and any other lien arising as a matter of law (in each

---

[4] Notwithstanding anything to the contrary herein, the Debtors reserve the right to contest any security interest Ally may assert in proceeds of the Ally Collateral.

case, to the extent that such existing liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition Liens as of the Petition Date or were valid non-avoidable senior liens that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, the "Permitted Prior Liens")[5]; (b) the Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected and were granted by the Prepetition Secured Parties to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value; (c) the Prepetition Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Secured Parties enforceable in accordance with the terms of the Prepetition Loan Documents; (d) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Secured Obligations exist, and no portion of the Prepetition Liens or Prepetition Secured Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no, and will assert no, claims, objections, challenges, and/or causes of action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code or otherwise or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, consultants, directors, and employees arising out of, based upon or related to the Debtors, the Debtors' business or the Prepetition Secured Facility; (f) the Debtors have

---

[5] Nothing herein shall constitute a finding or ruling by this Court that any such Permitted Prior Lien is valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the Prepetition Secured Parties, or a Creditors' Committee (if appointed), to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any alleged Permitted Prior Lien and/or security interests.

6

waived, discharged and released any right to challenge any of the Prepetition Secured Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent and priority of the liens securing the Prepetition Secured Obligations (for the avoidance of doubt, subject and without prejudice to, the rights of parties-in-interest, including any Creditors' Committee or any other statutory committee that may be appointed in the Chapter 11 Cases, as set forth in decretal paragraph 13 herein), and (g) the Prepetition Secured Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(iv)     *Prepetition Secured Obligations*.  Pursuant to the Floorplan Agreement, Ally provided to the Debtors with a $180 million line of credit, approximately $67 million of which was outstanding as of the Petition Date (the "<u>Ally Obligations</u>").  Pursuant to the Katy Loan Agreement, Spirit provided the Debtors a term loan in the aggregate principal amount of $13.45 million (the amounts outstanding pursuant to such loan, the "<u>Spirit Obligations</u>").  Pursuant to the Cerberus Note, Cerberus provided the Debtors with a promissory note in the principal amount of $48,705,431.00, of which $52,835,616.20 in principal and interest was outstanding as of the Petition Date (the "<u>Cerberus Obligations</u>" and, together with the Ally Obligations and Spirit Obligations, the "<u>Prepetition Secured Obligations</u>").

G.     **<u>Cash Collateral</u>**.  All of the Debtors' cash, including any proceeds of Prepetition Collateral and any cash in deposit accounts, wherever located, constitutes Cash Collateral of the Prepetition Secured Parties as set forth in the Prepetition Loan Documents.

H.     **<u>Findings Regarding Use of Cash Collateral</u>**.

(i)     *Entitlement to Adequate Protection*.  The Prepetition Secured Parties are each entitled to receive adequate protection as set forth in this Interim Order pursuant to sections 361 and 363, of the Bankruptcy Code, to the extent of any aggregate diminution in value

resulting from, among other things, the Debtors' use, of Cash Collateral and other Prepetition Collateral, the subordination to the Carve Out (as defined herein) and the imposition of the automatic stay ("<u>Diminution in Value</u>") of each of their respective interests in the Prepetition Collateral (including Cash Collateral).

(ii)     *Need for Use of Cash Collateral*.   The Debtors have an immediate and critical need to use Cash Collateral on an interim basis in order to, administer these Chapter 11 Cases and protect and preserve the Prepetition Secured Parties' collateral.   The Debtors do not have sufficient available sources of working capital and/or financing to complete their wind-down administer these Chapter 11 Cases without the authorized use of Cash Collateral.

I.     **Adequate Protection**.   The Prepetition Secured Parties are entitled to receive adequate protection to the extent of any Diminution in Value of their interests in the Prepetition Collateral.   Pursuant to sections 361, 363 and 507(b) of the Bankruptcy Code, as adequate protection, subject in all respects to the Carve Out (as defined herein) the Prepetition Secured Parties will receive, to the extent of any Diminution in Value of their interests in the Prepetition Collateral, adequate protection liens and superpriority claims, as more fully set forth in decretal paragraphs 3–6 herein.   Further, the Debtors are utilizing Cash Collateral for the benefit of the Prepetition Secured Parties to preserve and protect the Prepetition Collateral.

J.     **Relief Essential; Best Interest**. For the reasons stated above, the Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), and the Local Rules. Absent granting the relief set forth in this Interim Order, the Debtors' estates and their ability to preserve the value of their assets will be immediately and irreparably harmed. Authorization of the use of Cash Collateral in accordance with this Interim Order is therefore in the best interests of the Debtors' estates and consistent with their fiduciary

8

duties. Based the foregoing, sufficient cause exists for immediate entry of the Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the applicable Bankruptcy Local Rules.

K.     **Notice of Interim Hearing**.  Notice of the Interim Hearing and the relief requested in the Motion has been provided by the Debtors, whether by electronic mail or overnight courier, to certain parties-in-interest, including, among others:  (i) the U.S. Trustee; (ii) the holders of the twenty (20) largest unsecured claims against the Debtors on a consolidated basis; (iii) the United States Securities and Exchange Commission; (iv) the United States Department of Justice; (v) the office of the attorneys general for the states in which the Debtors operate; (vi) the United States Attorney's Office for the District of Delaware; (vii) the Internal Revenue Service; (viii) Cerberus; (ix) Spirit; (x) Ally; (xi) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (xii) any such other party entitled to notice under the Bankruptcy Rules and Local Rules.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.     <u>Motion Granted</u>.  The Motion is hereby granted on an interim basis in accordance with the terms and conditions set forth in this Interim Order.  Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled.  This Interim Order shall become effective immediately upon its entry.

2.     <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Interim Order, and in accordance with the budget attached hereto as **Exhibit 1** (the

"Budget"), the Debtors are authorized to use Cash Collateral through entry of the Final Order (the period from the entry of this Interim Order through and including such earlier date, the "Interim Period").

3.      Adequate Protection Liens.

(i)      *Prepetition Adequate Protection Liens*.  Pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Secured Parties in the Prepetition Collateral, to the extent of any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition Secured Parties, subject to the terms and conditions set forth below, continuing, valid, binding, enforceable, and perfected Liens, which shall be senior in priority to the Prepetition Lien held by the applicable Prepetition Secured Party, upon such Prepetition Secured Party's Prepetition Collateral (the "Adequate Protection Liens").

4.      Priority of Adequate Protection Liens.

(i)      The Adequate Protection Liens shall be subject to the Carve Out and, with respect to the Prepetition Secured Parties, shall have the same priority as such Prepetition Secured Parties enjoyed with respect to the Prepetition Collateral.  The Adequate Protection Liens shall be junior only to the Carve Out and the Permitted Prior Liens.  The Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the Debtors' assets that constitute Prepetition Collateral.

(ii)      Except as provided herein, including, without limitation, with respect to the Carve Out, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against any trustee appointed in any of the

10

Chapter 11 Cases or any Successor Cases, or upon the dismissal of any of the Chapter 11 Cases or Successor Cases.  Subject to the Challenge Deadline and related provisions of paragraph 13, the Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

5.      <u>Adequate Protection Superpriority Claims</u>.  As further adequate protection of the interests of the Prepetition Secured Parties in the Prepetition Collateral, to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral, and subject in all respects to the Carve Out, the Prepetition Secured Parties are hereby granted as and to the extent provided by section 507(b) or the Bankruptcy Code allowed superpriority administrative expense claims in each of the Chapter 11 Cases and any Successor Cases (the "<u>Adequate Protection Superpriority Claims</u>").

6.      <u>Priority of the Adequate Protection Superpriority Claims</u>.  Except as set forth herein, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever as and to the extent provided for by sections 503(b) and 507(b) of the Bankruptcy Code.

7.      <u>Adequate Protection Reservation</u>.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Chapter 11 Cases or any Successor Cases.  Further, this Interim Order shall not prejudice or limit the rights

11

of the Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection.

**Provisions Common to Use of Cash Collateral**

8.     <u>Modification of Automatic Stay</u>.   The automatic stay imposed under section 362(a)(2) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to:  (a) permit the Debtors to grant the Adequate Protection Liens and Adequate Protection Superpriority Claims; (b) permit the Debtors to incur all liabilities and obligations to the Prepetition Secured Parties under this Interim Order; and (d) authorize the Debtors to make, and the Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of this Interim Order.

9.     <u>Perfection of Adequate Protection Liens</u>.   This Interim Order shall be sufficient and conclusive evidence of the creation, validity, perfection, and priority of all liens granted herein, including the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, securities account control agreement, or other similar agreement) to grant, attach, validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens, or to entitle the Prepetition Secured Parties and the Prepetition Secured Obligations to the priorities granted herein.  Notwithstanding the foregoing the Prepetition Secured Parties and their agents are authorized, but not required, to file, subject to the terms and priorities of this Interim Order, as they in their sole discretion deem necessary or advisable, such financing statements, security agreements, mortgages, notices of liens, and other similar documents to perfect in accordance with

12

applicable non-bankruptcy law or to otherwise evidence the Adequate Protection Liens and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided*, *however*, that no such filing or recordation shall be necessary or required in order to create or perfect the Adequate Protection Liens. The Debtors, without further consent of any party, are authorized to execute and deliver all such financing statements, mortgages, notices, and other documents as the Prepetition Secured Parties may reasonably request.

10.     <u>Cash Management</u>.  From and after the date of the entry of this Interim Order, the Debtors shall maintain cash management consistent with prepetition practices and in accordance with the Cash Management Order.  Except as otherwise permitted in the Cash Management Order, the Debtors shall maintain no accounts except those identified, or open or closed in accordance with the procedures set forth in, the Cash Management Order.

11.     <u>Carve Out</u>.

(a)     <u>Carve Out</u>.  As used in this Interim Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth below); (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth below); and (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all accrued and unpaid fees, disbursements, costs and expenses (the "<u>Allowed Professional Fees</u>") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "<u>Debtor Professionals</u>") and the Creditors' Committee, (if any, and subject to the Budget), pursuant to section 328 or 1103 of the Bankruptcy

Code (the "<u>Committee Professionals</u>" and, together with the Debtor Professionals, the "<u>Estate Professionals</u>"); *provided*, *however*, nothing herein shall be construed to impair the ability of any party to object to any fees, expenses, reimbursement or compensation sought by any such professionals or any other person or entity.

(b)     For the avoidance of doubt and notwithstanding anything to the contrary herein, the Carve Out shall be senior to all liens and claims securing the Adequate Protection Liens, and the Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, liens, or claims securing the Prepetition Secured Obligations.

(c)     <u>No Direct Obligation To Pay Allowed Professional Fees</u>.  The Prepetition Secured Parties shall not be responsible for the payment or reimbursement of any fees or disbursements of any Estate Professional incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate the Prepetition Secured Parties, in any way, to directly pay compensation to, or to reimburse expenses of, any Estate Professional or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(d)     <u>Payment of Allowed Professional Fees</u>.  The Debtors shall be permitted to pay compensation and reimbursement of all Allowed Professional Fees of Estate Professionals, as the same may be due and payable, and such payments shall not reduce the Carve Out; *provided*, that any such payment with respect to Committee Professionals is in accordance with the Budget when made.

12.     <u>Payment of Compensation</u>.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Estate Professional or shall affect the

DOCS_DE:244658.1 62901/001

right of the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses.

13.     <u>Effect of Stipulations on Third Parties</u>.

(i)     *Generally*.  The admissions, stipulations, agreements, and waivers set forth in this Interim Order are and shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties in interest and all of their successors in interest and assigns, including, without limitation, any official committee that may be appointed in these cases, unless, and solely to the extent that, (i) a Creditors' Committee (if any) or any other party in interest with standing and requisite authority (other than the Debtors, as to which any Challenge (as defined herein) shall be waived) has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant the Bankruptcy Rules challenging the Debtors' Stipulations (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "<u>Challenge</u>") no later than (1) if a Creditors' Committee is appointed, sixty (60) calendar days from the date of the Creditors' Committee's appointment, or (2) to the extent no Creditors' Committee is appointed, seventy-five (75) calendar days from the entry of the Interim Order for any other party in interest with requisite standing (the "<u>Challenge Deadline</u>"), and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal; *provided* that any trustee appointed or elected in these Chapter 11 Cases prior to the expiration of the Challenge Deadline shall have until the later of (x) the Challenge Deadline or (y) 10 calendar days from the date such trustee is appointed to commence

15

a Challenge proceeding. If the Creditors' Committee (if any) or any other party in interest files a motion for standing to bring a Challenge before expiration of the Challenge Deadline which attaches a proposed Challenge, such Challenge Deadline shall be tolled with respect solely to that party until two (2) Business Days after the Court approves the standing motion or such other period ordered by the Court in approving the standing motion.

        (ii)    *Binding Effect*. To the extent no Challenge is timely and properly commenced by the Challenge Deadline, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, (a) the Debtors' Stipulations shall, pursuant to this Interim Order, become binding, conclusive, and final on any person, entity, or party in interest in the Chapter 11 Cases, or any Chapter 7 trustee, and their successors and assigns, and in any Successor Case for all purposes and shall not be subject to challenge or objection by any party in interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates; (b) any and all payments made to or for the benefit of the Prepetition Secured Parties or otherwise authorized by this Interim Order (whether made prior to, on, or after the Petition Date) shall not be subject to counterclaim, set-off, subordination, recharacterization, defense, disallowance, recovery, or avoidance by any party in interest; and (c) all of the Prepetition Secured Obligations shall be deemed to be fully allowed claims within the meaning of section 506 of the Bankruptcy Code. Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Debtors' Stipulations and the other provisions in clauses (a) through (c) of the preceding sentence shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (i) above, except to the extent that any of such Debtors' Stipulations or the other provisions in clauses (a) through (c) of the preceding sentence

16

is expressly the subject of a timely and properly filed Challenge, which Challenge is successful as set forth in a final judgment, and only as to plaintiffs or movants that have complied with the terms hereof. Notwithstanding any provision to the contrary herein, nothing in this Interim Order shall be construed to grant standing on any party in interest, including the Creditors' Committee, to bring a Challenge on behalf of the Debtors' Estates. The failure of any party in interest to obtain an order of this Court prior to the Challenge Deadline granting standing to bring any Challenge on behalf of the Debtors' estates shall not be a defense to failing to commence a Challenge prior to the Challenge Deadline. To the extent any such Challenge proceeding is timely and properly commenced, the applicable Prepetition Secured Party shall be entitled to payment of the related costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred under the respective Prepetition Loan Documents in defending itself in any such proceeding as adequate protection.

14.     <u>No Third-Party Rights</u>. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

15.     <u>Limits on Lender Liability</u>. Nothing in this Interim Order or in any of the Prepetition Loan Documents or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the restructuring efforts and the administration of these Chapter 11 Cases. Nothing in this Interim Order or the Prepetition Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon any of the Prepetition Secured

17

Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

16. <u>Preservation of Rights Granted under this Interim Order</u>.

(i) Other than those claims and liens expressly granted or permitted by this Interim Order, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order shall be permitted while any of the Prepetition Secured Obligations or the Adequate Protection Superpriority Claims remain outstanding, and, except as otherwise expressly provided in or permitted under this Interim Order, the Prepetition Liens and the Adequate Protection Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Prepetition Secured Parties; or (iv) subject or junior to any intercompany or affiliate liens or security interests of the Prepetition Secured Parties.

(ii) Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or converting these Chapter 11 Cases to cases under chapter 7: (A) the Prepetition Secured Obligations, the Prepetition Liens, the Adequate Protection Superpriority Claims, and the Adequate Protection Liens, and any claims related to the foregoing, shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Prepetition Secured Obligations and Adequate Protection

18

Superpriority Claims shall have been paid in full (and that such Prepetition Secured Obligations, Prepetition Liens, Adequate Protection Superpriority Claims, Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (B) the other rights granted by this Interim Order, including with respect to the Carve-Out, shall not be affected; and (C) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph 16 and otherwise in this Interim Order.

(iii)    If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect: (i) the validity, priority or enforceability of any Prepetition Secured Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Prepetition Secured Parties of the effective date of such reversal, modification, vacatur or stay; or (ii) the validity, priority or enforceability of the Prepetition Liens, the Adequate Protection Liens, or the Carve-Out. Notwithstanding any such reversal, modification, vacatur or stay of any use of Cash Collateral, any Prepetition Secured Obligations, Prepetition Liens, Adequate Protection Superpriority Claims or Adequate Protection Liens incurred by the Debtors and granted to the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the Prepetition Secured Parties, of the effective date of such reversal, modification, vacatur or stay shall be governed in all respects by the original provisions of this Interim Order.

(iv)    Except as expressly provided in this Interim Order or in the Prepetition Loan Documents, the Prepetition Liens, the Prepetition Secured Obligations, the Adequate Protection Liens, the Adequate Protection Superpriority Claims and all other rights and remedies of the Prepetition Secured Parties granted by the provisions of this Interim Order and the Prepetition

19

Loan Documents and the Carve-Out shall survive, and shall not be modified, impaired or discharged by: (a) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases or terminating the joint administration of these Chapter 11 Cases or by any other act or omission; (b) the entry of an order approving the sale of any Prepetition Collateral pursuant to section 363(b) of the Bankruptcy Code); (c) the entry of an order confirming a chapter 11 plan in any of the Chapter 11 Cases. The terms and provisions of this Final Order and the Prepetition Loan Documents shall continue in these Chapter 11 Cases, in any Successor Cases if these Chapter 11 Cases cease to be jointly administered, and in any superseding chapter 7 cases under the Bankruptcy Code, and the Prepetition Liens, the Prepetition Secured Obligations, the Adequate Protection Liens and the Adequate Protection Superpriority Claims and all other rights and remedies of the other Prepetition Secured Parties granted by the provisions of this Interim Order and the Prepetition Loan Documents shall continue in full force and effect until the Prepetition Secured Obligations and the Adequate Protection Superpriority Claims are indefeasibly paid in full in cash, as set forth herein and in the Prepetition Loan Documents, and the commitments under the Prepetition Loan Documents have been terminated, and the Carve-Out shall continue in full force and effect.

17.     <u>Rights Preserved</u>.   Except as provided in this Interim Order and the Prepetition Loan Documents, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly:  (a) the Prepetition Secured Parties' right to seek any other or supplemental relief in respect of the Debtors; (b) any of the rights of any of the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases or Successor Cases,

conversion of any of the Chapter 11 Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (c) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the Prepetition Secured Parties. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors', a Creditors' Committee's (if appointed) or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Interim Order.  Entry of this Interim Order is without prejudice to any and all rights of any party in interest with respect to the terms and approval of the Final Order and any other position which any party in interest deems appropriate to raise in the Chapter 11 Cases.

18.     <u>No Waiver by Failure to Seek Relief</u>.  The failure of the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the Prepetition Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the Prepetition Secured Parties.

19.     <u>Binding Effect of Interim Order</u>.  Immediately upon the entry of the Interim Order by this Court, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the Prepetition Secured Parties, all other creditors of any of the Debtors, any Creditors' Committee (or any other court appointed committee) appointed in the Chapter 11 Cases, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Chapter 11 Cases, any Successor Cases, or upon dismissal of any Chapter 11 Case or Successor Case.

21

20. <u>Interim Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the Prepetition Loan Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

21. <u>Survival</u>.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in any of the Chapter 11 Cases; (b) converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Chapter 11 Cases or Successor Cases.  The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections granted to the Prepetition Secured Parties shall continue in the Chapter 11 Cases, in any Successor Cases, or following dismissal of the Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until all of the Prepetition Secured Obligations and Adequate Protection Superpriority Claims pursuant to the Prepetition Loan Documents and this Interim Order have been indefeasibly paid in full in cash.

22. <u>Final Hearing</u>.  The Final Hearing to consider entry of the Final Order is scheduled for **[___], 2023, at ___ __.m. (Eastern Standard Time)** before the Honorable United States Bankruptcy Judge [_____], at the United States Bankruptcy Court for the District of Delaware.  On or before _____, 2023, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>"), together with copies of this Interim Order, the proposed Final Order and the Motion, on:  (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for a Creditors'

Committee (if appointed); and (d) the Internal Revenue Service.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than on _____, **2023**, which objections shall be served so as to be received on or before such date by:  (i) proposed counsel to the Debtors, Proskauer Rose LLP, Eleven Times Square, New York, NY 10036 (Attn: Brian S. Rosen (brosen@proskauer.com) and Megan R. Volin (mvolin@proskauer.com); (ii) proposed co-counsel to the Debtors, Pachulski, Stang, Ziehl, & Jones, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801 (Attn: Laura Davis Jones); and (iii) Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801.

23.     <u>Nunc Pro Tunc Effect of this Interim Order</u>.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable nunc pro tunc to the Petition Date immediately upon execution thereof.

24.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

25.     No later than two (2) business days after the date of this Interim Order, the Debtors shall serve a copy of the Interim Order on the Notice Parties and shall file a certificate of service no later than 24 hours after service.

**EXHIBIT 1**

**Budget**

Off Lease Only, LLC ("OLO" or the "Company")
Cash Collateral Budget
USD ($ 000s)

| Cash Collateral Budget | Week 0 | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Company Status >> | 07-08 Sep-23 | 15-Sep-23 | 22-Sep-23 | 29-Sep-23 | 06-Oct-23 | 13-Oct-23 | 20-Oct-23 | 27-Oct-23 | 03-Nov-23 | |
| | Post-Petition | Post-Petition | Post-Petition | Post-Petition | Post-Petition | Post-Petition | Post-Petition | Post-Petition | Post-Petition | Post-Petition |
| USD ($ 000s) | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
| **Receipts** | | | | | | | | | | |
| Financed Vehicle Sales Receipts | $ 796 | $ 1,713 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 2,509 |
| Non-Financed Vehicle Sales Receipts | 199 | 459 | 321 | 28 | - | - | - | - | - | 1,007 |
| Net Proceeds from Sale of FF&E | - | - | - | - | - | - | - | - | - | - |
| **Total Receipts** | 995 | 2,172 | 321 | 28 | - | - | - | - | - | 3,516 |
| **Disbursements** | | | | | | | | | | |
| Product Remittances | - | (469) | (201) | - | - | - | - | - | - | (670) |
| Vehicle Tag and Title | - | (483) | (207) | - | - | - | - | - | - | (690) |
| Lien payoffs | - | (420) | (180) | - | - | - | - | - | - | (600) |
| Customer Deposits | - | (200) | (150) | - | - | - | - | - | - | (350) |
| Payroll and Benefits | - | (250) | - | - | - | - | - | - | - | (250) |
| Transition Team Costs | - | - | (70) | (62) | (654) | (16) | (6) | (3) | (494) | (1,305) |
| Rent Payments | - | (1,171) | - | - | (403) | - | - | - | - | (1,574) |
| Insurance Payments | - | - | - | - | (189) | - | - | - | - | (189) |
| Tax Payments | - | - | (508) | - | - | - | - | - | - | (508) |
| Other, SG&A | - | - | (80) | (12) | (284) | - | - | (13) | (204) | (594) |
| Contingency Fees | - | (70) | (70) | (70) | (70) | (70) | (70) | (70) | (70) | (560) |
| **Total Disbursements** | - | (3,063) | (1,466) | (144) | (1,601) | (86) | (76) | (86) | (768) | (7,289) |
| **Restructuring Costs** | | | | | | | | | | |
| Professional Fees | - | - | - | - | (2,285) | - | - | - | (2,084) | (4,369) |
| US Trustee Fees | - | - | - | - | - | - | - | - | (225) | (225) |
| Critical Vendors | - | - | (215) | - | - | - | - | - | - | (215) |
| Utility Deposits | - | (64) | - | - | - | - | - | - | - | (64) |
| Independent Director Fees | - | - | - | - | - | - | (18) | - | - | (18) |
| **Restructuring Disbursements** | - | (64) | (215) | - | (2,285) | - | (18) | - | (2,309) | (4,891) |
| **Net Cash Change** | $ 995 | $ (954) | $ (1,361) | $ (116) | $ (3,886) | $ (86) | $ (94) | $ (86) | $ (3,077) | $ (8,664) |
| **Beginning Cash Balance** | $ 8,810 | $ 9,805 | $ 8,851 | $ 7,490 | $ 7,374 | $ 3,488 | $ 3,402 | $ 3,308 | $ 3,222 | $ 8,810 |
| **Ending Cash Balance** | $ 9,805 | $ 8,851 | $ 7,490 | $ 7,374 | $ 3,488 | $ 3,402 | $ 3,308 | $ 3,222 | $ 146 | $ 146 |

- The accompanying notes included herein are integral to the Cash Collateral Budget ("Budget") and should be considered in conjunction with the estimates included above.

- FTI Consulting ("FTI") assisted the Off Lease Only, LLC (the "Company") with development of this Budget. The Statement of Limitations of this Report and its Access/Distribution is an integral part of the Budget and should be read in conjunction therewith.