IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| OFF LEASE ONLY LLC,[1] | ) Case No. 23- 11388 (CTG) |
| Debtors. | ) (Jointly Administered) |

**LIMITED OBJECTION OF ALLY
FINANCIAL INC. AND ALLY BANK TO
MOTION OF THE DEBTORS FOR ENTRY OF
INTERIM AND FINAL ORDERS (I) AUTHORIZING
THE USE OF CASH COLLATERAL, (II) GRANTING
ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES,
(III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF**

Ally Financial Inc. and Ally Bank (together, the "Ally Parties") as secured lenders under the Floorplan Agreements[2] with Off Lease Only LLC ("Off Lease LLC") as borrower and Off Lease Only Parent LLC as guarantor ("Off Lease Parent", and together with Off Lease LLC and Colo Real Estate Holdings LLC, the "Debtors") hereby submit this objection (the "Final Order Objection") to the *Motion Of The Debtors For Entry Of Interim And Final Orders (I) Authorizing The Use Of Cash Collateral, (II) Granting Adequate Protection To Prepetition Secured Parties, (III) Scheduling A Final Hearing, And (IV) Granting Related Relief* [Docket No. 7] (the "Motion")

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if applicable) are: Off Lease Only LLC (7345), Off Lease Only Parent LLC (2753), and Colo Real Estate Holdings LLC (7453). The location of the Debtors' service address in these chapter 11 cases is 1200 S. Congress Ave., Palm Springs, FL 33406.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 94] (the "Interim Order"), the *Objection of Ally Financial Inc. and Ally Bank to Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief and Reservation of Rights With Respect to Other First Day Motions* [Docket No. 41] (the "Preliminary Objection"), or the *Declaration of Michael Keeler in Support of Objection of Ally Financial Inc. and Ally Bank to Motion of the Debtors for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral* [Docket No. 42] (the "Keeler Declaration"), as applicable.

16320704/1

and entry of any final order authorizing the further use of cash collateral beyond the Interim Period. In support thereof, the Ally Parties respectfully state as follows:

## I.  Preliminary Statement

1. The Ally Parties do not object to the entry of an order granting the relief provided in the Interim Order through the Interim Period on a final basis, and the Ally Parties believe such relief on a final basis is appropriate. The Ally Parties do object to the entry of any order, including a final cash collateral order, that seeks the use of cash collateral beyond September 30, 2023.

2. The Ally Parties have already consented to the use of over $7 million of their cash collateral over a three-and-a-half week period to facilitate an orderly transition of all of the vehicles constituting the Ally Parties' collateral (collectively, the "Vehicles")[3] to the Ally Parties' possession. The Ally Parties are not willing to further fund the Debtors' chapter 11 cases, as the Ally Parties' interest in the cash collateral is not adequately protected, and none of the ongoing costs expected to be incurred by the estates are necessary for the maintenance or preservation of the Ally Parties' collateral. The Ally Parties' have been working expeditiously to transfer possession of all of the Vehicles to the Ally Parties and begin the sales process in accordance with the Transition Stipulation (defined herein) negotiated by the Debtors and the Ally Parties, and expect that, with the Debtor's continued cooperation consistent with the Transition Stipulation, the Vehicles will be removed from the Debtors' premises by September 30, 2023. Accordingly, the Ally Parties object to the entry of any cash collateral order that would authorize the use of the Ally Parties' cash collateral beyond the Interim Period ending September 30, 2023.

---

[3] The Ally Parties' collateral includes of all vehicles in which the Debtors had, have, or in the future acquire an interest in, including vehicles for which either of the Ally Parties provides financing, and regardless of whether such vehicles are inventory or equipment, and all proceeds thereof, including insurance proceeds.

3. As set forth in the Preliminary Objection, the Court can only authorize the Debtors' use of the Ally Parties' cash collateral over the Ally Parties' objections if the Debtors can establish that they can provide the Ally Parties with adequate protection. 11 U.S.C. § 363. Here, for the reasons set forth in the Preliminary Objection and the Keeler Declaration and as supplemented herein, the Debtors have failed to meet their burden of proof that the Ally Parties are adequately protected, and the Debtors are therefore not permitted to use the Ally Parties' cash collateral. The Ally Parties reassert and incorporate by reference their Preliminary Objection, attached hereto as **Exhibit A**, and the Keeler Declaration, attached hereto as **Exhibit B**.

## II.    Factual Background

4. The factual background through the filing of the Preliminary Objection on September 11, 2023 is set forth in paragraphs 12–26 of the Preliminary Objection.

5. As set forth in the Preliminary Objection, the Ally Parties objected to the Debtors' use of cash collateral on the terms described in the Motion on the grounds that: (a) the Debtors did not meet their burden to show that the Ally Parties were adequately protected; (b) the Ally Parties were in fact not adequately protected; (c) the Ally Parties would consent only to a limited use of cash collateral to facilitate the transfer of the Vehicles and titles to the Ally Parties; and (d) the Debtors would not suffer immediate and irreparable harm if the Motion were denied. *See* Preliminary Objection ¶¶ 27–48. The Ally Parties raised additional objections to features of the proposed interim order and relief requested in other "first day" motions, while reiterating their hope to reach a consensual resolution with the Debtors allowing for a limited use of cash collateral and reserving their rights to raise further objections. *See* Preliminary Objection ¶¶ 49–53.

6. The Debtors appeared before the Court on September 11, 2023 (the "First Day Hearing"), and requested first day relief on various issues, including the Motion. The Court adjourned the First Day Hearing to permit the parties in interest to discuss the Motion further.

7. On September 13, 2023, the Ally Parties filed the *Expedited Motion of Ally Financial Inc. and Ally Bank for Relief from the Automatic Stay* [Docket No. 66] and their *Motion for Entry of an Order Shortening the Notice Period With Respect to the Motion of Ally Financial Inc. and Ally Bank for Entry of an Order for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d) and (II) Granting Related Relief* [Docket No. 67] (together, the "<u>Stay Relief Motion</u>").

8. The Ally Parties, the Debtors, and Spirit Realty, L.P. engaged in negotiations with respect to the Motion following adjournment of the First Day Hearing. Following extensive and hard-fought negotiations, the Ally Parties consented to a revised proposed interim cash collateral order and the Debtors' limited use of cash collateral in accordance with specific terms and a modified budget through the Interim Period.

9. As a condition to agreement to the revised proposed interim order, the Ally Parties and the Debtors entered into and agreed to the *Stipulation and Order (A) Granting Limited Relief from the Automatic Stay, (B) Providing for the Return and Sale of Ally Collateral, and (C) Scheduling a Hearing to Determine the Valuation of the Ally Collateral* (the "<u>Transition Stipulation</u>"), thereby resolving the Preliminary Objection with respect to entry of an interim cash collateral order and resulting in the withdrawal of the Stay Relief Motion.

10. Per the terms of the Transition Stipulation, the Ally Parties and the Debtors agreed, *inter alia*, to lift the automatic stay to the extent necessary to allow the Ally Parties to repossess and sell the Vehicles in accordance with the Transition Procedures and for the Ally Parties to retain the proceeds received by the Ally Parties from such sales pending further order of the Court or agreement of the parties. Transition Stipulation ¶ 2.

11. On September 15, 2023, the Court entered the order approving the Transition Stipulation [Docket No. 80] and the *Interim Order (I) Authorizing the Use of Cash Collateral,*

*(II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 94] (the "Interim Order").

12. Per the Interim Order, the Court, *inter alia*, approved the Debtors' use of cash collateral on a consensual basis in accordance with the budget attached to the Interim Order (the "Budget") through Interim Period, modified the automatic stay to facilitate that immediate transfer of all Vehicles and corresponding title documentation to the Ally Parties and subsequent sale of the Ally Collateral pursuant to the Transition Stipulation, and preserved the Ally Parties' right to object to entry of a final order with respect to the Motion and any further use of cash collateral beyond the Interim Period. *See* Interim Order ¶¶ 2, 12, 26.

13. Since entry of the Interim Order, the Ally Parties have expended significant efforts and worked expeditiously to retrieve the Vehicles from Debtor's premises and begin the sales process in order to minimize costs to the Debtors' estates and maximize the value of the Vehicles.

14. As a result, the Ally Parties anticipate that, with the Debtor's continued cooperation consistent with the Transition Stipulation, all Vehicles will have been retrieved from Debtor's premises by the end of the day on September 30, 2023, which is the expiration of the Interim Period.[4]

### III.    Objection

15. The Ally Parties do not object to entry of an order approving the relief granted in the Interim Order with respect to the Interim Period on a final basis, and believe entry of such a

---

[4] The Ally Parties understand that, pursuant to the *Debtors' First (1st) Omnibus Motion for Entry of an Order (A) Authorizing Rejection of Certain Unexpired Leases and (B) Granting Related Relief* [Docket No. 13] (the "Lease Rejection Motion"), the Debtors are seeking authorization to reject all but two applicable leases effective as of September 30, 2023, and abandon any property, including any Vehicles, remaining on the leased premises free and clear of any liens. Lease Rejection Motion Ex. A ¶¶ 2, 5, Schedule 1. To the extent any Vehicles remain at the Debtors' leased premises after September 30, 2023, the Ally Parties intend to rely on relevant landlord waiver agreements and/or separate negotiations, as necessary, to retrieve the remaining Vehicles.

final order is appropriate. The Ally Parties do object to the entry of any proposed order, including a final cash collateral order, which seeks to use cash collateral beyond September 30, 2023. The Ally Parties do not consent to the use of the Ally Parties' cash collateral beyond the Interim Period ending September 30, 2023. Additionally, as detailed in the Preliminary Objection and the Keeler Declaration, both of which are fully incorporated by reference herein, the Debtors cannot show that the Ally Parties are adequately protected. Therefore, there is no basis for the Debtors to be authorized to use cash collateral beyond September 30, 2023.

16. Absent creditor consent, a debtor may not use, sell, or lease a secured creditor's cash collateral unless "the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). The Ally Parties do not consent to the use of cash collateral beyond September 30, 2023. Therefore, the Debtors bear the burden of proof on the issue of adequate protection, and they have failed to meet their burden. *See* Preliminary Objection ¶¶ 28–37. As explained in the Keeler Declaration, the value of the vehicle collateral in which the Debtors propose to offer Adequate Protection Liens was estimated as of September 11, 2023, to be more than $8 million lower than the Ally Parties' secured debt—before actual inspection of the Vehicles, their titles, and other contingencies that could affect the value of the Vehicles—and likely to depreciate until the Vehicles are sold. Keeler Declaration ¶¶ 37–41. As of September 30, 2023, the Debtors will no longer be in possession of any of the Vehicles in which they propose to offer Adequate Protection Liens, and they have not offered a replacement lien over new assets that could adequately protect the Ally Parties' interests nor any alternative assets or future cash flows that can cover for the depletion of the cash collateral. As explained in the Preliminary Objection, the Debtors' proposal to wind-down the business using the cash

collateral similarly does not generate any future cash flows in which the Ally Parties do not already have a secured interest. Therefore, the Ally Parties are not adequately protected.

17. Additionally, the Ally Parties currently expect, with the continued cooperation of the Debtors consistent with the Transition Stipulation, to repossess all of the Vehicles by expiry of the Interim Period on September 30, 2023. Therefore, even accepting the Debtors argument that merely preserving the value of the Vehicles provides adequate protection to the Ally Parties, *see* Motion ¶ 26, the Debtors will have no further costs associated with preserving the value of the Vehicles and, correspondingly, their continued use of cash collateral beyond the Interim Period will in no way provide adequate protection to the Ally Parties.

18. Accordingly, the Court should deny entry of an order authorizing the Debtors' use of the Ally Parties' cash collateral beyond expiry of the Interim Period because the Debtors have failed to satisfy their burden under section 363 of the Bankruptcy Code, the Ally Parties are not adequately protected, and the Ally Parties do not consent to the use of their cash collateral beyond expiry of the Interim Period. The Court should enter an order approving the relief granted in the Interim Order on a final basis.

## IV.    Reservation of Rights

19. The Ally Parties reserve their rights to supplement and amend this Final Order Objection based on any new facts that come to light, to seek an adjournment of the hearing on the Motion, and to introduce evidence at any hearing relating to this Final Order Objection, without limiting any other rights the Ally Parties may have.

## V.    Conclusion

For the foregoing reasons, the Ally Parties request that the Court deny entry of any order with respect to the Debtors' Motion that would authorize the use of the Ally Parties' cash collateral

beyond the Interim Period ending September 30, 2023, enter the Interim Order on a final basis, and grant such other and further relief as the Court deems appropriate under the circumstances.

| | |
|---|---|
| Dated: September 21, 2023<br>Wilmington, Delaware | Respectfully submitted, |

/s/ *Brya M. Keilson*

| | |
|---|---|
| **MORRIS JAMES LLP**<br>Eric J. Monzo (No. 5214)<br>Brya M. Keilson (No. 4643)<br>500 Delaware Avenue<br>Suite 1500<br>Wilmington, Delaware 19801<br>Telephone: (302) 888-6800<br>Facsimile: (302) 571-1750<br>Email: emonzo@morrisjames.com<br>Email: bkeilson@morrisjames.com | **SIDLEY AUSTIN LLP**<br>Matthew A. Clemente (*pro hac vice* pending)<br>Allison Ross Stromberg (*pro hac vice* pending)<br>Ian C. Ferrell (*pro hac vice* pending)<br>One South Dearborn<br>Chicago, Illinois 60603<br>Telephone: (312) 853-7000<br>Facsimile: (312) 853-7036<br>Email: mclemente@sidley.com<br>         astromberg@sidley.com<br>         iferrell@sidley.com<br><br>—and—<br><br>John J. Kuster (*pro hac vice* pending)<br>Martin B. Jackson (*pro hac vice* pending)<br>787 7th Avenue<br>New York, New York 10019<br>Telephone: (212) 839-5300<br>Facsimile: (212) 839-5599<br>Email: jkuster@sidley.com<br>         mjackson@sidley.com |

*Co-Counsel to Ally Financial, Inc. and Ally Bank*