# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| OFF LEASE ONLY LLC,[1] | ) | Case No. 23- 11388 (CTG) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

### LIMITED OBJECTION OF ALLY FINANCIAL INC. AND ALLY BANK TO DEBTORS' FIRST (1ST) OMNIBUS MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING REJECTION OF CERTAIN UNEXPIRED LEASES EFFECTIVE AS OF THE PETITION DATE AND (B) GRANTING RELATED RELIEF

Ally Financial Inc. and Ally Bank (together, the "Ally Parties") as secured lenders under the Floorplan Agreements[2] with Off Lease Only LLC ("Off Lease LLC") as borrower and Off Lease Only Parent LLC as guarantor ("Off Lease Parent", and together with Off Lease LLC and Colo Real Estate Holdings LLC, the "Debtors") hereby submit this limited objection (the "Limited Objection") to the *Debtors' First (1st) Omnibus Motion for Entry of an Order (A) Authorizing Rejection of Certain Unexpired Leases Effective as of the Petition Date and (B) Granting Related Relief* [Docket No. 13] (the "Rejection Motion") and the Debtors' proposed form of order with respect to the Rejection Motion attached thereto (the "Debtors' Proposed Order"). In support thereof, the Ally Parties respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if applicable) are: Off Lease Only LLC (7345), Off Lease Only Parent LLC (2753), and Colo Real Estate Holdings LLC (7453). The location of the Debtors' service address in these chapter 11 cases is 1200 S. Congress Ave., Palm Springs, FL 33406.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 94] (the "Interim Cash Collateral Order") or the Rejection Motion, as applicable.

## I.    Preliminary Statement

1.    The Ally Parties do not object to the Debtors' request to reject the leases set forth on Schedule 1 to Exhibit A to the Rejection Motion, and believe that such rejection is necessary and appropriate to minimize the costs to the Debtors' estates.[3]  However, the Debtors' Proposed Order includes extraordinary relief that is prejudicial to the rights of the Ally Parties, inconsistent with the relief granted in the Interim Cash Collateral Order and the *Order Approving Stipulation (A) Granting Limited Relief from the Automatic Stay, (B) Providing for the Return and Sale of Ally Collateral, and (C) Scheduling a Hearing to Determine the Valuation of the Ally Collateral* [Docket No. 80] (the "Stipulation Order"), and in direct conflict with agreements the Ally Parties have in place with the Debtors' landlords regarding access to the Premises and the Ally Parties' collateral.  The Ally Parties accordingly object to the entry of the Debtors' Proposed Order, and respectfully request that the Court enter the proposed form of order attached hereto as **Exhibit A** (the "Ally Proposed Order")[4].

2.    In the Rejection Motion, the Debtors seek authorization to reject certain leases and abandon certain property pursuant to sections 105(a), 365(a), and 554(a) of the Bankruptcy Code. However, the Debtors' requested relief goes far beyond the plain statutory language they cite in the Rejection Motion.  Through the provisions of the Debtors' Proposed Order, the Debtors seek to abandon such property free and clear of all liens, claims, encumbrances, interests, and rights of

---

[3] Concurrently with this Limited Objection, the Ally Parties have filed the *Limited Objection of Ally Financial Inc. and Ally Bank to Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* reasserting the Ally Parties' objection to the use of cash collateral beyond September 30, 2023.  The Ally Parties note that the Debtors' request to reject two Rejection Leases effective as of October 31, 2023. Although the Ally Parties do not object to that relief, the Ally Parties do not consent to the use of cash collateral other than as set forth in the Interim Cash Collateral Order and the Budget attached thereto, and do not consent to the use of cash collateral to satisfy any obligations the Debtors' estates may incur with respect to such leases after September 30, 2023.

[4] Attached hereto as **Exhibit B** is a redline showing the changes between the Debtors' Proposed Order and the Ally Proposed Order.

2

third parties, and further seek to allow the landlord counterparties to freely utilize or dispose of such abandoned property without liability or even notice to any third parties.

3. Vehicles constituting the Ally Parties' collateral remain at some of these Premises as of the date of this Limited Objection, although the Ally Parties anticipate that, with the Debtors' continued cooperation consistent with the Transition Stipulation (defined herein), all Vehicles will be removed from the Premises by September 30, 2023. In the event that some Vehicles may still be on the Premises after the lease rejection effective date(s), the relief requested in the Debtors' Proposed Order would inappropriately and unfairly strip the Ally Parties of their liens, rights, and interests in the Vehicles.

4. Prior to the Debtors' chapter 11 cases and in consideration of the Ally Parties' agreement to finance the Debtors' purchase of the Vehicles, the Ally Parties entered into several Landlord Agreements (defined herein) with the Debtors' landlord counterparties. The Landlord Agreements provide the Ally Parties with rights to access the subject premises and remove their collateral, and the relief requested in the Debtors' Proposed Order directly conflicts and interferes with the Ally Parties' rights under the Landlord Agreements.

5. Accordingly, the Ally Parties submit this Limited Objection to the Debtors' overreaching and unfair request that any abandoned Personal Property be free and clear of all liens, claims, encumbrances, interests, and rights of third parties and that landlord counterparties be free to utilize or dispose of such abandoned property without liability to any third parties, including the Ally Parties.

## II. Limited Objection

6. In addition to rejecting the Rejection Leases pursuant to section 365(a) of the Bankruptcy Code, the Debtors' Rejection Motion requests authority to abandon any Personal Property located at the Premises subject to the Rejection Leases. Motion ¶¶ 12–13. The Rejection

Motion specifically includes vehicles in the definition of the "Personal Property" to be abandoned under section 554(a) of the Bankruptcy Code. Motion at 1. The Debtors state that the Personal Property will no longer be necessary for the administration of the Debtors' estates after the effective date for the lease rejection, and abandonment will reduce administrative costs. Motion ¶¶ 12–13, 21–22.

7. The Debtors' Proposed Order, however, provides for additional relief beyond approving the Debtors' decision to abandon the Personal Property pursuant to section 554(a). The Debtors' Proposed Order purports to strip any third parties, including the Ally Parties, of any liens, rights, or interest in the Personal Property following the Debtors' abandonment, and would authorize the Debtors' landlords to use or dispose of the Personal Property free and clear of the liens, rights, and interests of third parties in such property. Specifically, the Debtors' Proposed Order provides:

> The Debtors are authorized, but not directed, to abandon any Personal Property located at the Premises identified on Schedule 1 to Exhibit A and all such property is deemed abandoned as of the date specified in Schedule 1 *free and clear of all liens, claims, encumbrances, interests, and rights of the Debtors and third parties*. The applicable counterparty to each Rejection Lease may utilize or dispose of such Personal Property *without liability to any third parties, and without further notice to any party claiming an interest in such abandoned Personal Property*. The automatic stay, to the extent applicable, is modified to allow for such utilization or disposition.

Debtors' Proposed Order ¶ 5 (emphasis added).

8. The Debtors do not even mention this extraordinary relief in the Rejection Motion and fail to provide any legal support or other basis for asking the Court to strip the liens, rights, and interests of third parties in the Personal Property the Debtors elect to abandon. To the contrary, abandonment under section 554 of the Bankruptcy Code does not affect any liens against or claims to the abandoned property. *See, e.g.*, *In re Haber*, 547 B.R. 252, 258 (Bankr. S.D. Ohio 2016) ("Since abandonment has no effect upon the validity of the liens encumbering the property, the

practical effect of the election is to remove the asset entirely from the jurisdiction of the bankruptcy court. It is simply a declaration by the trustee that the bankrupt estate wants nothing further to do with the property and that the lienors are free to proceed against it just as they normally would under applicable state law." (citations omitted)).

9. The Debtors and the Ally Parties have agreed to an orderly process to transfer the Vehicles[5] on the Premises to the Ally Parties' possession so that the Ally Parties can begin a sale process, minimize costs to the Debtors' estates, and maximize the value of the Vehicles. The parties' agreement with respect to that process is set forth in the *Stipulation and Order (A) Granting Limited Relief from the Automatic Stay, (B) Providing for the Return and Sale of Ally Collateral, and (C) Scheduling a Hearing to Determine the Valuation of the Ally Collateral*) (the "Transition Stipulation"), which was approved by the Court in the Stipulation Order. As part of the parties' agreement with respect to the Transition Stipulation, the Ally Parties consented to the Debtors' use of over $7 million of the Ally Parties' cash collateral on the terms set forth in the Interim Cash Collateral Order. Both the Court-approved Transition Stipulation and the Interim Cash Collateral Order provided that the automatic stay would be modified to allow the Ally Parties to repossess and sell the Vehicles. The Ally Parties have been working expeditiously to transfer possession of all of the Vehicles on the Premises to the Ally Parties and begin the sales process in accordance with the Transition Stipulation, and currently expect that, with the Debtors' continued cooperation consistent with the Transition Stipulation, all Vehicles will be removed from the Premises by September 30, 2023.

---

[5] The Ally Parties' collateral includes all of the vehicles in which the Debtors had, have, or in the future acquire an interest in, including vehicles for which either of the Ally Parties provides financing, and regardless of whether such vehicles are inventory or equipment, and all proceeds thereof, including insurance proceeds.

10. However, to the extent any Vehicles remain on the Premises after September 30, 2023, such Vehicles, and all proceeds thereof, remain the Ally Parties' collateral and are subject to the Ally Parties' liens, and the Ally Parties plan to continue their efforts to repossess the remaining Vehicles in an orderly and expeditious manner to maximize the value of the Ally Parties' collateral. The Debtors have no basis to strip the Ally Parties of their interests in this property (and the proceeds thereof) just because the Debtors have elected to abandon such property (and the proceeds thereof).

11. Moreover, the Ally Parties have waiver or subordination agreements in place with counterparties to the Rejection Leases (each a "Landlord Agreement" and collectively the "Landlord Agreements"), and the relief requested in the Debtors' Proposed Order directly conflicts with those Landlord Agreements without even trying to provide any justification or legal basis for this prejudicial relief. The specific language of the applicable Landlord Agreements vary, but each of the agreements: (i) provides that the landlord waives or subordinates to the Ally Parties any liens, claims, or rights which the landlord has or may acquire with respect to personal property of the tenant (in each case expressly including the motor vehicles)[6] and all proceeds thereof; and (ii) permits the Ally Parties to access the applicable Premises for the purposes of removing the motor vehicles. The applicable Landlord Agreements with Spirit Realty, L.P. ("Spirit") further expressly provide that Spirit is not permitted to dispose of any "tenant property" without giving the Ally Parties a certain amount of time to enter the Premises and remove the property after the tenant vacates the Premises. Accordingly, the Debtors' request to abandon the Personal Property, including the Vehicles, to the counterparties to the Rejection Leases and to allow such parties to

---

[6] Several of the Landlord Agreements include waivers or subordination agreements that cover a broader scope of personal property of the tenant than just motor vehicles and proceeds thereof.

6

use or sell such assets without liability (or even notice) to the Ally Parties violates the terms of the Landlord Agreements.

12. In contrast, the Ally Proposed Order permits the Debtors to reject the Rejection Leases and abandon the Debtors' Personal Property, but preserves the Ally Parties' liens, rights, and interests in their collateral, preserves the Ally Parties' rights under the Landlord Agreements, and clarifies that the abandonment of any Vehicles remaining on the Premises does not affect the transition process set forth in the Transition Stipulation. Further, as the Debtors are electing to abandon their Personal Property, the Debtors' estates will have no further interest in the Personal Property or the proceeds thereof. The Ally Proposed Order therefore clarifies that the Ally Parties may apply any proceeds received from the sale of the abandoned Vehicles to the amounts the Debtors owe to the Ally Parties (including all amounts owed under the Floorplan Agreements and the Ally Parties' enforcement costs) without any further order of the Court. The Ally Proposed Order grants the rejection-related relief requested by the Debtors in the Rejection Motion, but clarifies and preserves the Ally Parties' existing rights with respect to their collateral and agreements entered into with the Debtors' landlords. Accordingly, the Ally Parties request that the Court grant the Rejection Motion on the terms set forth in the Ally Proposed Order.

### III.    Reservation of Rights

13. The Ally Parties reserve their rights to supplement and amend this Limited Objection based on any new facts that come to light, to seek an adjournment of the hearing on the Rejection Motion, and to introduce evidence at any hearing relating to this Limited Objection, without limiting any other rights the Ally Parties may have.

### IV.    Conclusion

For the foregoing reasons, the Ally Parties request that the Court deny entry of the Debtors' Proposed Order with respect to the Debtors' Rejection Motion, enter the Ally Proposed Order

attached hereto as **Exhibit A**, and grant such other and further relief as the Court deems appropriate under the circumstances.

Dated: September 21, 2023  
Wilmington, Delaware

Respectfully submitted,

/s/ *Brya M. Keilson*

**MORRIS JAMES LLP**  
Eric J. Monzo (No. 5214)  
Brya M. Keilson (No. 4643)  
500 Delaware Avenue  
Suite 1500  
Wilmington, Delaware 19801  
Telephone: (302) 888-6800  
Facsimile: (302) 571-1750  
Email: emonzo@morrisjames.com  
Email: bkeilson@morrisjames.com

**SIDLEY AUSTIN LLP**  
Matthew A. Clemente (*pro hac vice* pending)  
Allison Ross Stromberg (*pro hac vice* pending)  
Ian C. Ferrell (*pro hac vice* pending)  
One South Dearborn  
Chicago, Illinois 60603  
Telephone: (312) 853-7000  
Facsimile: (312) 853-7036  
Email: mclemente@sidley.com  
astromberg@sidley.com  
iferrell@sidley.com

—and—

John J. Kuster (*pro hac vice* pending)  
Martin B. Jackson (*pro hac vice* pending)  
787 7th Avenue  
New York, New York 10019  
Telephone: (212) 839-5300  
Facsimile: (212) 839-5599  
Email: jkuster@sidley.com  
mjackson@sidley.com

*Co-Counsel to Ally Financial, Inc. and Ally Bank*