# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| OFF LEASE ONLY LLC, *et al.*,[1] | Case No. 23-11388 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 7 & 94** |

## OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, (C) MODIFYING THE AUTOMATIC STAY, AND (D) GRANTING RELATED RELIEF

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 bankruptcy cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through its undersigned proposed counsel, hereby submits this objection (the "Objection") to final approval of the *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 7] (the "Motion")[2] In support of this Objection, the Committee respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number (if applicable) are: Off Lease Only LLC (7345), Off Lease Only Parent LLC (2753), and Colo Real Estate Holdings LLC (7453). The location of the Debtors' service address in these chapter 11 cases is 1200 S. Congress Ave., Palm Springs, FL 33406.

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Motion, or the order granting the Motion on an interim basis [Docket No. 94] (the "Interim Order"), as applicable.

**PRELIMINARY STATEMENT**

1.  The Committee was appointed on September 20th, selected its proposed counsel on September 21st, and selected its proposed financial advisor on September 23rd.[3] Under the Interim Order and seemingly proposed final order, the consensual use of cash collateral will expire on September 30th. After that, it is unclear how these cases continue in Chapter 11. That leaves the Committee with about 9 days to do its job. That time-period is woefully deficient.

2.  Aside from the severe timing issues that these cases present, the stripped-down Budget that was attached to the Interim Order (and presumably will be attached to the proposed final order) is insufficient to support these Chapter 11 Cases and certainly insufficient to allow the Committee to conduct any concrete analysis or investigation.

3.  Unfortunately, the Committee cannot force the Ally Parties to permit the consensual use of cash collateral—whether that be in amount or time. But what the Committee can do is prevent the Ally Parties from receiving any benefits that they are not otherwise entitled to as a secured lender. If the Court is inclined to grant the Motion on a final basis, the order should be stripped down just as the Ally Parties stripped down the Debtors' Budget. Doing so will ensure that as much value as possible (including bankruptcy rights) is preserved for the benefit of a likely chapter 7 trustee and, ultimately, for the Debtors' creditors. While the Committee believes that appropriately funding these cases and pursuing an orderly process outside the context of a conversion to Chapter 7 would maximize the value of these estates, at present, that does not seem to be a reality.[4]

---

[3] The Debtors agreed to adjourn the second day hearing to September 28th (from September 26th) and extend the Committee's objection deadline to September 26th (from September 21st).

[4] To be clear, prior to the filing of this Objection, the Committee engaged in discussions with both the Debtors and the Ally Parties surrounding its concerns and the future of these Chapter 11 Cases. While no resolution has been

2

**BACKGROUND**

**A.    General Background**

4.    On September 7, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their business and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee or examiner has been appointed in the Chapter 11 Cases.

5.    On September 20, 2023, the Office of the United States Trustee (the "U.S. Trustee") formed the Committee [Docket No. 111, filed on September 21, 2023]. The Committee consists of: (i) Spirit Realty, L.P.; (ii) Dent Wizard International LLC; (iii) Norman & Company, Inc./Classic; (iv) Ocean Detailing USA Mgmt.; and (v) Out Front Media LLC. On September 21, 2023, the Committee selected Potter Anderson & Corroon LLP ("Potter Anderson") as its proposed counsel. On September 23, 2023, the Committee selected Dundon Advisers LLC as its proposed financial advisor.

**B.    Background Related to the Motion**

6.    On the Petition Date, the Debtors filed the Motion. On September 11, 2023 (the day of the first day hearing), the Ally Parties filed an objection to the Motion and declaration in support [Docket Nos. 41 & 42]. The Ally Parties also filed a motion for relief from stay to repossess and sell the Debtors' vehicles (and related motion to expedite) [Docket Nos. 66 & 67]. The Debtors and the Ally Parties eventually came to an agreement on the Debtors' use of cash

---

reached as of the filing of this Objection, the Committee will keep lines of communication open in hopes of having productive discussions in advance of the hearing on the Motion.

collateral during the Interim Period as well as a stipulation that provided stay relief to the Ally Parties to repossess the vehicles and begin processing them for sale [Docket Nos. 80 & 94].

7. The Budget that was approved by the Interim Order was a three-week budget running through September 30, 2023 as opposed to the budget originally proposed by the Debtors (and attached to the Motion) that ran through the first week of November. Additionally, the Ally Parties removed approximately $2 million in projected expenses from the following above-the-line expenses—(i) $537,000 from Transition Team Costs; (ii) $700,000 from Rent Payments; (iii) $189,000 from Insurance Payments; (iv) $217,000 from Other, SG&A; and (v) $350,000 from Contingency Fees. The Ally Parties also removed approximately $3 million in projected professional fees and U.S. Trustee fees.[5] The removed expense items are primarily unavoidable expenses necessary to wind down the business. Due to these decreases in the Budget, the Debtors are projected to be sitting on approximately $5 million in cash at the end of September, while the claims pool will be increased by the unavoidable wind-down administrative expenses.

8. On September 15, 2023, the Court entered the Interim Order and approved the Stipulation between the Debtors and the Ally Parties.

9. The Interim Order (and the proposed final order) provides the Prepetition Secured Parties (which includes the Ally Parties, Cerberus, and Spirit) with a number of concessions. ***First***, the Interim Order provides for the waiver of (i) the "equities of the case" exception, (ii) the Debtors' right under 552 to avoid liens, (iii) the equitable doctrine of marshaling, and (iv) the Debtors' right to surcharge collateral under 506(c). Interim Order ¶¶ 18, 19, & 20. ***Second***, the Debtors stipulate that there are no claims whatsoever against the Prepetition Secured Parties.

---

[5] Upon information and belief, the Budget does not even sufficiently provide for the payment of U.S. Trustee fees on account of anticipated disbursements through September 30th.

4

Interim Order ¶ F(iii). This stipulation (in addition to all of the Debtors' Stipulations) will be effective against all parties unless a timely Challenge is filed in essence effectuating a release of the Prepetition Secured Parties. Interim Order ¶ 17. **Third**, the Interim Order gives a chapter 7 trustee the later of the Challenge Deadline or 20 calendar days to file a Challenge—an insufficient amount of time given the broad-nature of the Debtors' Stipulations and the likely conversion of these cases. Interim Order ¶ 17(i). **Fourth**, the Committee's investigation budget is just $30,000—unreasonably limited based upon the debt structure of the Debtors but seemingly irrelevant if these cases convert. Interim Order ¶ 17(iii).

    10.    Other non-market features of this Interim Order include:

        a.    The Interim Order provides for an Event of Default if the amount of the Debtors actual disbursement "for any line item exceeding the amount of such projected disbursement for that line item (whether operating disbursement or restructuring costs) set forth in the Budget since the Petition Date." Interim Order ¶ 11(ii). Said differently, there is no variance allowance for the Debtors (as is typical) and it does not appear that one dollar can be moved from line-item to line-item within the Budget (as is typical).

        b.    The Carve Out provides no funding for professional fees post-default or termination of the use of cash collateral (as is typical). Interim Order ¶ 15(a).

        c.    The Interim Order provides the Ally Parties with payment of professional fees up to $150,000 (whether those fees are incurred prepetition or

postpetition) through September 30th.[6] Interim Order ¶ 7. However, the Ally Parties are only required to provide the Notice Parties with "summary form only" invoices, which will likely not include sufficient detail for anyone to determine the reasonableness of the fees. *Id.* ("The Notice Parties may object to the reasonableness of such fees and expenses….").

11. Pursuant to the Interim Order, the Debtors' access to cash collateral will expire after September 30, 2023, less than 10 days after formation of the Committee, following which the Debtors, which are not currently operating, will be faced with the prospect of conversion to chapter 7 or dismissal.

## OBJECTION

12. An agreement on the use of cash collateral should only be approved if it is fair and reasonable under the circumstances, comports with basic notions of fairness and equity, and will ultimately inure to the benefit of the debtor's estate. *In re Aqua Assocs.*, 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 37-40 (Bankr. S.D.N.Y. 1990). Courts routinely recognize that "[d]ebtors in possession generally enjoy little negotiating power with a proposed lender, particularly when the lender has a prepetition lien on cash collateral." *In re Defender Drug Stores, Inc.*, 145 B.R. 312, 317 (9th Cir. B.A.P. 1992). As a result, courts are hesitant to approve financing terms that are considered harmful to an estate and its creditors. *See, e.g., Ames Dep't Stores*, 115 B.R. at 40 (noting that "the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or

---

[6] For a frame of reference, the Budget provides a line-item for Committee counsel and Committee financial advisor of $65,000 and $50,000, respectively.

its purpose is not so much to benefit the estate as it is to benefit a party-in-interest"). The burden of making such a showing is on the debtor. *See In re Crouse Grp., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987). Thus, while certain favorable terms may be permitted as a reasonable exercise of the debtor's business judgment, bankruptcy courts have not approved financing arrangements that convert the bankruptcy process from one designed to benefit all creditors to one designed for the sole (or primary) benefit of the lender. *See, e.g., Ames Dep't Stores*, 115 B.R. at 38 (citing *In re Tenney Vill. Co.*, 104 B.R. 562, 568 (Bankr. D.N.H. 1989)) (holding that the terms of a postpetition financing facility must not "pervert the reorganizational process from one designed to accommodate all classes of creditors . . . to one specially crafted for the benefit" of one creditor); *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2003) ("In Chapter 11 cases where no trustee is appointed, § 1107(a) provides that the debtor-in-possession, i.e., the debtor's management, enjoys the powers that would otherwise vest in the bankruptcy trustee. Along with those powers, of course, comes the trustee's fiduciary duty to maximize the value of the bankruptcy estate.").

13. At this stage of these Chapter 11 Cases, there appears to be very little, if any, prospect of recovery for general unsecured creditors. Despite the bleak outlook, the Court should not permit the Prepetition Secured Parties to gain an unfair advantage through the implementation of broad Debtors' Stipulations and a waiver of numerous rights. In most cases, broad stipulations are acceptable because there is time and funding to conduct investigations. In most cases, waiver of certain of the Debtors' rights are acceptable because the lenders are ensuring administrative solvency of the case. But this case is unique—Ally Bank has permitted the use of cash collateral for a barebones Budget spanning three weeks and are not "paying the freight" of these cases. Because of both the timing and funding issues present here, the Prepetition Secured Parties should

7

not receive the benefit of the normal "bells and whistles" included in most cash collateral orders. Those rights should be preserved for the benefit of a chapter 7 trustee who can utilize them to maximize the value of the estate for all creditors.

### A. Eliminate Waivers to Preserve Value for the Benefit of All Creditors.

14. The Committee is concerned about, and objects to, certain provisions of the Interim Order that unnecessarily benefit the Prepetition Secured Parties. The Interim Order should be modified in the final version to preserve unencumbered value in these important ways.

15. The Prepetition Secured Parties should not be granted a marshalling waiver, and instead should be required to look to encumbered property before utilizing unencumbered property. *See* Interim Order ¶ 19. Marshaling "requires the senior secured creditor to first collect its debt against the collateral other than that in which the junior secured creditor holds an interest, thereby leaving that collateral for the junior secured creditor's benefit." *In re Advanced Marketing Servs., Inc.*, 360 B.R. 421, 427 n.8 (Bankr. D. Del. 2007). Marshaling "prevent[s] the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security." *Meyer v. United States*, 375 U.S. 233, 236 (1963). The requested waiver is inappropriate here, especially considering that the Committee has only recently begun its investigation into the nature, extent, and validity of the liens asserted by the Prepetition Secured Parties. A marshaling waiver would unfairly prejudice unsecured creditors at this juncture, when their only recovery may come from the exercise of this important statutory and equitable right.

16. The Prepetition Secured Parties should not be granted a waiver of Bankruptcy Code section 506(c). Section 506(c) of the Bankruptcy Code allows a debtor to charge the costs of preserving or disposing of a secured lender's collateral to the collateral itself. This provision ensures that the cost of liquidating a secured lender's collateral is not paid from unsecured creditor

IMPAC 11072251v.6

recoveries.  *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 12 (2000).  This section is designed to "prevent a windfall to the secured creditor . . . [Section 506(c)] understandably shifts to the secured party . . . the costs of preserving or disposing of the secured party's collateral, which costs might otherwise be paid from the unencumbered assets of the bankruptcy estate."  *Precision Steel Shearing, Inc. v. Fremont Fin. Corp. (In re Visual Indus., Inc.)*, 57 F.3d 321, 325 (3d Cir. 1995).

17.    The proposed section 506(c) waiver serves no valid purpose other than eliminate a potential avenue of recovery for the Debtors' estates by ensuring that the costs of the Debtors' restructuring will be borne by the unsecured creditors alone, as opposed to being shared with Ally, who has consented to a minimal budget that does not even ensure administrative insolvency while it repossesses its collateral.  As such, the proposed waiver contravenes the intent behind section 506(c), which seeks to charge a lienholder with the costs and expenses of preserving or disposing of the secured collateral so that the general estate and unsecured creditors are not required to bear the cost of protecting what is not theirs.  *In re Codesco, Inc.,* 18 B.R. 225, 230 (Bankr. S.D.N.Y. 1982).  Nor is a section 506(c) waiver proper where, as here, Ally has provided no commitment to fund these cases in order to avoid administrative insolvency and an insufficient Budget for the Committee's professionals.  Additionally, in no event should Ally receive a 506(c) waiver until all 503(b)(9) claims and any other administrative expense claims are paid in full.

18.    Moreover, courts in this District generally refuse to approve waivers of section 506(c) surcharge rights when a creditors' committee objects to the waiver.  *See, e.g., Hr'g Tr. 20-21, In re Mortg. Lenders Network USA, Inc.*, No. 07-10146 (PJW) (Bankr. D. Del. Mar. 27, 2007) [Docket No. 346] ("Well, let me tell you what the law in this Court's been for at least the last five years.  If the Committee doesn't agree with the waiver, it doesn't happen."); *see also Hr'g Tr.*

*212:12-22, In re Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. June 5, 2014) [Docket No. 3927] (declining to approve a 506(c) waiver over objection and stating that "Judge Walsh once told me that he'd never approve a 506(c) waiver on a non-consensual basis"); *Hr'g Tr. 101:7-9, In re NEC Holdings Corp.*, No. 10-11890 (PJW) (Bankr. D. Del. July 13, 2010) [Docket No. 224] (stating that "you don't give a 506 waiver over an objection by the committee"); cf. Local Rule 4001-2(a)(i)(C) (requiring debtor to justify provisions that waive rights under section 506(c)). Therefore, the 506(c) waiver should be removed from the Final Order.

19. The Prepetition Secured Parties should not receive a waiver of the "equities of the case exception" and the Debtors should not waive their right to avoid liens under section 552 of the Bankruptcy Code. *See* Interim Order ¶ 18. Section 552(b) of the Bankruptcy Code permits a court to disregard a postpetition lien on "proceeds, products, offspring, or profits" of collateral based on the "equities of the case." 11 U.S.C. § 552(b). "The purpose of the equity exception is to prevent a secured creditor from reaping benefits from collateral that has appreciated in value as a result of the trustee's/debtor-in-possession's use of other assets of the estate (which normally would go to general creditors) to cause the appreciated value." *In re Muma Servs.*, 322 B.R. 541, 558-59. (Bankr. D. Del. 2005) (citation omitted). The "equities of the case exception" is most commonly invoked where unencumbered cash is used to increase the value of the collateral for the benefit of a secured creditor. *See New Hampshire Bus. Dev. Corp. v. Cross Baking Co. (In re Cross Banking Co.)*, 818 F.2d 1027, 1033 (1st Cir. 19876); *Toso v. Bank of Stockton (In re Toso)*, 2007 WL 7540985, at *13-14 (B.A.P. 9th Cir. Jan. 10, 2007).

20. As recoveries for unsecured creditors are highly speculative (and may likely be zero), absent a successful Challenge, a prospective a waiver of the "equities of the case" exception contained in section 552(b) of the Bankruptcy Code is inappropriate and should be stricken. *See,*

10

*e.g., In re Metaldyne Corp.*, 2009 WL 2883045, at *6 (Bankr. S.D.N.Y. June 23, 2009) (holding, in the context of a proposed 552(b) waiver, that "the waiver of an equitable rule is not a finding of fact…and the Court, in its discretion, declines to waive prospectively an argument that other parties in interest may make"); *see also In re iGPS Co. LLC*, No. 13-11459 (KG) (Bankr. D. Del. July 1, 2013) [Docket No. 225] (no waiver of the "equities of the case" exception with respect to creditors committee); *In re Namco, LLC,* No. 13-10610 (PJW) (Bankr. D. Del. Mar. 24, 2013) [Docket No. 5] (same); *In re Chemtura Corp.*, No. 09-11233 (REG) (Bankr. S.D.N.Y. Apr. 29, 2009) [Docket No. 281] (no waiver of the "equities of the case" exception). Moreover, the insufficient investigation budget and provision for wind down expenses leads the Committee to conclude that the Prepetition Secured Parties, and in particular, the Ally Parties, should not receive the benefits of section 552(b) as there may be a valid "equities of the case" argument here. The Committee requests that the Court remove the section 552(b) waivers.

21. As mentioned above, just as the Debtors' Budget was stripped down so too should any final order approving the Motion. Simply put, the Prepetition Secured Parties should not receive any benefits that would be afforded lenders in typical cases who are funding the administration of a chapter 11 case.

**B.    Broad Stipulations Combined With Short Challenge Deadline and Insufficient Funding Prejudices Creditors.**

22. The Debtors stipulate that there are no claims whatsoever against the Prepetition Secured Parties. Interim Order ¶ F(iii). In a typical Chapter 11 case, a creditors' committee would have sufficient time (no less than 75 days from the entry of the interim order) and a sufficient budget to conduct an investigation into the debtor's stipulations to ensure that there are no colorable claims against any of the parties included in the debtor's stipulation. Here, the Committee will likely not be in existence when the Challenge Deadline expires and the $30,000

11

budget provided in the Interim Order is wholly insufficient to conduct such a broad investigation into all potential claims against multiple parties. The concept of the Debtors' Stipulations and Challenge Deadline is gratuitous in these cases given the short fuse and insufficient funding and should be excised.

23. Worse—if these cases convert, the chapter 7 trustee will have significantly less time to conduct such investigations and seemingly no budget or access to cash. That is because the chapter 7 trustee will have the later of the Challenge Deadline or 20 calendar days to file a Challenge. Interim Order ¶ 17(i). If the Debtors' Stipulations and Challenge Period are not excised entirely, at a minimum, a chapter 7 trustee should be afforded the full 75-day Challenge Deadline from the date of conversion.

24. Finally, the Interim Order is silent on the ability of a Committee (or a chapter 7 trustee) to sue on behalf of the Debtors as each of the Debtors are limited liability companies. There are a number of Courts that have held that under Delaware law, only a member or assignee of an LLC interest can sue derivatively on behalf of the LLC. *See In re Citadel Watford City Disposal Partners, L.P.*, 603 B.R. 897, 903 (Bankr. D. Del. 2019) (holding that only a partner or assignee of a partnership interest in limited partnership can assert derivative claim on behalf of limited partnership); *In re HH Liquidation, LLC*, 590 B.R. 211, 284 (Bankr. D. Del. 2018) (same for LLCs); *CML V, LLC v. Bax*, 6 A.3d 238, 242 (Del. Ch. 2010), *aff'd* 28 A.3d 1037 (Del. 2011) (same); *Trusa v. Nepo*, 2017 WL 1379594, at *5 (Del. Ch. 2017) (same); *see also In re PennySaver USA Publishing, LLC*, 587 B.R. 445, 467 (2018) (holding that a chapter 7 trustee cannot assert claims against LLC on behalf of creditors of LLC when creditors are not members or assignees of LLC); *but see In re Golden Guernsey Dairy, LLC*, 548 B.R. 410, 413-14 (Bankr. D. Del. 2015) (holding that a chapter 7 trustee may bring breach of fiduciary duty actions against directors and

officers of an LLC on behalf of the estate, whether the claims are derivative or direct). Accordingly, the Challenge provision of the Interim Order must be revised to include the following: "The Prepetition Secured Parties stipulate and agree that they, or any party acting on their behalf, will not raise as a defense in connection with any Challenge the ability of creditors to file derivative suits on behalf of limited liability companies or limited partnerships under the Delaware Limited Liability Company Act or the Delaware Limited Partnership Act, as applicable."

**C.   Other Non-Market Features of the Interim Order Demonstrate the Ally Parties' Self-Interest.**

25.   The Ally Parties are repossessing and liquidating their collateral as fast as possible while providing the estate with the least amount of funding to operate. To say that these Chapter 11 Cases are now being run solely for the benefit of the Ally Parties would be an understatement (notwithstanding the Ally Parties' assertion that they did not want these proceedings to be filed in the first place). This is evident from several provisions of the Interim Order.

26.   First, the Interim Order provides for an Event of Default if the amount of the Debtors actual disbursement "for any line item exceeding the amount of such projected disbursement for that line item (whether operating disbursement or restructuring costs) set forth in the Budget since the Petition Date." Interim Order ¶ 11(ii). Said differently, there is no variance allowance for the Debtors (as is typical) and it does not appear that one dollar can be moved from line-item to line-item within the Budget (as is typical). It seems to be the Ally Parties' intent to preserve all unused cash on a line-item by line-item basis without providing the Debtors the ability to move cash from one line-item to another to cover unanticipated expenses or overages in order to prevent a default or otherwise. Therefore, the Ally Parties' agreement to the consensual use of cash collateral, in this respect, is illusory. Instead of agreeing to allow the Debtors to utilize the full amount set forth in the Budget as the Debtors see fit, the Ally Parties are hoping to preserve

13

some of those funds for (presumably) themselves by including these restrictive features in the Interim Order.

27. Relatedly, the fees for the Committee's professionals are insufficient and well below market—$65,000 for the Committee's counsel and $50,000 for the Committee's financial advisor. Since the Budget is structured to work on a line-item by line-item basis, as currently proposed, the Committee would not be entitled to share in excess funds from other line-items or even other estate professionals. At minimum, all estate professionals should share in the pool of funds available for professional fees under the Carve Out.

28. Moreover, the Carve Out provides no funding for professional fees post-default or termination of the use of cash collateral (as is typical). Interim Order ¶ 15(a). In nearly every cash collateral or DIP budget, there is an amount of cash included in the Carve Out for post-default or termination professional fees. The recognition by most every lender is that there are necessary trailing administrative expenses that must be paid. The Ally Parties seemingly do not care about the administration of these Chapter 11 Cases.

29. Finally, the Interim Order provides the Ally Parties with payment of professional fees, as a form of adequate protection, up to $150,000 (whether those fees were incurred prepetition or postpetition) through September 30th. Interim Order ¶ 7. However, the Ally Parties are only required to provide the Notice Parties with "summary form only" invoices, which will likely not include sufficient detail for anyone to determine the reasonableness of the fees. *Id.* ("The Notice Parties may object to the reasonableness of such fees and expenses…."). The Ally Parties should

be required to provide the Notice Parties with detailed invoices to conduct the reasonableness analysis that is contemplated by the Interim Order.[7]

## RESERVATION OF RIGHTS

30.     The Committee reserves all rights with respect to the Motion, including its right to supplement or amend this Objection at or prior to the hearing on the Motion, and present argument on these or additional and further issues at the hearing on the Motion or at any subsequent hearings, including to make argument and examine witnesses.

**WHEREFORE**, the Committee respectfully requests that the Interim Order entered on a final basis be modified consistent with this Objection, and for such other and further relief as the Court deems just and proper.

Dated:  September 26, 2023          Respectfully submitted,
        Wilmington, Delaware

*/s/ Aaron H. Stulman*
L. Katherine Good (No. 5101)
Aaron H. Stulman (No. 5807)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email:   kgood@potteranderson.com
         astulman@potteranderson.com

*Proposed Counsel for the Official Committee of Unsecured Creditors*

---

[7] The Committee should also receive the same reporting as is received by the Prepetition Secured Lenders.  Interim Order ¶ 8.